IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIENNE BRADLEY, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3912 |
| | § | |
| PHILLIPS CHEMICAL COMPANY, | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case arises from an explosion at Phillips Petroleum Company's ("Phillips") K-Resin Unit in Pasadena, Texas on March 27, 2000.  Plaintiffs are individuals who were employed by Phillips on the day of the explosion and have now sued Phillips for personal injuries allegedly suffered from the incident.  Many, but not all, of the Plaintiffs sought and were paid some workers' compensation under the Texas Workers' Compensation Act ("TWCA"), TEX. LAB. CODE § 401.101 *et seq.*  Plaintiffs claim fundamentally that Defendants defrauded them and other injured employees and violated state and federal law by misrepresenting the existence of valid workers' compensation insurance covering Plaintiffs' injuries.[1]

---

[1]    *See* First Amended Complaint [Doc. # 25], at 2, ¶ 1, at 11, ¶ 31.

Pending before the Court are various motions for summary judgment filed by Phillips, its insurance carrier, a law firm, and numerous individuals associated with those Defendants.[2] There also are pending motions by several parties for various forms of procedural relief.[3]

The Court has carefully considered the applicable law, the entire record in this case, and the exhaustive briefing on these issues. The Court concludes that there are no genuine material issues of fact and that summary judgment in the Defendants' favor on the issue of Phillips's workers' compensation subscriber status is warranted.

## I.   BACKGROUND

This controversy arises from Phillips's response to a catastrophic explosion on March 27, 2000, at Phillips's Pasadena Plastics Complex. One worker was killed and many others were wounded. Two days later, on March 29, according to Plaintiffs, the injured employees were called to a meeting with representatives of the Williams Bailey law firm. The attorneys

---

[2]   *See* Defendant Pacific Employers Insurance Co.'s Motion for Summary Judgment ("Pacific's Motion") [Doc. # 36], Plaintiffs' Response [Doc. # 51], Pacific's Reply [Doc. # 56], and Plaintiffs' Surreply [Doc. # 59]; Defendant Phillips Chemical Co. and individual affiliated Defendants' Motion for Summary Judgment ("Phillips's Motion") [Doc. # 37], Plaintiffs' Response [Doc. # 51], Phillips's Reply [Doc. # 55], Plaintiffs' Surreply [Doc. # 58], and Phillips's Motion to Strike Surreply or, in the Alternative, Reply to Surreply [Doc. # 60]; Defendant Williams Bailey Law Firm, LLP and associated individual Defendants' Motion for Summary Judgment ("Williams Bailey's Motion") [Doc. # 41], Plaintiffs' Response [Doc. # 52], and Williams Bailey's Reply [Doc. # 57]. Phillips's Motion to Strike Surreply is **denied** to the extent that, in the interest of a full and fair adjudication of the dispute, the Court will consider all of the submitted pleadings.

[3]   These are motions to strike summary judgment evidence filed by Phillips [Doc. # 62] and Pacific [Doc. # 63], Plaintiffs's responses [Docs. # 58, # 59], and Phillips's reply [Doc. # 60]; Plaintiffs' Motion to Continue Under Rule 56(f) [Doc. # 64] and Defendants' responses [Docs. # 70, # 77, # 79]; and Plaintiffs' Motion to Fire and Substitute Counsel [Doc. # 65], to which prior counsel filed a response [Doc. # 69].

allegedly informed the employees that Phillips had a workers' compensation plan, written and carried by Pacific, that would provide compensation for the employees' injuries.

There is no dispute that Pacific wrote a workers' compensation insurance policy, C42650183, for the policy period November 1, 1999, to November 1, 2000, ("Policy"),[4] which was a renewal of a prior policy that Phillips had purchased from Pacific at least one year earlier.  Williams Bailey allegedly told the employees that, under Texas law, because Phillips had workers' compensation insurance, the workers would be compensated but could not file personal injury claims against Phillips.[5]

In November 2005, Plaintiffs filed this suit against Phillips (including several subsidiaries), Pacific, Williams Bailey, Paper Allied-Industrial, Chemical and Energy Workers International Union and Local 4-227 ("PACE") (the employees' union), as well as

---

[4]  Workers' Compensation and Employer's Liability Insurance Policy, Williams Bailey's Motion, Exhibit A, at pages 1 of 6, *et seq.*  The Policy had two parts:  Part I, entitled "Workers' Compensation Insurance," and Part II, entitled "Employer's Liability Insurance."  Policy, at pages 1 of 6 through 4 of 6.

[5]  Despite these representations, certain Phillips employees filed a lawsuit in Texas state court in 2002 captioned *Arguelles v. Kellog Brown & Root, Inc.*, No. 2002-14984 (334th Dist. Ct., Harris Co., Tex.  Dec. 7, 2005).  *See* Phillips's Motion, Exhibit A.  Other Phillips employees, including at least one Plaintiff in this federal action, sought to intervene in the state court suit.  The intervenors (whose claims were distinct from the original plaintiffs) specifically sought a declaration that they "were not covered by worker's compensation," that Phillips was a "non-subscriber" to the workers' compensation system, and that Phillips engaged in "gross negligence and malice." *Id.*, at 2.  It appears from the single state court document the parties have included in the summary judgment record that the intervenors' claims in the state suit were substantially similar to those Plaintiffs raise here.  The state court granted summary judgment in the Defendants' favor, holding essentially that Phillips had established that it "maintained workers' compensation insurance covering the Intervenors and for their protection" and the intervenors had not raised a genuine fact issue to controvert that position.

various individuals associated with those institutions.  Plaintiffs assert that at the March 29th

meeting, Defendants intentionally misrepresented the state of Phillips's workers'

compensation insurance.  They accuse Phillips of using an internal employee benefit plan

to pay some compensation to injured workers in order to create the appearance of workers'

compensation insurance, so that the employees would not file individual negligence suits.

Plaintiffs have asserted numerous state and federal law claims arising from these events.[6]

## II.   __MOTION TO CONTINUE__

Plaintiffs have filed a "Motion to Continue under Rule 56(f)" ("Continuance Motion")

[Doc. # 64], seeking discovery and additional time to respond to the summary judgment

motions regarding the "subscribership status of the Defendant Phillips Petroleum."[7]  One of

Plaintiffs' counsel also adds that he hopes to "flesh out supplementary issues that were

---

[6]     Specifically, against the moving Defendants, Plaintiffs assert claims of fraud, conspiracy, negligence, gross negligence, aggravated assault (in that Phillips intentionally failed to maintain the plant and thus intended to harm Plaintiffs), discrimination under the Texas Labor Code § 451, breach of duty of good faith and fair dealing, violations of the Texas Insurance Code, art. 21.21, intentional infliction of emotional distress, intentional discrimination in violation of 42 U.S.C. § 1981, violation of the Americans with Disabilities Act, violation of 42 U.S.C. § 1985(3), and violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c)).  Plaintiffs also assert other claims against their union, PACE, and associated individuals.

On October 4, 2006, Plaintiffs requested leave to file a Second Amended Complaint.  The amendment was necessary, they argued, to "clarify the lack of **valid** Workers' Compensation Insurance by Phillips" (emphasis original).  Plaintiffs' Motion to Amend [Doc. # 73], at 3.  The proposed amendment expanded and refined Plaintiffs' theories regarding the alleged invalidity of Phillips's workers' compensation insurance policy.  The Court denied the Motion to Amend, leaving the Amended Original Complaint [Doc. # 25] ("Plaintiffs' Second Complaint") as the live pleading.  *See* Memorandum and Order, Dec. 11, 2006, [Doc. # 88].

[7]     Continuance Motion, at 2.

inadvertently omitted due to a disagreement in tactical approach" among counsel.[8]  Plaintiffs
have already obtained a lengthy continuance under Rule 56(f), *see* Minute Entry Order of
June 20, 2006 [Doc. # 47], and have since filed responses to Defendants' Motions and two
surreplies.  Additional delay of consideration of the summary judgment motions is not
warranted.  "In order to obtain a continuance of a motion for summary judgment for
discovery purposes, a party must set forth some statement to the court indicating why
additional discovery is necessary and 'how additional discovery will create a genuine issue
of material fact.'" *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 445 (5th Cir. 2001)
(citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d
1388, 1395 (5th Cir. 1994)).  Plaintiffs have not met their burden and do not specifically
identify how additional discovery will assist them.  The Motion to Continue is **denied**.

## III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary
judgment, after adequate time for discovery and upon motion, against a party who fails to
make a sufficient showing of the existence of an element essential to the party's case, and
on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also
Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th

---

[8]    Affidavit of Grover G. Hankins, attached to Continuance Motion, at 2.  Hankins additionally
notes that he intends to request that the Court dismiss without prejudice certain claimants
added "without their knowledge and approval" or Hankins' knowledge.  This request has not
been made in any motion and is not properly before the Court.

Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c)); *Celotex*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the nonmovant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).  However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.  *Baton Rouge Oil and Chem. Workers Union*, 289 F.3d at 375.

If the moving party meets its initial burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the

action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994))).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.*  In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("'Judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

## IV.   ANALYSIS

### A.   Phillips's Subscriber Status

Defendants' summary judgment motions all turn on the same central issue: whether Phillips subscribed to workers' compensation insurance at the time of the explosion on March 27, 2000.  "Under Texas's [workers' compensation] scheme, employees covered by subscriber-purchased policies receive compensation on a no-fault basis, and, in exchange, subscribing employers benefit from an exclusive remedy provision.  This provision prevents employees from suing subscribers for negligence." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 480 (5th Cir. 2003).[9]  Most of Plaintiffs' claims against Defendants Phillips, Pacific and

---

[9]     Typically, Texas courts recite that employees of a qualifying subscriber have only one remedy under state law for a work-related injury—recovery of workers' compensation benefits.  *See* TEX. LAB. CODE § 408.001(a).  However, even though the TWCA does not "expressly exclud[e] coverage for an injury resulting from an employer's intentional tort," Texas law "remove[s] from the Act's coverage intentional torts attributable directly to an employer . . . ."  *Medina v. Herrera*, 927 S.W.2d 597, 600 (Tex. 1996).

Williams Bailey are founded on the premise that Phillips did not have workers' compensation insurance covering Plaintiffs at the time the explosion occurred.[10]

Patterson, decided by the Fifth Circuit, was the first case to address claims substantively similar to those at bar.   While interpretation of the Texas workers' compensation statute is a matter of state law in the diversity context, see Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) (federal court is bound to apply the substantive law of the forum state, while following federal procedural rules); Hall v. G.E. Plastic Pacific PTE Ltd., 327 F.3d 391, 395 (5th Cir. 2003); Texas Dept. of Housing and Community Affairs v. Verex Assur., Inc., 68 F.3d 922, 928 (5th Cir. 1995), this Court must follow the guidance of the Fifth Circuit until and unless a subsequent state court decision or statutory amendment renders the federal court of appeals' interpretation clearly wrong.  See Hughes v. Tobacco Institute, Inc., 278 F.3d 417, 421 (5th Cir. 2001) (citing Batts v. Tow-Motor Forklift Co., 66 F.3d 743, 747 (5th Cir. 1995)).

Patterson held that for an employer to demonstrate it is a subscriber to the workers' compensation system in the State of Texas, and thus for the employer to have "subscriber status," the employer needs to show it obtained "a workers' compensation policy by paying a premium to an authorized insurer." 335 F.3d at 488.

---

[10]   For example, Plaintiffs contend that Defendants committed fraud by falsely representing to the injured employees that Phillips was properly insured and that Plaintiffs' legal rights were accordingly curtailed by Texas law.

A Texas court of appeals addressed similar issues in *ExxonMobil Corp. v. Kirkendall*, 151 S.W.3d 594, 598 n.2 (Tex. App.–San Antonio 2004, pet. denied).[11] Both *Patterson* and *ExxonMobil* addressed the threshold question at bar: Is the employer of the injured workers a "subscriber" to the workers' compensation system under Texas law?  The *ExxonMobil* court adopted the Fifth Circuit's test enunciated in *Patterson*.  In *ExxonMobil*, the court held that the employer has the burden to "establish[] its status as a workers' compensation subscriber, [and to do so] it must prove that, at the time its employees sustained their injuries, it had workers' compensation insurance in effect from an insurance company authorized to write workers' compensation insurance in the State of Texas." *ExxonMobil*, 151 S.W.3d at 599 (citing TEX. LAB. CODE §§ 401.011(18), 406.003; *Patterson*, 335 F.3d at 488).

---

[11]   *Patterson* and *ExxonMobil* interpreted and applied TEX. REV. CIV. STAT. Art. 8309, § 1, which was repealed in 1991 and replaced by the current and workers' compensation law that applies to this case. *See* TEX. LAB. CODE § 401.001 *et seq.*; *id.,* § 401.011(18); *Patterson*, 335 F.3d at 488 n.10; *ExxonMobil*, 151 S.W.3d at 599.  Both *Patterson* and *ExxonMobil* involved workers' compensation claims against Mobil Oil Corp.  The claims in those cases straddled the recodification.  The Texas and Federal appellate courts both concluded that the old workers' compensation system was substantively identical to the new scheme for the purposes of determining whether an employer is a qualifying subscriber.  *See Patterson*, 335 F.3d at 488 n.10; *ExxonMobil*, 151 S.W.3d at 598 n.2 ("Any differences between the two acts are not material to" the question of subscriber status.).

The only relevant distinction between article 8309 and TEX. LAB. CODE § 401.11(18) is terminology.  The old law used the term "subscriber," which was defined as "any employer who has become a member of the association by paying the required premium; provided that the association holds a license issued by the Commissioner of Insurance." TEX. REV. CIV. STAT. art. 8309, § 1.  The 1992 revision substituted the term "employer," which the statute defined as "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." TEX. LAB. CODE § 401.011(18).  *Rodriguez v. Martin Landscape Mgmt., Inc.*, 882 S.W.2d 602, 603 (Tex. App.–Houston [14th Dist.] 1994, no writ) (stating that the distinction between "subscriber" and "employer" is "a distinction without a difference.")

Applying this test, Defendants have established that Phillips purchased the Policy before the explosion, and that on its face the Policy was (in pertinent part) a workers' compensation plan for employees injured on the job in the State of Texas.  The Policy provided, "You are insured if you are an employer named in item 1 of the Information Page"[12] and Phillips was the entity named in Item 1.[13]  Defendants also have established, without contradiction, that Pacific was authorized to write workers' compensation insurance in the State of Texas.  The Texas Department of Insurance certified that Pacific "complied with the laws of the State of Texas applicable thereto and is hereby authorized to transact the business of . . . Workers' Compensation & Employers' Liability . . . insurance within the state of Texas."[14]  Thus, as a matter of law, Phillips was a qualifying employer at the time of the explosion.

Plaintiffs nevertheless argue that this evidence is not dispositive and that, at a minimum, there are several genuine issues of material fact that require a trial.  Each of Plaintiffs' arguments is addressed in turn.

---

[12]   Policy, General Section, § B, at 1 of 6.  *See also* Affidavit of Allan Sturdivant ("Sturdivant Aff."), Assistant Vice President of Ace Risk Management (Pacific's parent corporation), Pacific Motion, Exhibit A, at 2, ¶ 5 ("Pacific Employers Insurance Company insured Phillips Petroleum Company and all of its employees and subsidiaries in the State of Texas under Policy WLR C42650183.").

[13]   There is no dispute that Phillips paid a premium.  The fact that Plaintiffs dispute the scope of coverage of the Policy (based on the omission of the chemical workers classification from the Policy) is immaterial to the analysis here.

[14]   Certificate of Authority, Exhibit B to Pacific Motion [Doc. # 36].

B.      **Coverage for Phillips Petroleum Company**

Plaintiffs argue first that their employer, "Phillips Petroleum Company," is not one of the "named insured" entities under the Policy.  This argument is without merit.  Indeed, it is belied by various documents presented by Defendants, as well as Plaintiffs themselves.  First, the Policy lists "Phillips Petroleum Corporation" as the "insured" or "named insured" well over a hundred times, starting with the information page of the Policy and including many of the endorsement pages.[15]  In the summary of the Policy, it states: "You are insured if you are an employer named in item 1 of the Information Page,"[16] and "Phillips Petroleum Corporation" is the only entity listed in Item 1.[17]  As to "How This Insurance Applies," the Policy summary states: "This workers compensation insurance applies to bodily injury by accident . . . [that] occur[s] during the policy period."[18]  Further, the summary explains that the insurer "will pay promptly when due the benefits required of you by the workers compensation law."[19]  Upon receipt of claims, Pacific in fact paid workers' compensation benefits under the Policy for injuries to certain Plaintiffs (and many others) as employees of Phillips Petroleum Corporation.[20]

---

[15]      *See* Policy, *passim.*

[16]      *Id.*, General Section, § B, at 1 of 6.

[17]      *Id.*, at Information Page.

[18]      *Id.*, Part One – Workers' Compensation Insurance, § A, at 1 of 6.

[19]      *Id.*, Part One – Workers' Compensation Insurance, § B, at 1 of 6.

[20]      *See generally* Affidavit of Sonia Godinez, Exhibit D to Williams Bailey Motion; *see also*
                                                                        (continued...)

Plaintiffs counter by pointing to a Policy endorsement dated April 27, 2000, (the "April Endorsement") that they contend revised, added, and deleted names from the Policy's list of insured entities.[21]   Although the endorsement at the top lists "Phillips Petroleum Corporation" as the named insured, it includes "Phillips Petroleum Company" as one of the names to be deleted.  The April Endorsement was issued one month *after* the explosion, but states its "Effective Date" is November 1, 1999, the Policy commencement date.  Plaintiffs make alternative arguments about this endorsement.  First, Plaintiffs contend the April Endorsement means as a matter of law that Plaintiffs were not covered by the Policy and, second, they contend that there is a fact issue on what the endorsement means.

Under Texas law, the meaning of an insurance contract is to be determined under the standards applicable to contracts generally.  *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Cicciarella v. Amica Mutual Insurance Co.*, 66 F.3d 764, 767-68 (5th Cir. 1995); *Barnett v. Aetna Life Insurance Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  A court's primary concern is to give effect to the intention of the parties as expressed by the policy language.  *Cicciarella*, 66 F.3d at 768; *Ideal Lease Service, Inc. v. Amoco*

---

[20]      (...continued)
Affidavit of Allan Sturdivant, dated August 30, 2006, Exhibit 3 to Williams Bailey's Reply [Doc. # 57], ¶ 10.  Plaintiffs allege that these were sham payments that were designed to resemble, but did not have the legal effect of, workers' compensation benefits.  *See* Amended Complaint, at 11, ¶ 31.  They present no evidence, however, that the payments were not made pursuant to the Policy and Texas law.

[21]      *See* Policy Information Page Endorsement # WC990600AD (the "April Endorsement"), Exhibit C-4 to Affidavit of Dan. J. Free ("Free Aff."), Exhibit C to Plaintiffs' Response [Doc. # 49], at 2.

*Production Co.,* 662 S.W.2d 951, 953 (Tex. 1983).  "When the terms of an insurance policy are unambiguous, a court may not vary those terms."  *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995); *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

The law looks to the time of the injury in determining whether an employer is within the workers' compensation system.  *See ExxonMobil*, 151 S.W.3d at 599 (Employer must prove that it was a subscriber "at the time its employees sustained their injuries.").  Plaintiffs cite, and the Court has located, no authority for the proposition that a workers' compensation policy may be amended by a carrier or employer *after* an accident occurs to strip employees of their statutory right to benefits arising from that accident.[22]  *See* TEX. LAB. CODE

---

[22]    Plaintiffs proffer under Federal Rule of Civil Procedure 702 the opinions of two individuals, Dan J. Free and Charles E. Comiskey.  *See* Free Aff., ¶ 10; Report of Charles E. Comiskey ("Comiskey Report"), Exhibit D to Response to Phillips's Motion, at 2-3.  Messrs. Comiskey and Free opine that Phillips removed itself from its own workers' compensation coverage with the April Endorsement one month *after* the explosion and that therefore any such coverage Phillips may have originally had (which these witnesses dispute on other grounds) was not effective.  Defendants move to strike all the evidence from these witnesses.

The opinions of Comiskey and Free about the effect of the April Endorsement are inadmissible.  To be qualified to render an expert opinion under Rule 702 of the Federal Rules of Evidence, a person must be shown to be qualified in that he has specialized "knowledge, skill, experience, training, or education" in the area in which the expert seeks to opine.  *See Kuhmo Tire Co, Ltd.. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  The court's "gate-keeping" obligation applies to all types of expert testimony and is a fact-specific inquiry.  *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617-18 (5th Cir. 1999) (citing *Kumho Tire*, 526 U.S. at 147).  The trial judge first must determine if the witness is qualified as an expert in the relevant field by assessing "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case."  *See Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (citation omitted).  Next, the judge must pre-screen the expert witness' proffered opinions to ensure that expert testimony qualifies as
(continued...)

§ 408.001. The logic of Plaintiffs' position is that Phillips or Pacific could, after the fact, alter the rights of its employees, who are third-party beneficiaries of the employer's workers' compensation insurance. The Court rejects Plaintiffs' interpretation of the April Endorsement.[23]

Moreover, Plaintiffs' argument falls by its own weight in light of an "Underwriter Instruction Sheet" sent June 27, 2000, and signed by Allan Sturdivant, Assistant Vice President of Ace Risk Management (Pacific's parent corporation), on July 6, 2000, with an

---

[22]      (...continued)
scientific, technical or other specialized knowledge and will assist the trier of fact to understand the evidence or resolve a disputed factual issue. *Kumho*, 526 U.S. at 148; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).

The Court finds that Plaintiffs have not proven that Comiskey, as experienced as he is in many aspects of the insurance business, is qualified as an expert in workers' compensation insurance. Despite Defendants' emphatic challenge to his credentials in this regard, Plaintiffs have not supplemented the record to establish Comiskey's experience in the workers' compensation arena. Plaintiffs have also failed to demonstrate that Free has expertise in analysis of workers' compensation insurance policies or their legal interpretation (as opposed to his expertise in insurance audits). More significantly, the Court finds that both witnesses' opinions concerning the meaning and retroactivity of the policy endorsement in issue are actually suggested legal interpretations of the Policy. The Court is tasked with the duty to render legal opinions. The proffered opinions thus invade the judicial function. *See C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 698 (5th Cir. 2001); *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 531 n.12 (5th Cir. 1999). Phillips's and Pacific's Motions to Strike Summary Judgment Evidence [Docs. # 62, # 63] are **granted in part.** The Court will address the admissibility of Free's and Comiskey's other opinions as relevant to the disposition of the balance of the summary judgment motions.

[23]      The Court notes but does not rely on Sturdivant's parol evidence concerning his interpretation of the April Endorsement, a part of the workers' compensation insurance contract. *See* Affidavit of Allan Sturdivant, dated Aug. 30, 2006 ("Supp. Sturdivant Aff."), Exhibit 1 to Phillips's Reply [Doc. # 55], ¶ 5(a). He submits that the endorsement was intended to clarify the additional insureds under the Policy and did not alter the named insured, which was always Phillips Petroleum Corporation, and that the endorsement merely changed the Phillips subsidiaries to be covered as additional insureds.

---

effective date of November 1, 1999.  The underwriter directs the updating of the list of

insureds.[24]  The attached list shows "Phillips Petroleum Corporation" as the "insured," and

states Phillips Petroleum Corporation first on the attached list.[25]  By Plaintiffs' own logic,

even if the April Endorsement were deemed effective to alter the workers' compensation

coverage under the Policy retroactively after the March 2000 explosion, which it did not, the

July endorsement would have reversed this result, reinstating coverage to Phillips Petroleum

Corporation's employees, including Plaintiffs, as of November 1, 1999, well before Plaintiffs

asserted their claims in this suit.  Also, this document indicates that as of June/July 2000,

neither Phillips nor the insurer construed the April Endorsement as deleting Phillips

Petroleum Corporation as an insured party.

The Court concludes as a matter of law that the April Endorsement did not

retroactively remove Phillips Petroleum Co. as the named insured from the Policy.

### C.    Coverage for Phillips's Chemical Workers

Plaintiffs also contend that the Policy, even if valid, did not provide coverage for

Phillips's chemical workers, including Plaintiffs, who worked at the Phillips K-Resin facility.

The parties agree that the classification or identification codes of chemical plant workers

were not included on the Policy.  The parties dispute the legal effect of that omission.

Defendants rely on the Policy language, a form filed with the State of Texas (the "TWCC

---

[24]    The directions read, in their entirety, "ISSUE NAMED INSURED ENDORSEMENT. THE
ATTACHED UPDATED LIST."  Exhibit 4 to Williams Bailey's Reply [Doc. # 57], at PEIC
194.

[25]    *Id.* at PEIC 195.

20"), and Sturdivant's testimony that the identification codes are used only for the purpose of calculating premiums and that their omission has no effect on coverage.[26]  Plaintiffs contend that, without the classification codes, there was no coverage of the chemical workers.

Plaintiffs' argument on the classification issue is founded on the opinions of their experts.[27]  Even if Plaintiffs' experts had sufficient workers' compensation qualifications to opine reliably on this issue, which is far from clear, Plaintiffs' argument fails because the opinions the experts offer do not support Plaintiffs' broad conclusion.  Messrs. Free and Comiskey do *not* opine that the failure to list a category of worker for premium purposes is a cognizable election by an employer not to cover those employees under its workers' compensation policy.  Comiskey, who has not professed and has not been shown to have expertise in workers' compensation insurance, states merely that an employer "*may* elect to insure the employees in one business and not in the other"; he does not go so far as to state that Phillips's Policy actually does not cover the chemical workers as a result of the omission of their classification code.[28]  Free also rendered a carefully worded and meaningfully limited opinion, namely, that he had "*seen no evidence* that there was any workers' compensation

---

[26]     *See* Sturdivant Aff., ¶¶ 7-8.

[27]     *See* Comiskey Report, at 2-3; Free Aff., at 3-4.

[28]     *See* Comiskey Report, at 3 (emphasis added).  Comiskey did opine that "no workers' compensation . . . coverage existed under the policy for the . . . injury or death of employees of Phillips Petroleum Company," but he reached that conclusion based on his view that Phillips deleted itself from its own insurance policy.  He did not suggest that it was because Phillips did not list the chemical workers' classification codes.  *Id.*

coverage for the chemical workers employed at Phillips Chemical Complex in Pasadena, Texas for the 1999 to 2000 time period."[29]  Thus, the experts do not support Plaintiffs' contention that there was no coverage.

A review of the Policy itself supports Defendant's position.  The portion of the Policy in which the classification codes appear relates to the premium calculations.  "Item 4" of the information page of the Policy states:

> The premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans.  All information required below is subject to verification and change by audit.

---

[29]  Free Aff., at 3-4.  Free based his opinion on three points: the lack of chemical worker classification codes, the alleged deletion of Phillips Petroleum Corporation as an insured, and the lack of a final audit for premium purposes.  Free does not explain how his experience as an auditor establishes his credentials to opine on scope of coverage and thus Plaintiffs have not shown him to have appropriate expertise to render this opinion.  Free also does not explain his reasoning.  *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").  He cites to no authority or professional experiences that an omission of the classification code from a policy section regarding premiums means that the workers' compensation policy does not cover the omitted classes of employees.  The fact that the omission may affect the size of the insured/employer's premium (which is what the provision of the Policy suggests) does not necessarily mean – at least in the regulated context of workers' compensation insurance – that there is no coverage for the omitted classes of employees.

The Court also finds Free's limited opinion unpersuasive.  Free mentions that there is "no evidence" of a "final audit" of Phillips Petroleum Corporation's payroll for calculating the premium under the Policy.  It is unclear whether no final audit was conducted after the end of the Policy period, or whether Free simply was not provided documents on such an audit.  If no audit was performed, then the failure of Phillips or Pacific to discover an omission of a code for certain categories of workers is not probative given the substantial size and complexity of Phillips's and its subsidiaries' work forces.  *See* Exhibit C-3 to Free Aff.

Immediately following this statement is a chart that has places for "Classifications", "Code No.," "Premium Basis, Estimated Total Annual Remuneration," "Rate per $100 of Remuneration," and "Estimated Annual Premium."[30]  It is apparent that Item 4 of the Policy governs premium calculations.  There is no mention in this provision or any reference to it in the Policy that relates to an exclusion from coverage.

The Court concludes that Phillips's omission of chemical plant workers from the Policy did not result in chemical workers being excluded from Phillips's Policy or its workers' compensation coverage.  "It has long been the law in Texas that an employer may not split its workforce by providing workers' compensation insurance to some workers while leaving others without coverage."  *Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 596 (Tex. 2000) (citing *Maryland Cas. Co. v. Sullivan*, 334 S.W.2d 783, 786 (Tex. 1960); *Pacific Indem. Co. v. Jones*, 327 S.W.2d 441, 443 (Tex. 1959); *Hartford Accident & Indem. Co. v. Christensen*, 228 S.W.2d 135 (Tex. 1950); *Barron v. Standard Accident Ins. Co.*, 53 S.W.2d 769, 770 (Tex. 1932); *Buice v. Service Mut. Ins. Co.*, 90 S.W.2d 342, 343 (Tex. Civ. App.–Waco 1936, writ ref'd); *Barta v. Texas Reciprocal Ins. Ass'n*, 67 S.W.2d 433, 434 (Tex. Civ. App.–San Antonio 1933, writ ref'd)).

---

[30]     The parties' versions of the Policy differ as how this part of the form is completed. Sturdivant's version lists under "Classifications," the names of states and an estimated annual premium for each state.  *See* Exhibit 1 to Sturdivant Aff., at WC000001A (first unnumbered page).  For Texas, there are various entries for "standard premium," average discount rate and the net premium.  *See id.*, at third unnumbered page.  In Free's Affidavit, the list is more detailed; there are numerous categories of workers and codes, with a higher total premium. *See* Free Aff., Exhibit C-3.  The Court considers both versions.

Plaintiffs, however, point out that an employer who "conducts two separate and distinct kinds of businesses, each business involving different risks, payrolls, and requiring a different premium for compensation insurance," may include employees of certain businesses and exclude others from the employer's workers' compensation coverage, citing *Trinity Universal Ins. Co. v. Lewis*, 725 S.W.2d 332, 334 (Tex. App.–Texarkana 1987, writ ref. n.r.e.) (citing *Pacific Indem. Co.*, 327 S.W.2d at 441). Construing the summary judgment evidence in Plaintiffs' favor as nonmovants, and assuming under *Trinity* that the Phillips's K-Resin Unit was a distinct business from Phillips's other facilities whose workers were covered under the Policy, Phillips could have elected not to include its K-Resin Unit chemical workers in the workers' compensation coverage. The evidence of record, however, does not demonstrate that Phillips made such an election and Plaintiffs have not raised a genuine fact issue that Phillips did so.

As noted above, the Policy language provides that Phillips Petroleum Corporation obtained coverage for all employees in the State of Texas, among other places.[31] Further, the Policy states that it

> covers all of your [Phillips's] workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in item 3.A. states [*e.g.*, Texas] unless you have other insurance or are self-insured for such workplaces.[32]

---

[31]   "You are insured if you an employer named in item 1 of the Information Page." Policy, General Section, § B, at 1 of 6.

[32]   *Id.*, General Section, § E, at 1 or 6.

Thus, the Policy by its own terms provides workers' compensation coverage for all Phillips's workplaces in Texas, which includes the K-Resin Unit. *See generally Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977) ("the plain language of an insurance policy, like that of any other contract, will be given effect when the parties' intent may be discerned from that language"); *McDonald v. South County Mut. Ins. Co.*, 176 S.W.3d 464, 469 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (Texas courts "construe an insurance policy strictly against the insurer and in favor of coverage.") (citing *Barnett v. Aetna Life Ins.*, 723 S.W.2d 663, 666 (Tex. 1987)).  Plaintiffs have not pointed to and the Court has not found any provision expressly excluding chemical workers from the Policy's broad coverage.[33]  *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) ("In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured."); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) ("It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage.").

Sturdivant, a fact witness with personal knowledge of the Policy and how it was implemented and years of personal experience with workers' compensation insurance in the State of Texas, reinforces this construction of the Policy.[34]  He explains that the State

---

[33]     *See also* Supp. Sturdivant Aff., ¶ 7.

[34]     Sturdivant's testimony in this regard is admissible under Federal Rule of Evidence 701 as the lay opinion of a witness with personal knowledge of particularized facts. *See Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005) (" Rule 701  does not exclude testimony by corporate officers or business owners on matters that relate to their
(continued...)

requires that a form TWCC 20 be filed to provide statutory notice of an employer's participation in the Texas workers' compensation system.  He also explains the procedure required by the State for a company to opt out of coverage for a category of workers: "[T]he TWCC 20 form has a space whereby the insurer must notify the State if the policy is for a 'Divided Risk,' meaning that some of the employer's operations and employees are covered, but not others."[35] The Divided Risk portion of the TWCC 20 filed by Pacific for the Policy was left blank.[36]  Thus, the filing with the State indicates that Phillips and Pacific did not attempt to limit the scope of the Policy to exclude chemical workers from coverage under the workers' compensation scheme.  Further evidence of this fact is that Pacific paid workers' compensation insurance claims to K-Resin Unit chemical workers totaling more than $3.5 million (in addition to Phillips's $5 million deductible) under the terms of the Policy.[37] Phillips's and Pacific's conduct is fully consistent with Defendants' position that Phillips

---

[34]      (...continued)
business affairs, such as industry practices and pricing.") (citing *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) ("[A]n officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert.")). The dealings concerning a workers' compensation policy are particularly complex when a large diversified company is the policyholder.  Unlike Free and Comiskey who were hired as experts after the fact, who have no personal knowledge of the Policy or the coverage in issue, and who fail to demonstrate any expertise with workers' compensation insurance and related state regulations, Sturdivant has extensive personal experience in these regards.

[35]      *Id.*, ¶ 8; *see id.*, ¶¶ 2, 3, 4.  The Court does not consider Sturdivant's opinion of the legal effect of the Divided Risk portion of the TWCC 20 being left blank.

[36]      *Id.*, ¶ 8 and Exhibit 2 thereto.

[37]      *Id.*, ¶¶ 9-10; Sturdivant Supp. Aff., ¶¶ 10, 12.  As noted above, Plaintiffs assert that these were sham payments, but offer no evidence that the payments failed to conform to the Policy or the TWCA.  *See* Amended Complaint, at 11, ¶ 31.

covered all its employees in Texas for workers' compensation purposes and inconsistent with Plaintiff's contention.

Defendants have met their summary judgment burden to show that Phillips acquired workers' compensation coverage for its Texas workers under the Policy.  Plaintiffs have provided no probative evidence relating to the classification omission, nor pointed to any express exclusion in the Policy to support their contention that chemical workers were excluded from workers' compensation coverage.  Thus, Plaintiffs have not raised a genuine issue of material fact on this subject.

### D.    Intentional Injury

Plaintiffs argue that the Policy does not preclude their claims based on Phillips's intentional conduct that caused them injury.[38]  Plaintiffs point to a clause in "Part Two" of the Policy excluding intentional injuries from coverage.[39]  Part Two of the Policy is "Employer's Liability Insurance," which is distinct from the Policy's workers' compensation coverage, which is set forth in "Part One" of the Policy.  Part Two is irrelevant to issues concerning the scope of Phillips's workers' compensation insurance coverage.  Whereas

---

[38]     *See* Response to Phillips's Motion [Doc. # 49], at 10-11.  *See* Comiskey Report, at 2-3.

[39]     *Id.*, "Part Two – Employers Liability Insurance," at 2 of 6.  The clause Plaintiffs cite is:

    C. Exclusions.

        This insurance does not cover:
                 *     *     *     *
        5.    bodily injury intentionally caused or aggravated by you."  Policy,
        "Part Two – Employers Liability Insurance," at 4 of 6, § C(5).

under workers' compensation insurance, the insurer agrees to pay "the benefits required of [Phillips] by the workers' compensation law,"[40] the employers liability coverage provides that Pacific will pay "all sums [that Phillips] legally must pay as damages because of bodily injury to [Phillips] employees, provided the bodily injury is covered by this employers liability insurance."[41]  *See* 12 COUCH ON INS. § 173:2 (3d ed. 2006).  These are materially different types of insurance.  Plaintiffs' attempt to import an exclusion from the employers liability coverage into the distinct, heavily regulated workers' compensation coverage is rejected.

### E.    Notice

Plaintiffs also argue that Phillips failed to provide them with actual notice of its election to participate in the workers' compensation system, and that Plaintiffs accordingly should be allowed to bring their state common law and state and federal statutory claims even if Phillips was properly insured.[42]  Texas law requires employers to "notify each employee . . . whether or not the employer has workers' compensation insurance coverage," TEX. LAB. CODE § 406.005(a), and failure to do so is an administrative violation punishable by a fine, *id.*, §§ 415.005(e), 415.022; *Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 618-19 (Tex. App.–Dallas 2006, no pet.).  Nothing in the Texas Labor Code suggests that

---

[40]     Policy, "Part One – Workers' Compensation Insurance," Exhibit C-2 to Free Aff., Exhibit C to Plaintiffs' Reply to Phillips's Motion, § B, at 1 of 6.

[41]     *Id.*, "Part Two – Employers Liability Insurance," § B, at 3 of 6.

[42]     Phillips contends that it did provide all necessary notice, but the Court assumes *arguendo* that Plaintiffs' factual allegations are correct.

an employer's failure to give an employee notice of the employer's workers' compensation subscriber status exempts the employer from obligations and protections of the workers' compensation laws.  Various Texas appellate courts have considered this issue and each has ruled that workers' compensation coverage, and the exclusivity bar of the workers' compensation scheme, does not hinge on whether notice has been provided to the employee. *See Wesby*, 199 S.W.3d at 618; *Esquivel v. Mapelli Meat Packing Co.*, 932 S.W.2d 612, 616 (Tex. App.–San Antonio 1996, writ denied); *Williams v. APS, Inc.*, 969 S.W.2d 433, 436-37 (Tex. App.–Houston [14th Dist.] 1997, no pet.); *Blazik v. Foley's, Inc.*, 1998 WL 788848, *3 (Tex. App.–Houston [1st Dist.] 1998, no pet.) ("the exclusivity provision of the Act does not hinge on whether notice has been provided to the employee"); *see also Winn v. Panola-Harrison Elec. Co-op., Inc.*, 40 F. Supp.2d 850, 852 (E.D. Tex. 1998).[43]  Plaintiffs' argument is without merit.

### F.   __Motion to Remove__

Plaintiffs' counsel Hankins has filed "Plaintiffs' Motion to Remove Melvin Houston and John Jones as Attorneys of Record for the Original Plaintiffs and Motion to Substitute M. L. Curry" ("Motion to Remove") [Doc. # 65] seeking the Court to discharge co-counsel

---

[43]   Earlier Fifth Circuit law arguably to the contrary, *Ferguson v. Hospital Corp. Intern., Ltd.*, 769 F.2d 268 (5th Cir. 1985), is no longer binding authority. Aside from subsequent Texas appellate decisions that supersede *Ferguson* and now bind this Court, *see Erie*, 304 U.S. at 78; *Hall*, 327 F.3d at 395; *Hughes*, 278 F.3d at 421, *Ferguson*'s holding has been abrogated by the repeal of the statute the case addressed.

because the attorneys disagree about the strategy for this case.[44]  Houston's Response alleges that Hankins lacked the consent of each original plaintiff to dismiss Houston or his firm. [45] Moreover, Houston is attorney of record for thirteen Intervenor Plaintiffs.  The Court declines to involve itself in internal disputes among Plaintiffs' counsel and their clients.  If necessary, the Court will select lead counsel when appropriate.  The Motion to Remove is **denied without prejudice**.

## V.    CONCLUSION AND ORDER

The record establishes that Phillips obtained a workers' compensation insurance policy that covers Plaintiffs.  Plaintiffs' arguments that Defendants did not acquire or somehow invalidated that coverage are unavailing.  There is no genuine issue of material fact concerning whether Phillips was properly insured under Texas law.  Accordingly, Plaintiffs may not maintain any cause of action predicated on a contention that Phillips was not a valid subscriber to the Texas workers' compensation system, was uninsured, or was self-insured.

Defendant PACE and associated individuals did not file motions for summary judgment.  Nevertheless, the rulings herein are matters of law that also apply to the PACE Defendants.

---

[44]    Hankins asserts that he and "Attorney Houston have had inherent directional and supervisory conflicts that have gone unresolved and because of Attorney Houston's steely resolve, said conflicts have the potential of threatening the successful litigation of this case." Motion to Remove, at 3.  Accordingly, "with the consent of . . . clients" and "pursuant to the contractual provision in his client contract to retain and dismiss attorneys associated with him in this cause," Hankins asks the Court to "discharge Attorneys Melvin Houston, his Law Firm . . . and John Jones as attorney of record for them." *Id*.

[45]    Response to Motion to Remove, at 1.

Plaintiffs' Amended Complaint includes seventeen claims for relief. Many of these claims are foreclosed by Phillips's workers' compensation insurance coverage and the exclusivity of the workers' compensation scheme. The Court cannot ascertain from the current pleading, however, specifically which of Plaintiffs' claims remain viable in light of the Court's conclusions. Plaintiffs therefore are directed to file a third amended complaint that includes only legally cognizable claims.[46] Plaintiffs are not permitted to add new claims. It is therefore

**ORDERED** that Defendants' Motions to Strike Summary Judgment Evidence from Phillips [Docs. # 62, # 63] are **GRANTED** in accordance with this Memorandum and Order. It is further

**ORDERED** that Plaintiffs' Motion to Continue under Rule 56(f) [Doc. # 64] is **DENIED**. It is further

**ORDERED** that Phillips's Motion to Strike Surreply [Doc. # 60] is **DENIED**. It is further

**ORDERED** that Defendants' Motions for Summary Judgment [Docs. # 36, # 37, # 41] are **GRANTED**. It is further

---

[46]     Plaintiffs are admonished that they must comply with Federal Rule of Civil Procedure 11(b)(2) and assert claims that "are warranted by existing law or by a nonfrivolous argument for . . . new law." *See, e.g., Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 65 (1987) (stating that Rule 11 of the Federal Rules of Civil Procedure requires pleadings to be well-grounded in fact and based on a good-faith belief formed after reasonable inquiry); *Jenkins v. Methodist Hospitals of Dallas, Inc.*, --- F.3d ----, 2007 WL 259571, *6-*7 (5th Cir. 2007); *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir. 1986). Plaintiffs must have a viable factual and legal basis for each claim they assert hereafter.

**ORDERED** that Plaintiffs' Motion to Fire and Substitute Counsel [Doc. # 65] is **DENIED without prejudice**.  It is further

**ORDERED** that Plaintiffs shall **FILE a third amended complaint** within thirty (30) days of the issuance of this Order in accordance with the rulings in this Memorandum and Order.  It is further

**ORDERED** that a pretrial and scheduling conference is set for **May 18, 2007, at 1:30 p.m.** in Courtroom 9-F, United States Courthouse, Houston, Texas.  The parties shall submit on or before **May 14, 2007**, a Joint Discovery/Case Management Plan in the form prescribed by this Court's Procedures, with a courtesy copy delivered to chambers on that date.

SIGNED at Houston, Texas, this **22nd** day of **March, 2007**.

Nancy F. Atlas
United States District Judge