## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ADRIENNE BRADLEY, *et al.*,            §
        Plaintiffs,            §
                    §
v.            §            CIVIL ACTION NO. H-05-3912
                    §
PHILLIPS PETROLEUM COMPANY            §
d/b/a/ PHILLIPS CHEMICAL            §
COMPANY, *et al.*,            §
        Defendants.            §

## MEMORANDUM AND ORDER
## (JONES PLAINTIFFS)

This commercial and tort case is presently in a unique procedural posture. There currently are thirty-five Plaintiffs who include nine original plaintiffs and numerous intervenors. Plaintiffs have divided themselves into two camps, each seeking representation by different attorneys.[1] There are several motions pending before the Court that are relevant to one of these groups.

First is a Motion for Leave to File a Fourth Amended Petition ("Motion to Amend") [Doc. # 119], supplemented by a "Memorandum in Support" [Doc. # 127], filed by attorney Grover Hankins on behalf of Plaintiffs Adrienne Bradley, Wayland

---

[1]     The Court adopts counsels' designations of the two groups of plaintiffs as the "Jones Plaintiffs," *see infra* p. 1–2, and the "Curry Plaintiffs," *see infra* p. 10, for the sake of consistency. Counsel have not explained why the name of lead Plaintiff, Adrienne Bradley, is not utilized.

Jackson, Scottie Jones, Lawrence Neloms, Shirley D. Oliver, Edward O'Brien, Donald

Phlegm, Emma Phlegm, Marie Rodriguez, and Mario Rodriguez (collectively, the

"Jones Plaintiffs").[2]   Defendants Paper Allied-Industrial, Chemical and Energy

Workers International ("PACE International"), Local 4227 Paper Allied-Industrial,

Chemical and Energy Workers International ("PACE Local"), Roby G. Plemons, David

Taylor, Joseph Campbell, Melvin Byer, James Lefton, B.G. Martinez, and Maxwell

Hickerson (collectively, the "Union Defendants") have responded [Doc. # 149].  Upon

review of the Motion to Amend, the supporting attachments and Memorandum, and

Defendants' Response, as well as all pertinent matters of record, and applicable law,

the Court concludes that Jones Plaintiffs' Motion to Amend is **denied**.

In addition, all named Defendants[3] collectively have filed a Motion to Dismiss

---

[2]    There is some disconnect between the plaintiffs that Mr. Hankins claims to represent.  Dennis Curry, Stephanie Curry, Lonzy Williams, and Maryann Williams are listed as plaintiffs on the Motion to Amend [Doc. # 119], but not in the supplemental Memorandum in Support [Doc. # 127].  The Currys are listed elsewhere as being represented by competing plaintiffs' counsel in this case, Melvin Houston.  Plaintiff Shirley D. Oliver is named in the caption to the Memorandum in Support, but is not listed as a plaintiff in the body of the document.  After investigating the many documents filed in the case, the Court believes that the Jones Plaintiffs, represented by attorney Hankins, include only those individuals named in the body of the Memorandum in Support, who are the same parties named in the proposed Fourth Amended Complaint attached to the Motion to Amend.  *See* Memorandum in Support [Doc. 119], at 2; Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 1.

[3]    Defendants include:  Phillips Petroleum Company d/b/a Phillips Chemical Company, Chevron Phillips Chemical Company LP, ConocoPhillips Company, James J. Mulva, Jim Gallogly, Harold Banks, and Amy Banks (collectively, the "Phillips Defendants"); Pacific Employers Insurance Company; Williams & Bailey Law Firm, LLP; and the Union Defendants.

the Jones Plaintiffs' Claims for Failure to Comply with Court Orders and Rules of Civil Procedure ("Motion to Dismiss") [Doc. # 124]. The Jones Plaintiffs have responded [Doc. # 152]. Although this motion to dismiss does not directly address the pending motion to amend, it does seek dismissal of all claims asserted by the Jones Plaintiffs, including those in their proposed "Second Amended Complaint" [Doc. # 112] and, should the pending motion to amend be granted, those in their proposed Fourth Amended Complaint [Doc. # 119-3]. The Motion to Dismiss is **granted**, consistent with the rulings herein and those in the Court's Memorandum and Order of Nov. 18, 2007 [Doc. # 168] (the "Curry Memorandum"), addressing the Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], discussed *infra*.

## I.    **BACKGROUND**

The factual record is set out in more detail in the Court's Memorandum and Order of March 22, 2007 ("March 2007 Order") [Doc. # 89]. Briefly, this controversy centers around Defendants' response to an industrial accident that occurred at Phillips Chemical Company's ("Phillips") Pasadena Plastics Complex "K-Resin" Unit on March 27, 2000. The accident left one Phillips employee dead and many more injured. Within days of the event, the injured employees were called to a meeting and informed by representatives from Defendant Williams & Bailey Law Firm, LLP ("Williams & Bailey"), that Phillips' workers' compensation insurance covered the incident and

Plaintiffs' injuries.  The Jones Plaintiffs allege that Williams & Bailey representatives further stated that under Texas law, because Phillips had workers' compensation insurance, the employees could not bring personal injury lawsuits against the company.

In November 2005, nine Phillips employees and spouses of employees[4] brought suit against the Phillips Defendants, Pacific Employers Insurance Company ("Pacific") (Phillips' workers' compensation carrier), Williams & Bailey, and the employees' Union (PACE International and PACE Local) and Union officials, alleging that these defendants conspired to intentionally misrepresent the state of Phillips' workers' compensation insurance.  Specifically, these plaintiffs alleged that Phillips used an internal employee benefit plan to pay some employees' claims in order to create the appearance of workers' compensation so that employees would not file individual personal injury lawsuits.  Plaintiffs asserted numerous state and federal law claims arising from these events.[5]

Especially relevant to the Motion to Amend are complicated procedural events that have occurred throughout this litigation:  Attorneys Grover G. Hankins and Melvin

---

[4]    The original plaintiffs were Adrienne Bradley, Dennis M. Curry, Wayland Jackson, Scottie Jones, Lawrence Neloms, Edward O'Brien, Donald Phlegm, Mario Rodriguez, and Lonzy Williams.

[5]    *See* Plaintiffs' First Amended Complaint [Doc. # 25].

Houston, as joint counsel, commenced this suit in November 2005.[6] On April 3, 2006, the two attorneys filed an amended complaint on behalf of the nine original plaintiffs, and eleven new plaintiffs.[7] Soon thereafter, evidence of a dispute between the two attorneys and allegedly among the plaintiffs emerged.

On April 6, 2006, Mr. Hankins filed a Designation of Lead Counsel, asserting that the nine original plaintiffs had designated him their "Attorney-in-Charge" and expected him to "have full control and management in this cause and to receive all communications from the Court or other counsel relating to the case."[8]

Over the next few months, the parties conducted discovery. Three of the four groups of defendants—the Phillips Defendants, Pacific, and Williams & Bailey—timely filed individual motions for partial summary judgment on the question of Phillips' workers' compensation subscriber status [Docs. # 36, # 37, and # 41]. Mr. Hankins and Mr. Houston jointly filed various responses on behalf of all twenty plaintiffs [Docs. # 49, # 51, # 52, # 58, and # 59].

On September 19, 2006, while the summary judgment motions were *sub judice*,

---

[6]     *See* Complaint [Doc. # 1].

[7]     *See* Plaintiffs' First Amended Complaint [Doc. # 25]. The Amended Complaint added Plaintiffs Desmond Burnett, Dora Burnett, Stephanie L. Curry, Bertha Guidry, Lambert Guidry, Andrea Hunter, Barry Hunter, Shirley D. Oliver, Emma Phlegm, Marie L. Rodriguez, and Maryann Williams.

[8]     *See* Plaintiffs' Designation of Lead Counsel [Doc. # 26].

Mr. Hankins filed a "Motion to Remove Melvin Houston [and a co-counsel] as Attorneys of Record for the Original Plaintiffs" ("Motion to Remove") [Doc. # 65].[9] According to Mr. Hankins, he and Mr. Houston "had inherent directional and supervisory conflicts that have gone unresolved and because of Attorney Houston's steely resolve, said conflicts have the potential of threatening the successful litigation of this cause."[10] Specifically, Mr. Hankins complained that Mr. Houston added clients to the case without his or the original plaintiffs' consent,[11] and that Mr. Houston expressed his intent to represent a group of intervenors "over whom Lead Counsel Hankins would have no direction and/or control."[12] Mr. Houston responded that Mr. Hankins lacked proper consent from each of the named plaintiffs to dismiss Mr. Houston or his firm.[13] The Court declined to rule on matters of an attorney-client

---

[9] Although Mr. Hankins referenced the "original plaintiffs" in the title to his Motion, he claimed to be moving on behalf of the nine original plaintiffs, as well as Stephanie Curry, Shirley Oliver, Emma Phlegm, Marie L. Rodriguez, and Maryann Williams, who were first named in Plaintiffs' First Amended Complaint [Doc. # 25].

[10] Motion to Remove [Doc. # 65], ¶ 4.

[11] *Id*. ¶ 3.  The Court is somewhat perplexed by the assertion that plaintiffs were added to the First Amended Complaint without consent, as Mr. Hankins appears to have filed the Motion to Remove on behalf of some of those added clients.

[12] *Id*. ¶ 5.  Indeed, on September 20, 2006, Mr. Houston filed a Motion to Intervene [Doc. # 67] on behalf of seven intervenors, and on October 6, 2006, he filed a Supplement to the Motion [Doc. # 74] on behalf of six more individuals.  The motion as supplemented was granted by the Court on December 1, 2006 [Doc. # 87].

[13] Response to Motion to Remove [Doc. #69], at 1.  Mr. Houston also filed a Designation of
(continued...)

nature and accordingly denied the Motion to Remove.[14]

While the Motion to Remove was pending, the rift between Mr. Hankins and Mr. Houston—and perhaps among their respective clients—became more pronounced.  On October 4, 2006, Mr. Hankins filed a Motion [for Leave] to Amend [Doc. # 73] seeking to file a Second Amended Complaint [Doc. # 73-2] on behalf of fourteen plaintiffs.  Mr. Hankins asserted that he had "filed several motions seeking to change counsel, and for additional time to allow Plaintiffs to provided [sic] the Court with information **not previously presented by former co-counsel for the Plaintiffs**."[15]  A review of Mr. Hankins' proposed Second Amended Complaint [Doc. # 73-2] revealed that this expanded group of plaintiffs was seeking to add two entirely new claims, both against new defendants.  Specifically, Mr. Hankins' clients sought to raise a claim that Defendants violated the Employee Retirement Income Security Act ("ERISA") and a claim that Phillips and some previously unidentified foreign subsidiaries provided an unsafe workplace at the K-Resin facility in violation of unspecified OSHA standards.  The proposed Second Amended Complaint also included expanded theories regarding

---

[13]    (...continued)
Attorney in Charge [Doc. # 66] on behalf of the six plaintiffs not named in Mr. Hankins' Motion to Remove.

[14]    March 2007 Order [Doc. # 89], at 26.

[15]    Motion to Amend [Doc. # 73], at 3 (emphasis in original).

the alleged invalidity of Phillips' putative workers' compensation insurance policy.[16]
In denying Mr. Hankins' motion for leave to amend, the Court noted that his clients
were seeking to amend their claims and assert entirely new theories six months after
a pleading amendment deadline set months earlier.[17]  The Court questioned why the
putative new claims and theories had not previously been asserted, given that the events
precipitating this lawsuit occurred in March 2000.[18]  In addition, the Court held that
Mr. Hankins' clients had failed to demonstrate that an extension of time to amend their
pleadings was warranted.[19]  Finally, the Court determined that, "Defendants should not
be required to repeat their efforts in order to respond to adjustments to Plaintiffs'
theories that were available but not asserted prior to the deadline for amended pleading
or during discovery."[20]

On March 22, 2007, the Court granted Defendants' motions for partial summary
judgment and ordered Plaintiffs to file, by April 22, 2007, a "Third Amended

---

[16]   *See* Plaintiffs' proposed Second Amended Complaint [Doc. # 73-2]; *see also* Memorandum
and Order of Dec. 11, 2006 [Doc. # 88], at 3–4.

[17]   *See* Minute Entry of March 3, 2006 (J. Gilmore) [Doc. # 22] (setting an April 1, 2006
deadline for filing amended pleadings).

[18]   Memorandum and Order of Dec. 11, 2006 [Doc. # 88], at 6–7.

[19]   *Id.* at 6–8.

[20]   *Id.* at 8.  Further, the Court found unpersuasive Mr. Hankins' clients' explanation that their
failure to make a timely motion for leave to amend was due to the fact that attorneys Mr.
Hankins and Mr. Houston could not agree on whether to present the new claims.

Complaint" in accordance with the Court's legal ruling that Phillips was a valid workers' compensation insurance subscriber and that Plaintiffs were covered by Phillips' policy.[21]  The Court emphasized that "Plaintiffs are not permitted to add new claims," and admonished that Plaintiffs must comply with Federal Rule of Civil Procedure 11(b)(2) and assert only claims that were warranted in light of the Court's decision.[22]

On April 2, 2007, Mr. Houston filed a Motion to Certify the Order (that granted partial summary judgment) [Doc. # 90] and a Motion for Reconsideration (of that Order) [Doc. # 91] on behalf of ten plaintiffs and fourteen intervenors.[23]  Mr. Hankins subsequently adopted and joined both motions on behalf of the twelve plaintiffs he

---

[21]    March 2007 Order [Doc. # 89], at 28.  The Court held that "Plaintiffs may not maintain any cause of action predicated on a contention that Phillips was not a valid subscriber to the Texas workers' compensation system, was uninsured, or was self-insured."  *Id.* at 26.

[22]    *Id.* at 27 n.46.  The Court surmised that "[m]any of [Plaintiffs'] claims [would be] foreclosed by Phillips's workers' compensation insurance coverage and the exclusivity of the workers' compensation scheme."  However, given the opacity of the pleadings, the Court could not "ascertain . . . which of Plaintiffs' claims remain[ed] viable."  *Id.* at 27.

[23]    Documents filed after the Court granted Mr. Houston's supplemented Motion to Intervene have included still two more intervenors/proposed plaintiffs, Abel Arguelles and Angela Mercier.  Angela Mercier was first named in Mr. Houston's Motions to Certify the Order [Doc. # 90] and for Reconsideration [Doc. # 91].  Abel Arguelles was first named in Mr. Houston's Third Amended Complaint [Doc. # 111].  In the interest of justice and to avoid still further collateral litigation, the Court deems Mercier and Arguelles to have been parties to the Motion to Intervene [Doc. # 67] and thus, subject to the Court's Order granting that Motion [Doc. # 87].  ***No additional plaintiffs may intervene or be joined in this suit.***

claimed to represent.[24]  The Court denied both motions and gave all plaintiffs until May 30, 2007, to file their amended complaint.[25]

On May 30, 2007, Mr. Houston filed a "Third Amended Complaint" [Doc. # 111] on behalf of ten plaintiffs and the (now) fifteen intervenors[26] (hereinafter, the "Curry Plaintiffs").  On May 31, 2007, Mr. Hankins filed a pleading denominated "Second Amended Complaint" [Doc. # 112] on behalf of the remaining ten plaintiffs (the "Jones Plaintiffs").[27]  Notably, and contrary to the Court's admonition in the March 2007 Order, Mr. Hankins' proposed "Second Amended Complaint" ambiguously named two, or possibly as many as five, new defendants.  He also realleged the additional claims he had sought to raise for the first time in his unsuccessful Motion to Amend [Doc. # 73].  This proposed Second Amended

---

[24]     Plaintiffs' Adoption and Joinder in Plaintiffs and Interventors' [sic] Memorandum in Support of Motion for New Trial and Reconsideration of Defendants' Motion for Partial Summary Judgment [Doc. # 100], at 1.  In another example of the confusion created by Mr. Houston and Mr. Hankins' conflicts, Mr. Hankins claims to have filed his motion on behalf of Dennis M. Curry and Stephanie L. Curry, *see id.* at 1, but Mr. Houston also listed the Currys as his clients.

[25]     Memorandum and Order of April 30, 2007 [Doc. # 103], at 15.

[26]     *See supra* note 23.

[27]     Mr. Hankins filed his "Second Amended Complaint" a day late.  Eight days later Mr. Hankins filed a Motion for Extension of Time [Doc. # 114] and a Motion for Leave to File a Corrected Version of Plaintiffs' Second Amended Complaint [Doc. # 115].  Both motions were subsequently denied as moot.  Mr. Hankins' Second Amended Complaint [Doc. # 112] and his "corrected" version of that complaint [Doc. # 115-3] are essentially identical.

Complaint, in further contravention of the March 2007 Order, repeated verbatim many allegations from Plaintiffs' First Amended Complaint [Doc. # 25] that Phillips lacked valid workers' compensation insurance[28]—claims the Court had rejected in the March 2007 Order.

At a June 11, 2007 conference, precipitated by the competing plaintiffs' counsels' submission of separate and inconsistent amended complaints, the Court rejected the Jones Plaintiffs' "Second" [Doc. # 112] and Curry Plaintiffs' "Third" [Doc. # 111] Amended Complaints and admonished both attorneys to comply with prior orders of the Court.[29]  The Court stated that Mr. Hankins' proposed claims under

---

[28]    *Compare, e.g.*, Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 49, *with* Jones Plaintiffs' Second Amended Complaint [Doc. # 112], ¶ 83 (alleging that Defendants made fraudulent representations "that Plaintiffs were covered under a worker's [sic] compensation insurance policy").  Further, Mr. Hankins added a *new* allegation to this fraud claim, asserting that Defendants made fraudulent representations to "state and federal agencies . . . concerning [Phillips'] maintenance of valid workers' compensation insurance." *Id*. ¶ 84.  *Compare, e.g.*, Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 51, *with* Jones Plaintiffs' Second Amended Complaint [Doc. # 112], ¶ 86 (alleging that Defendants conspired "to create the impression that . . . Plaintiffs were covered by worker's [sic] compensation insurance").  Similar statements appear at least four more times throughout the Jones Plaintiffs' complaint.  *See id*. ¶¶ 91, 103, 114, 127.  Mr. Hankins also repeated a negligence claim based on the his allegations that "[a]t all relevant times, Phillips was a nonsubscriber under the Texas Worker's [sic] Compensation laws with respect to the Plaintiffs." *See id*. ¶¶ 90–94.

[29]    Incredibly, at the hearing Mr. Hankins asserted that he was not making any claims that Phillips "lack[ed] subscribership or any of the things that the Court warned us against."  Transcript of Pretrial Conference Held on June 11, 2007 ("June 11 Transcript") [Doc. # 121], at 6.

In a particularly telling exchange highlighting the ever increasing confusion created by Mr. Hankins' filings, the Court asked, "[W]ho do you think your new parties are?":

(continued...)

ERISA and the False Claims Act would not be entertained in this suit, but could, if

legally viable, be brought in a separate lawsuit.[30]  Furthermore, the Court made clear

its expectation that Mr. Hankins and Mr. Houston "continue to collaborate" to craft a

complaint that conformed with Federal Rule of Civil Procedure 11 and to get the claims

into some "manageable" posture.[31]  Ultimately, the Court ruled that the Curry Plaintiffs

(represented by Mr. Houston) would be permitted to file a "Fourth Amended

Complaint" and the Jones Plaintiffs (represented by Mr. Hankins) would be permitted

to file a *supplement* to that complaint in which the Jones Plaintiffs could adopt the

---

[29]     (...continued)
        Mr. Hankins:   MetLife and Aetna.
        The Court:      Do you mean Cigna and Aetna?
        Mr. Hankins:   Ma'am?
        The Court:      Cigna and Aetna?  I know you're saying MetLife, but you don't have
                      any allegations against Met Life.  You have allegations against Cigna.
        Mr. Hankins:   Okay.  It's Cigna then.  It's Aetna and MetLife.

June 11 Transcript [Doc. # 121], at 7.

[30]     *Id.* at 8 ("[T]he ERISA claims need to be brought in a separate case."), 9 ("So no ERISA
allegations and no ERISA claims are going to proceed in this case, and to the extent that they
are asserted in your complaint . . . [they are] stricken without prejudice."), 13 ("So the next
complaint that is filed will be without the eighth claim for relief that's ERISA.").  Mr. Hankins
expressly agreed to take the ERISA claim out of future filings, and acknowledged the Court's
admonition that there were to be "no more claims, which implied no more defendants."  *Id.*
at 17, 19.

Mr. Hankins then asked whether "that go[es] for the False Claims Act allegations as well?"
The Court replied, "[N]o new claims."  *Id.* at 9–10.

[31]     *Id.* at 30–33.

claims in Mr. Houston's new pleading to the extent they wanted to do so.[32] The Court further ruled that if the Jones Plaintiffs wanted to raise additional claims, they could "file a complaint so long as [Mr. Hankins] commit[ted] to [the Court] that [he would] research each element [to] be sure [he had a] factual basis for each element of every claim . . . include[d]."[33] The Court also reminded the attorneys of their Rule 11 obligations and stressed that "[t]he amended complaints need to be short and to the point."[34]

On June 18, 2007, pursuant to the Court's June 11 Order, Mr. Houston filed on behalf of the Curry Plaintiffs a Fourth Amended Complaint [Doc. # 116] that variously

---

[32]    In response, Mr. Hankins noted that he would "prefer it be the other way." *Id.* at 39. However, the Court stressed its desire to have clear allegations that comported with prior rulings of the Court and noted that of the two complaints, only Mr. Houston's pleading appeared to be "streamlined" and attempted to focus the issues. *Id.* at 19.

[33]    *Id.* at 33.

[34]    *Id.* at 35, 42. It is noted that Defendants have moved to dismiss the Jones Plaintiffs' Second Amended Complaint [Doc. # 112] and, if leave to amend is granted, to dismiss the Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], on the ground that all the claims asserted in these pleadings contravene the Court's March 2007 Order and oral rulings at the June 11 conference. To the extent Defendants' Motion to Dismiss [Doc. # 124] is directed to the Jones Plaintiffs' Second Amended Complaint, the motion technically is moot because the Court rejected the Second Amended Complaint at the June 11 conference when it ordered Messrs. Hankins and Houston to submit new amended pleadings. The Second Amended Complaint was stricken as violative of the Court's earlier orders and is not before the Court. Plaintiffs' First Amended Complaint [Doc. # 25] currently is the operative pleading in this case for the Jones Plaintiffs. However, the issues Defendants raise in the Motion to Dismiss concerning the effect of the Court's March 2007 Order on claims in the Jones Plaintiffs' Second Amended Complaint apply equally to the claims in Plaintiffs' First Amended Complaint. Accordingly, the Court deems the Motion to Dismiss directed to the First Amended Complaint.

asserts six claims against the Phillips Defendants, Pacific, and Williams & Bailey.[35]

On June 25, 2007—the deadline for Mr. Hankins to submit his supplement to Mr. Houston's Complaint—Mr. Hankins filed the Motion to Amend [Doc. # 119] that is the subject of this Memorandum and Order.[36]  Contrary to the Court's directions, Mr. Hankins also filed a proposed sixty-one page complaint [Doc. # 119-3] that, while containing a multitude of factual assertions, contains putative legal claims that are, at best, difficult to understand.[37]  This proposed complaint also largely reiterates claims Mr. Hankins' clients alleged in earlier pleadings.[38]  On June 26, Mr. Hankins filed a

---

[35]     *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116].

[36]     On July 25, 2007, Mr. Hankins filed an Amended Motion with Memorandum in Support of the Jones Plaintiffs' Motion for Leave to File an Amended Pleading (the aforementioned "Memorandum in Support") [Doc. # 127], discussed in Section III.C, *infra*.

[37]     *See, e.g.*, Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 80(c) (quoted exactly as submitted):

> "Without that control the employer Defendants would have to payout large sums for injury claims, workers comp insurance premiums civil tort claims, and medical examination fees in the present and thirty year into the future for exposure to 1,3 butadiene, the union Defendants would lose union member to the as true injury/exposure claims were processed, law Defendants would client base would be eventually reduced by shared legal opening of the scheme, employer would lose experienced workers and have adverse outlooks on future business plans"

[38]     Indeed, the Jones Plaintiffs' newest proposed complaint filed by Mr. Hankins still includes claims taken verbatim from Plaintiffs' First Amended Complaint that are premised on Phillips not being a valid workers' compensation insurance subscriber. *Compare, e.g.*, Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 49, *with* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 93 (alleging that Defendants made fraudulent representations "that Plaintiffs were covered under a worker's [sic] compensation insurance policy").
(continued...)

"Designation of Defendants and Claims" ("Designation") [Doc. # 120].  It is unclear

if Mr. Hankins intends this "Designation" to be the supplement that the Court permitted

him at the June 11 conference to file.  Nonetheless, the Court construes this document

as Mr. Hankins' clients' authorized (albeit untimely) supplement to the Curry Plaintiffs'

Fourth Amended Complaint.[39]

## II.   STANDARDS OF LAW

### A.   Leave to Amend

Federal Rule of Civil Procedure Rule 15(a) provides that leave to amend

pleadings "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a); *Price*

*v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607–08 (5th Cir. 1998).  Rule 15(a) "evinces

a bias in favor of granting leave to amend."  *Goldstein v. MCI WorldCom*, 340 F.3d

---

[38]     (...continued)
Inexplicably, Mr. Hankins also includes the ERISA claim that was precluded by explicit order at the June 11 pretrial conference. *See* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 104–113.

[39]     *See* Designation of Defendants and Claims [Doc. # 120].  The Jones Plaintiffs' "Designation" was not only filed late, but is confusing.  Despite Mr. Hankins' assertion in the Designation's "Introduction" that the document "provides the court [sic] with [the Jones Plaintiffs'] additions[,] supplementations, and claim's [sic]" and that his clients "would only add one new claim pursuant to their motion, that of defendants [sic] violation of ERISA," *id.* at 3, the Designation actually offers little of substance to the Curry Plaintiffs' Fourth Amended Complaint.  Moreover, the Jones Plaintiffs in fact seek to add at least two new claims to this case against at least five new defendants.  *See* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], at 16 ("First Claim for Relief: 1,3 Butadiene Exposure: Failure to Provide a Safe Workplace for Plaintiffs against Phillips, Phillips Daelim and Phillips Sumika [Phillips subsidiaries]"), 49 ("Seventh Claim for Relief:  Violation of [ERISA] against Defendants Aetna, Cigna, and Met Life").

238, 254 (5th Cir. 2003) (citations omitted).  However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citations and internal quotation marks omitted); *see also Goldstein*, 340 F.3d at 254; *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).  If the district court lacks a "substantial reason" to deny leave, its discretion is not broad enough to permit denial. *Lyn-Lea*, 283 F.3d at 286; *see also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 367 (5th Cir. 2001) (denying leave to amend absent articulable reason is an abuse of discretion); *Wimm*, 3 F.3d at 139.

In deciding whether to grant leave to file an amended pleading, the district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (denying leave to amend because of bad faith and dilatory motive); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").  "Futility" in the context of a Rule 15 motion to amend means that the proposed "amended complaint would fail

to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Duzich v. Advantage Financial Corp.*, 395 F.3d 527, 531 (5th Cir. 2004) (approving district court's denial of a Rule 15(a) motion to amend using the same reasoning as it used in granting the Rule 12(b)(6) motion to dismiss).  However, "[e]ven if substantial reason to deny leave exists, the court should consider prejudice to the movant, as well as judicial economy, in determining whether justice requires granting leave." *Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985) (citing *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir. 1982)).

### B.    <u>Motion to Dismiss</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.*  A claim is legally insufficient under Rule 12(b)(6) "only if there is no set of facts that could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief." *Power Entm't, Inc. v. Nat'l Football League Prop., Inc.*, 151 F.3d 247, 249 (5th Cir. 1998).  However, "a statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient to overcome a

motion to dismiss.  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)

(quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1216

at 156–59); *see also Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974

(2007) (A plaintiff must allege "enough facts to state a claim to relief that is plausible

on its face.").

A cause of action can fail to state a "claim upon which relief can be granted" if,

*inter alia*, it fails to comply with the requirements of Rule 8(a)(2).  *See, e.g., Buerger

v. Sw. Bell Tel. Co.*, 982 F. Supp. 1247, 1249–50 (E.D. Tex. 1997); *Bank of Abbeville*

*& Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, *2 (5th Cir. Oct.

9, 2006) ("[A] Rule 12(b)(6) motion to dismiss for failure to state a claim may be a

proper vehicle to challenge the sufficiency of a pleading under Rule 8."). Federal Rule

of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim

showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The United

States Supreme Court has made clear, however, that a plaintiff is obligated to provide

"more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 127 S. Ct. at 1964–65 (2007) (quoting *Papasan v.

Allain,* 478 U.S. 265, 286 (1986)) (On a motion to dismiss, courts "are not bound to

accept as true a legal conclusion couched as a factual allegation."). "Factual allegations

must be enough to raise a right to relief above the speculative level." *Twombly*, 127

S. Ct. at 1965. "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* at 1965 n.3 (internal quotations omitted). When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

In addition, Rule 9 of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b); *see Leatherman v. Tarrant County Narcotics Intelligence Unit*, 507 U.S. 163, 168–69 (1993); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). In particular, the pleadings should "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997)). Rule 9(b)

requires a plaintiff to allege the existence of *facts* sufficient to warrant the pleaded conclusion that fraud has occurred.  *See In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (emphasis added).  Because the requirements of Rule 9 are more stringent than those for Rule 8, the Supreme Court's decision in *Twombly* applies with at least equal force to the Rule 9 pleading requirements.

## III.   ANALYSIS

### A.   Claims Based on Alleged Absence of Workers' Compensation Coverage

The Jones Plaintiffs' proposed Fourth Amended Complaint alleges that Defendants improperly handled workers' compensation claims for Phillips' injured employees by engaging in an "elaborate and complex scheme" aimed at "defrauding Plaintiffs out of filing personal injury claims against Phillips,"[40] and accomplished via subterfuge of the requirements of Texas workers' compensation law,[41] bribery,[42] and "corporate shell games."[43]  These theories are largely premised on the position that Phillips lacked workers' compensation coverage—a theory the Court has definitively

---

[40]     Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 23.

[41]     *Id.* ¶¶ 24, 26, 29, 30.

[42]     *Id.* ¶ 25.

[43]     *Id.* ¶¶ 35–42.

rejected.[44]  To the extent the Jones Plaintiffs' proposed claims are based on this failed

theory, the claims are dismissed and/or leave to amend to add these claims is denied,

as described in more detail below.

Many claims in the Jones Plaintiffs' proposed Fourth Amended Complaint also

are premised on a distinct theory:  The Jones Plaintiffs claim they were not actually

employed by Phillips at the time of the accident, but instead worked for one of two

foreign subsidiaries, Phillips Daelim and Phillips Sumika, which allegedly operated the

K-Resin plant as joint venturers with Phillips and which were not subscribers to

workers' compensation insurance.[45]  Thus, the Jones Plaintiffs deduce that there is no

bar to the personal injury claims they seek to assert.[46]   The Jones Plaintiffs

alternatively allege that because Phillips failed to abide by certain unspecified

regulations of the Texas Department of Insurance, Phillips was "not a [workers'

compensation insurance] subscriber under the laws of the State of Texas."[47]

These theories are unavailing.  The Court has held not only that Phillips was a

---

[44]     *See* March 2007 Order [Doc. # 89].

[45]     Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 35–36.  These
allegations are largely copied from the Jones Plaintiffs' proposed Second Amended Complaint
[Doc. # 73-2], which was the subject of the Court's Memorandum and Order of Dec. 11,
2006 [Doc. # 88] denying Mr. Hankins' previous Motion to Amend [Doc. # 73].

[46]     Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 37–38, 45.

[47]     *Id.* ¶ 43 (emphasis in original).

subscriber to workers' compensation insurance, but also that those injured in the explosion—all Plaintiffs working at the K-Resin plant at the time of the explosion—were covered by that insurance.[48]  Sixteen months after commencement of this suit—which was not filed until more than four years after the accident in question[49]—the Court decided the question of Phillips workers' compensation insurance subscriber status.  By that time, the allegation that Phillips was the owner and operator of the K-Resin plant had been included in Plaintiffs' First Amended Complaint[50] and the Phillips Defendants had *admitted* that the allegation was true.[51]  Moreover, before the Court ruled in March 2007, Plaintiffs had amended their original complaint once, had been granted lengthy continuances to permit investigation and

---

[48]     *See* March 2007 Order [Doc. # 89], at 26 ("The record establishes that Phillips obtained a workers' compensation insurance policy that covers Plaintiffs.").

[49]     This suit was also filed two years after some Phillips employees injured in the March 2000 accident—including at least one of the Curry Plaintiffs and at least one Intervenor—filed suit in 2002 in state court raising substantially the same claims asserted here.  That case concluded in 2005 when the state court granted summary judgment to the defendants—among them Phillips and Pacific—holding that Phillips was a valid workers' compensation insurance subscriber and that the injured parties were covered under Phillips' workers' compensation policy.  *See* Phillips' Motion for Partial Summary Judgment [Doc. # 37], Exhibit A: *Arguelles v. Kellogg Brown & Root, Inc.*, No. 2002-14984 (334th Dist. Ct., Harris Co., Tex. Dec. 7, 2005).  The Court takes judicial notice of the state court judgment.

[50]     Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 25.

[51]     Answer to Amended Complaint by the Phillips Defendants [Doc. # 33], ¶ 25 ("Defendants admit that an explosion and fire occurred on March 27, 2000 in the K-Resin Unit of the Houston Chemical Complex, owned and operated by Phillips Petroleum Company.  Defendants admit that Plaintiffs were employees of Phillips Petroleum Company . . . .").

discovery on the question of subscriber status, and had extensively briefed the issue.[52]

The Jones Plaintiffs' cursory suggestion that they did not know of Phillips Daelim and Phillips Sumika until recently[53] and their conclusory assertion about the Texas insurance regulations do not entitle Plaintiffs to further amendment of their complaint.  The Court exercises its discretion under Rule 15 to deny this relief for several reasons.  First, the new allegations contradict allegations elsewhere in the Fourth Amended Complaint that "[a]t the time of the explosion and fire . . . the [Phillips plant] was owned and operated by Phillips Petroleum Company, d/b/a/ Phillips Chemical Company."[54]  Plaintiffs submit no evidentiary material and make no argument to establish factually that the information on which this theory is premised is "new."[55] In any event, these corporate and regulatory matters could and should have been discovered much earlier in this dispute.[56] Defendants would suffer prejudice if entirely

---

[52]    *See* March 2007 Order [Doc. # 89], at 4–5.

[53]    *See* Motion to Amend [Doc. # 119], at 4–5.

[54]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 21.

[55]    *See* Memorandum in Support [Doc. # 127], at 12–13 (citing the legal standard for granting a motion for leave to amend but providing no explanation for the Jones Plaintiffs' failure to raise such claims earlier in this litigation).

[56]    The Court gave Mr. Hankins notice of this issue at the June 11 hearing when questioning his suggestion that he was previously unaware of Phillips Daelim and Phillips Sumika.  *See* June 11 Transcript [Doc. # 121], at 13–19.  In fact, counsel for the Curry Plaintiffs, Mr. Houston, stated that the attorneys "knew about them [the two subsidiaries] a long time ago," *id.* at 20, a position supported by statements made by Mr. Hankins himself during a June 20, 2006
(continued...)

new theories are asserted so late in this case.  This suit has been pending for years, was

not initiated until more than four years after the explosion, and has been a complex and

expensive proceeding.  The Jones Plaintiffs unduly delayed in attempting to assert the

"new employer" and regulatory defect theories, and will not now be permitted to do so.

Alternatively, leave to amend to assert this new theory is denied because the

parties relied on the theory that Phillips was Plaintiffs' employer and the operator of the

plant, and the Court granted summary judgment on that basis.  "A busy district court

need not allow itself to be imposed upon by the presentation of theories seriatim."

*Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967).  "There is even

more reason for refusing to allow amendment long after summary judgment has been

granted."  *Id.* (citing *County of Marin v. United States*, 150 F. Supp. 619, 623 (N.D.

Cal. 1957), *rev'd on other grounds*, 356 U.S. 412 (1958)).  Indeed, "[m]uch of the

value of summary judgment procedure . . . would be dissipated if a party were free to

rely on one theory in an attempt to defeat a motion for summary judgment and then,

should that theory prove unsound, come back long thereafter and fight on the basis of

some other theory."  *Id.* at 470.  The Court has noted that "[t]he existence of applicable

---

[56]      (...continued)
          pretrial conference.  *See* Transcript of June 20, 2006 Pretrial Conference [Doc. # 48], at
          46–47 ("We have evidence that shows that there were joint ventures between Korean
          companies and other companies within [the Pasadena Plastics] complex.").

workers' compensation coverage has always been a crucial threshold issue in this case."[57]  The Court is not willing to revisit this issue once again by allowing the Jones Plaintiffs to assert new theories where no valid reason has been offered for their failure to present these theories at an earlier time.

Finally, the doctrine of judicial estoppel operates to bar the Jones Plaintiffs' assertion of new theories that the plant was owned and operated by, or that Plaintiffs were employed by, entities other than Phillips.  Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from thereafter assuming an inconsistent position.  *See Matter of Coastal Plains, Inc.*, 179 F.3d 197, 205–06 (5th Cir. 1999); *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).  The purpose of judicial estoppel is "to protect the integrity of the judicial process by preventing parties from playing fast and loose with courts and prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Coastal Plains,* 179 F.3d at 206 (citation omitted); *see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3rd Cir. 1996) ("The basic principle . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").  Courts generally identify

---

[57]    Memorandum and Order of Dec. 11, 2006 [Doc. # 88], at 7.

two limitations on the application of judicial estoppel: (1) The position of the party to be estopped must be clearly inconsistent with a prior position, and (2) the court must have accepted the prior position. *See Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000); *Coastal Plains*, 179 F.3d at 206.  Judicial acceptance means only that the court has adopted the position urged by a party, either as a preliminary matter or as part of a final disposition.  *Id.* at 206.

As explained above, the judicial estoppel criteria are met in this case.  Plaintiffs asserted from inception of this suit in 2005 that Phillips owned and operated the K-Resin plant, and that Phillips was Plaintiffs' employer.  Phillips admitted these assertions were true.[58]  The Court relied on these allegations in its March 2007 Order [Doc. # 89].  Plaintiffs may not delay this litigation by belatedly asserting a putative new theory inconsistent with their earlier positions.

Thus, to the extent the Jones Plaintiffs' proposed claims rely upon theories that the Jones Plaintiffs were not covered under a workers' compensation insurance policy held by their employer, Phillips, their Motion to Amend is denied.

**B.    RICO Claim**

In response to a request by the Court for additional briefing on the viability of

---

[58]        *See supra* note 51 and accompanying text.

the Jones Plaintiffs' proposed RICO claim[59]—the "Second Claim for Relief" in their proposed Fourth Amended Complaint [Doc. # 119-3]—the Union Defendants, Pacific, the Phillips Defendants, and Williams & Bailey have separately filed motions to dismiss that claim [Docs. # 158, # 159, # 160, and # 161, respectively]. The Jones Plaintiffs subsequently dismissed this claim [Doc. # 164]. Thus, Defendants' motions to dismiss the Jones Plaintiffs' RICO claim are **denied as moot**.

However, the Court notes that in their motion to voluntarily dismiss their proposed RICO claim, the Jones Plaintiffs state that according to a "nationally recognized RICO expert with whom they consulted" about the viability of the claim, it was determined that the "claim had a flaw and should not be sought because the [the Jones Plaintiffs' proposed] fraud claims . . . substantially covered the issues before the Court."[60] The Court, in its own research on this claim, agrees that the claim is fundamentally flawed, but not for the reason the Jones Plaintiffs assert.

First, the claim as drafted is unclear and confusing, thus precipitating the Court's request for additional briefing.[61] Indeed, the confusion generated by the Jones

---

[59]    *See* Order of Oct. 31, 2007 [Doc. # 157].

[60]    Jones Plaintiffs' Voluntary Motion to Dismiss [their Proposed RICO Claim] [Doc. # 164], ¶¶ 2–3.

[61]    *See, e.g.*, Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 63 (reprinted exactly as submitted):

(continued...)

Plaintiffs' claim is not limited to cryptic prose.   The claim is also internally

contradictory.[62]

Further, the Jones Plaintiffs' RICO claim relies on repeated assertions that

Phillips was not a valid workers' compensation insurance subscriber.[63]  As noted in

---

[61]    (...continued)

> The center piece for the Enterprise scheme was the "UAB" plant that the participants agreed to process injury claims from the 03/27/2000 through, for worker compensation claims, group health plan benefits, civil settlement claims, humanitarian compensation, multi-employer insurance coverage, and as a process of coercing of employees to participate in the "UAB" plan or be terminate for lack of benefits.

See also id. ¶ 68 (reprinted exactly as submitted):

> The participants in this Enterprise have used advertisements, mail, broadcasts, other media, SEC filings, personal appearances, group meetings, many public statements, and state and federal hearings, as part of a concerted and coordinated campaign to affirm their stated promise and lawful duty through group benefit plans, lawful insurance, collective representation, to address injury/exposure resulting from the March 27, 2000 explosion Defendants and their co-conspirators sed the Enterprise to make their material fraudulent actions cause the plaintiffs, and others, to accept their false representations . . . .

[62]    For example, the Jones Plaintiffs claim that the alleged RICO "enterprise" "came into existence on or about November 1999 as evidenced by a policy of workers' compensation coverage . . . ." Id. ¶ 61. However, the Jones Plaintiffs subsequently state that one alleged enterprise member, Defendant Pacific, "furthered the goals of the Enterprise" by "[p]rovid[ing] a workers' compensation policy that was presented as valid but was filed on the day of the explosion[,] March 27, 2000." Id. ¶ 75(b).  In fact, the Jones Plaintiffs appear fundamentally to allege that an enterprise formed in 1999 for the purpose of mishandling injury claims related to an accident that had yet to occur.  The claim lacks any allegations that a RICO enterprise existed to adjust claims related to any other occurrence.

[63]    See id. ¶¶ 62 ("In furtherance of the Enterprise, the participants agreed to hold up as valid, sham workers' compensation insurance . . . ."), 65 ("Behind the shield of the deceptive campaign of sham insurance . . . ."), 75(c) ("[Phillips o]perated . . . with out [sic] the require
(continued...)

Section III.A., *supra*, the question of Phillips' subscriber status has been decided and claims premised on Plaintiffs' assertions that Phillips' was not insured are rejected as legally and factually unsupportable.

Moreover, the Court agrees with many of Defendants' arguments that the claim, though spanning forty-three pages (including eighteen pages incorporated by reference), suffers from several pleading deficiencies.[64]  The Jones Plaintiffs seek relief pursuant to 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue therefor in any appropriate United States district court and shall recover . . . [treble] damages."  A RICO claim must allege legally cognizable injury.  *See Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215 (5th Cir. 1988).  Further, RICO claims under § 1962 require: "(1) a *person* who engages in (2) a *pattern of racketeering activity*, (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*."  *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir. 1993) (emphasis in original) (citing *Delta Truck & Tractor,*

---

[63]    (...continued)
[sic] insurance coverage . . . ."), 75(n) ("[Defendant Byers] failed to notify [the Jones P]laintiffs that they were not properly insured . . . ."), 75(o) ("[Defendant Hickerson f]ailed to notify plaintiff [Union] members of the lack proper [sic] insurance coverage . . . ."), 80(e) ("Defendants . . . would and did attempt to cover up their knowledge of the illegal sham insurance plan . . . .").

[64]    *See, e.g.*, *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997) ("A complaint can be long-winded, even prolix, without pleading with particularity. . . . ").

*Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988).   The Court is not convinced that the Jones Plaintiffs have adequately pled a "pattern of racketeering activity," which requires a plaintiff to allege—in the manner required by Rules 8 and 9 of the Federal Rules of Civil Procedure—"(1) predicate acts—the requisite racketeering activity, and (2) a pattern of such acts." *Burzynski,* 989 F.2d at 742.

Finally, and most importantly, the Jones Plaintiffs' proposed RICO claim fails to allege a "RICO injury."   In essence, the Jones Plaintiffs appear to allege that Defendants fraudulently concealed the true source of payments made to the Jones Plaintiffs to compensate them for injuries suffered in a workplace accident.   In so doing, the Jones Plaintiffs claim they were deceived into believing that these payments constituted workers' compensation benefits.   Believing they were receiving workers' compensation, the Jones Plaintiffs allege that they were fraudulently denied their right to pursue personal injury lawsuits against their employer due to the exclusive remedies regime of Texas' workers' compensation law.

"'[A RICO] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation.'" *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).   This requirement excludes from recovery personal injuries *and* the economic consequences of personal injuries.

*See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992).   As the Court discusses in more depth in the Curry Memorandum,[65] the Jones Plaintiffs' fundamentally seek recovery for personal injuries and thus, they lack standing to assert a RICO claim.

### C.      ERISA and False Claims Act Claims

The Jones Plaintiffs' Motion to Amend focuses entirely on their request to add an ERISA claim to this suit.  On July 25, 2007—a full month after the filing deadline established by the Court—Mr. Hankins filed his supplemental Memorandum in Support.[66]  The Memorandum in Support merely highlights Mr. Hankins' patent disregard for the Court's various prior orders prohibiting addition of new claims and new defendants.  In the Memorandum, Mr. Hankins sets out factual bases for an ERISA claim (which he apparently seeks to bring against five new

---

[65]      *See* Curry Memorandum [Doc. # 168], at 28–32.

[66]      In this document,  Mr. Hankins explains that the Motion to Amend [Doc. # 119] that was originally filed was done so "inadvertently" by his secretary "because she has been instructed to always file [a] Motion to Amend."  Memorandum in Support [Doc. # 127], at 1.  The Court questions the reliability of this assertion as the original Motion to Amend is a unique document drafted in connection with the particulars of this unusual case, not a "form" motion or other ministerial document.  It is inconceivable that a lawyer would have given a non-lawyer authority to draft and file such pleading.  To do so would clearly have violated the District's rules and procedures.  *See* Admin. Procedures for ECF Rule 8.  Nonetheless, in the interest of justice, the Court will consider both the Motion to Amend and the Memorandum in Support.

defendants—MetLife, Aetna, Cigna, Phillips Daelim, and Phillips Sumika).[67]   The request to add an ERISA claim is in flagrant disregard of the Court's prior orders and again is denied.

The Jones Plaintiffs also "request that the Court allow [them] to add a claim under the False Claims Act . . . once they have sent their letter precedent to the United States Attorney General."[68]   The Jones Plaintiffs, through their counsel Mr. Hankins, concede that adding a False Claims Act claim would cause additional delay in litigating this case,[69] which the Court noted during the June 11 hearing it was unwilling to allow.[70]   Plaintiffs provide no basis for the Court to alter its previously ruling that any False Claims Act causes of action must be pursued in a separate action, as it was—and still is—too late to add new claims in this case.[71]   The Jones Plaintiffs' request to add a False Claims Act claim is denied.

With the foregoing in mind, to avoid any misunderstanding, the Court will

---

[67]   Memorandum in Support [Doc. # 127], at 8–11.

[68]   *Id.* at 13.

[69]   *Id.* at 11 ("The procedure for filing this claim would first involve a [sic] filing Plaintiffs' claims with the Court *in camera*.  After an investigation by the Department of Justice within 60 days, the Department of Justice will decide whether or not to pursue the claims.  If the Department of Justice decides not to pursue the claims, Plaintiffs will be able to continue the lawsuit themselves.").

[70]   *See* June 11 Transcript [Doc. # 121], at 9–12, 35.

[71]   *See id.* at 8–12, 35; *see also supra* note 30 and accompanying text.

address specifically the viability of each of the Jones Plaintiffs' claims in their proposed

Fourth Amended Complaint.

### D.   Evaluation of the Jones Plaintiffs' Proposed Claims

1.   **"First Claim for Relief:  *1,3 Butadiene Exposure:  Failure to Provide a Safe Workplace for Plaintiffs against Phillips, Phillips Daelim, and Phillips Sumika*"**

The Jones Plaintiffs' first proposed claim for relief is that Phillips and its joint

venturers negligently "failed and omitted to provide the Plaintiffs with the required

monitoring [for exposure to hazardous materials following the March 2000 accident]

pursuant to [unidentified] standards promulgated and implemented by OSHA . . . ."[72]

The Jones Plaintiffs assert that they were "independent contractors that worked for the

uninsured joint venture Defendants and were invitees on the Defendant Phillips'

premises" and, therefore, they are "not subject to the exclusive remedies provision of

the Texas Workers' Compensation Act."[73]

In seeking to bring this claim, which was not asserted in Plaintiffs' First

Amended Complaint, but which relies on no facts unavailable to Plaintiffs when that

complaint was filed, the Jones Plaintiffs attempt to add Phillips Daelim and Phillips

Sumika as additional defendants.  As discussed above, this proposed claim is new and

---

[72]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 55.

[73]    *Id*. ¶ 50.

thus in clear contravention of the Court's admonition that no new claims or defendants may be added in this suit. The proposed claim also fails because it relies on the Jones Plaintiffs' assertion that they were not covered by Phillips' workers' compensation insurance.[74]  Accordingly, the Jones Plaintiffs' Motion to Amend to add the butadiene exposure claim is denied.

> ### 2.    Unnumbered Claim: "*Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. § 1985(3)*"

The Jones Plaintiffs assert in an unnumbered claim that "Defendants conspired to defraud Plaintiffs into believing they had no cause of action against Defendant Phillips for the injuries they suffered from the [March 2000] explosion."[75]  They also allege conclusorily: "As a result of Defendants' fraudulent scheme, Plaintiffs . . . have been injured in their person, property and business.  The Defendants' fraudulent scheme also prevented Plaintiffs from pursuing tort actions against Defendant Phillips, thus, [sic] depriving Plaintiffs of equal protection of the law, privileges and guarantees

---

[74]    *See supra* Section III.A.

[75]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 89.  The Jones Plaintiffs include in this claim allegations against putative defendant Phillips Sumika.  In accordance with the Court's prior order that no new defendants would be added to this suit, *see* March 2007 Order [Doc. # 89], at 28; *see also* June 11 Transcript [Doc. # 121], at 10, the Jones Plaintiffs' Motion to Amend [Doc. # 119] is denied as to any claims asserted against this proposed defendant.

under the Constitution and Texas law."[76]  Plaintiffs provide no factual basis for these allegations except to incorporate by reference the preceding forty-two pages of the proposed complaint, much of which sets forth one or more new or rejected theories of relief, as discussed above.  No allegations identify the Jones Plaintiffs' racial or ethnic backgrounds, let alone any other meaningful factual basis for a § 1985 conspiracy claim.

A claim under § 1985(3) requires proof of five elements:

(1)     The defendants must conspire . . . ;

(2)     for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

(3)     one of more of the conspirators must commit some act in furtherance of the conspiracy; whereby

(4)     another is either (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States; and

(5)     the conspirators' conduct must be unlawful independent of the Section 1985(3) violation.

*Scott v. Moore*, 680 F.2d 979, 987 (5th Cir. 1982).  "That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin v. Breckenridge*,

---

[76]     Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 90.

403 U.S. 88, 101 (1971). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102; *accord Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993).

The Jones Plaintiffs offer no factual allegations regarding any of the five necessary elements of proof, let alone any suggestion that Defendants were motivated by "discriminatory animus." Indeed, the Jones Plaintiffs fail to allege any "class-based" classifications.[77] They merely allege conclusorily that Defendants engaged in a conspiracy to deprive them of equal protection of the laws. This assertion is insufficient to demonstrate that the Jones Plaintiffs are entitled to relief. *See Twombly*, 127 S. Ct. at 1964 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

---

[77] The Jones Plaintiffs' proposed "Ninth Claim for Relief" alludes to the fact that Defendants have "discriminated against African-American Plaintiffs" but fail to allege the race of any particular plaintiff. The Court is not obligated "to forever sift through incomprehensible pleadings after the plaintiff has been given notice of the pleading requirements of his case." *Old Time Enterprises v. Int'l Coffee Corp.*, 862 F.2d 1213, 1219 (5th Cir. 1989) (citations omitted). "Judges are not like pigs, hunting for truffles buried in briefs." *De la O v. Housing Auth. of City of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Having failed to demonstrate any attempt to abide by the Court's directions to assert factually-supported claims, the Jones Plaintiffs are foreclosed from amending this claim.

recitation of the elements of a cause of action will not do.") (internal quotes and citations omitted); *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient.") (citations omitted).

These Plaintiffs have submitted four versions of their claims.[78]  None sets forth facts that satisfy the pleading standards for a § 1985, indicating that the proposed amendment would be futile.  *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) (citing *DeLoach v. Woodley*, 405 F.2d 496 (5th Cir. 1969)); *Byrne v. Kysar*, 347 F.2d 734 (7th Cir. 1965) ("Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be granted.").  Additionally, the conspiracy to violate civil rights claim is grounded fundamentally on the rejected assumption that Phillips was not a valid workers' compensation insurance subscriber.[79]

---

[78]    A conspiracy to violate § 1985(3) claim was first alleged in Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 45–47.

[79]    Indeed, because Phillips has been deemed a valid workers' compensation insurance subscriber, the Jones Plaintiffs' contention that they were unlawfully deprived of their right to pursue tort claims against their employer is fundamentally flawed.  Texas law makes clear that "recovery of workers' compensation is the exclusive remedy of an employee . . . against the [subscribing] employer . . . for the death or work-related injury sustained by the employee."  TEX. LAB. CODE ANN. § 408.001(a); *see also Jones v. ALCOA, Inc.*, 339 F.3d 359, 365 n.8 (5th Cir. 2003) (citing *Hoffman v. Trinity Indus.*, 979 S.W.2d 88, 89 (Tex. App.–Beaumont 1999, pet. dism'd)).  Although the Texas Workers' Compensation Act exempts from its exclusive remedies regime personal injury suits by an injured employee
(continued...)

Accordingly, the Jones Plaintiffs' Motion to Amend is denied as to this claim, and their conspiracy to interfere with civil rights claim is dismissed.

### 3.   "THIRD CLAIM FOR RELIEF: *Fraud*"

In their proposed fraud claim, the Jones Plaintiffs allege that Defendants engaged in fraud by making material misrepresentations of fact to the Jones Plaintiffs and to state and federal agencies.[80]   This claim largely replicates the fraud claim in Plaintiffs' First Amended Complaint.[81]   In both pleadings, this claim relies expressly and implicitly upon the Jones Plaintiffs' assertion that Phillips was not a valid workers'

---

[79]   (...continued)
allegedly caused by an employer's intentional torts, *see Medina v. Herrera*, 972 S.W.2d 597, 600 (Tex. 1996), the Jones Plaintiffs have failed to demonstrate the existence of viable intentional tort claims against Phillips. *See infra* Section III.D.6; Curry Memorandum [Doc. # 168], at 11–26 (dismissing the Jones Plaintiffs and the Curry Plaintiffs' intentional tort claim against Phillips).

[80]   The Jones Plaintiffs claim, *inter alia*, that:

> Defendants have engaged in fraud . . . [by making] representations concerning the cause of the explosion, lack of corporate identity of Phillips Chemical, the ownership and control of the Complex, representations concerning the entitlement and/or payment of purported workers' compensation benefits to Plaintiffs, and that Plaintiffs were covered under a workers' compensation insurance policy."

Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 93.

[81]   *See* Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 49.  In addition to repeating the fraud claim from their First Amended Complaint, the Jones Plaintiffs' proposed Fourth Amended Complaint adds another allegation that "Defendants also engaged in fraud by making material [mis]representations to state and federal agencies . . . concerning maintenance of valid workers' compensation insurance coverage . . . ." Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 94.

compensation insurance subscriber.  Because the Court specifically rejected the fraud

theory in the March 2007 Order as factually unsupported,[82] and held that "Plaintiffs

may not maintain any cause of action predicated on a contention that Phillips was not

a valid subscriber to the Texas workers' compensation system,"[83] the Jones Plaintiffs

may not now re-assert that claim.[84]

---

[82]   *See* March 2007 Order [Doc. # 89], at 8–9 & n.10 ("Most of Plaintiffs' claims against
Defendant Phillips, Pacific, and Williams [&] Bailey are founded on the premise that Phillips
did not have workers' compensation insurance covering Plaintiffs at the time the explosion
occurred. For example, Plaintiffs contend that Defendants committed fraud by falsely
representing to the injured employees that Phillips was properly insured and that Plaintiffs'
legal rights were accordingly curtailed by Texas law.").

[83]   *Id.* at 26.

[84]   *See supra* Section III.A.

The Jones Plaintiffs' assert that Defendants made a variety of other fraudulent representations
in addition to those regarding Phillips alleged lack of workers' compensation insurance.  *See
supra* notes 80–81.  The Jones Plaintiffs' were admonished at the June 11 hearing to
"research each element and be sure [that there is a] factual basis for each element of every
claim" they seek to assert. June 11 Transcript [Doc. # 121], at 33.  By continuing to assert
that Phillips was not a valid workers' compensation insurance subscriber, it is clear that the
Jones Plaintiffs did not heed the Court's instructions to carefully review their causes of action,
which is itself sufficient reason to deny their motion to amend this claim.  However, their
proposed fraud claim also fails to meet the pleading requirements of Rule 9(b), which
"requires the plaintiff to allege 'the particulars of time, place, and contents of the false
representations, as well as the identity of the person making the misrepresentation and what
[that person] obtained thereby.'" *Tuchman v. DSC Commc'n Corp.*, 14 F.3d 1061, 1068 (5th
Cir. 1994) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.
1992)).  The Jones Plaintiffs' general and conclusory allegations regarding vague
"representations" made by unspecified "Defendants" fails to adequately plead a fraud claim.
*See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003);
*Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *see also Goren v. New
Vision Int'l*, 156 F.3d 721 (7th Cir. 1998) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d
1170, 1175 (2d Cir. 1993)) ("Rule 9(b) is not satisfied where the complaint vaguely attributes
the alleged fraudulent statements to 'defendants.'").

Accordingly, the Jones Plaintiffs' Motion to Amend to assert the fraud claim is denied and this claim is dismissed.

### 4.    "FOURTH CLAIM FOR RELIEF:  *Conspiracy*"

The Jones Plaintiffs allege that the Defendants engaged in a conspiracy to mislead them regarding their right to bring tort claims against Defendants.  This claim is an almost verbatim repetition of the conspiracy claim in Plaintiffs' First Amended Complaint.[85]

The Jones Plaintiffs allege in their proposed Fourth Amended Complaint that Defendants "conspired . . . to create the impression that . . . Plaintiffs were covered by workers' compensation insurance."[86]  This claim is barred by the Court's previous ruling dismissing claims based on Phillips' alleged lack of workers' compensation insurance coverage.[87]  The Jones Plaintiffs' Motion to Amend is denied as to this conspiracy claim and the claim is dismissed.

### 5.    "FIFTH CLAIM FOR RELIEF:  *Negligence*"

In their proposed "Fifth Claim for Relief," the Jones Plaintiffs literally incorporate by reference the "Negligence and Breach of Fiduciary Duty" claim

---

[85]    *See* Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 50–52.

[86]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 97.

[87]    *See supra* Section III.B; *see also* March 2007 Order [Doc. # 89], at 26.

contained in the Curry Plaintiffs' Fourth Amended Complaint.[88] Defendants have filed

motions to dismiss directed at this claim[89] and the Jones Plaintiffs filed responses in

opposition.[90] Having joined the Curry Plaintiffs' claim, it is unnecessary for the Jones

Plaintiffs to file an additional pleading to raise this same cause of action. Hence, their

Motion to Amend is denied as to this claim.

The Court addresses the viability of the proposed claim in a separate ruling on

motions addressing the Curry Plaintiffs' Fourth Amended Complaint.[91]

### 6.    "SIXTH CLAIM FOR RELIEF: *Aggravated Assault*"

In their "Sixth Claim for Relief," the Jones Plaintiffs allege that Defendants

committed aggravated assault by "intentionally, knowingly[,] or recklessly caus[ing]

serious . . . bodily injury to each of the Plaintiffs in this action."[92] This cause of action

is essentially a copy of the "aggravated assault" claim in the Curry Plaintiffs' Fourth

---

[88]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 98; *see also* Curry
Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 58–64.

[89]    *See* Phillips Defendants' Motion to Dismiss the Curry Plaintiffs' Claims [Doc. # 130];
Williams & Bailey's Motion to Dismiss [the Curry Plaintiffs' Claims] [Doc. # 133]; Pacific's
Motion to Dismiss [the Curry Plaintiffs' Claims] [Doc. # 138].

[90]    *See* Response to [The Phillips Defendants'] Motion to Dismiss [Doc. # 153]; Response to
[Pacific's] Motion to Dismiss [Doc. # 154]; Response to [Williams & Bailey's] Motion to
Dismiss [Doc. # 155].

[91]    *See* Curry Memorandum [Doc. #168], at 58–61.

[92]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 100.

Amended Complaint.[93]   For the same reasons set out in Section III.D.5, *supra*, the Jones Plaintiffs' Motion to Amend is denied as to this claim.  The Court also addresses the aggravated assault claim in a ruling on pending motions directed to the Curry Plaintiffs' Fourth Amended Complaint.[94]

> **7.     "SEVENTH CLAIM FOR RELIEF:** *Violation of ERISA against Defendants Aetna, Cigna, and MetLife"*

The Jones Plaintiffs next allege that proposed defendants—Aetna, Cigna, and MetLife Insurance Companies—engaged in practices aimed at impeding recovery of the Jones Plaintiffs' disability benefits in violation of the Employee Retirement Income Security Act,  29 U.S.C. § 1101 *et seq.* ("ERISA").[95]  As described above, the Court has ruled that Plaintiffs may not add new claims—specifically an ERISA claim—or new defendants, at this late stage of the case.[96] The Jones Plaintiffs' Motion to Amend to include an ERISA claim is denied.

---

[93]   *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 43–47.   The differences between the Jones Plaintiffs' claim and the Curry Plaintiffs' claim are minimal and inconsequential.  For example, the Jones Plaintiffs discuss acts committed by Defendants involving "1,3, butadiene" while the Curry Plaintiffs refer merely to "butadiene."

[94]   *See* Curry Memorandum [Doc. # 168], at 11–26.

[95]   Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 104–113.

[96]   *See supra* Section III.C; *see also supra* note 30 and accompanying text.

8.    **"EIGHTH CLAIM FOR RELIEF:** *Fraud against Defendant PACE Officers***"**

In their proposed "Eighth Claim for Relief," the Jones Plaintiffs allege that PACE union officers fraudulently failed in their "duty to report accurate information [to Union members] about the ability of injured workers to file suit absent a workers' compensation bar because of Defendant Phillips' non-subscriber status."[97]  This claim was asserted in Plaintiffs' First Amended Complaint.[98]  Because this claim is founded on the rejected theory that Phillips was not a valid subscriber to workers' compensation insurance, the Jones Plaintiffs' Motion to Amend is denied as to this claim and this claim is dismissed.[99]

9.    **"NINTH CLAIM FOR RELIEF:** *Violation of 42 U.S.C.* **[§]** *1981—Intentional Discrimination against Phillips, ConocoPhillips, Chevron Phillips, LP and LLC, PACE Local 4227 and PACE International Union***"**

In their proposed "Ninth Claim for Relief," the Jones Plaintiffs substantively repeat the § 1981 "Intentional Discrimination" claim in Plaintiffs' First Amended Complaint.[100]  The Jones Plaintiffs allege simply that Defendants "maintained a system

---

[97]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 115.

[98]    Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 82–85.

[99]    *See supra* Section III.A.

[100]    Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 94–98.  Plaintiffs alleged in the First Amended Complaint that:

(continued...)

for making benefit and compensation decisions that is excessively subjective and through which Defendants discriminated against African-American Plaintiffs treating Plaintiffs disparately and by denying them the opportunity to be treated fairly as afforded to other similarly situated White employees outside their protected class."[101] The Jones Plaintiffs also allege that the "Corporate Defendants' discriminatory practices have denied Plaintiffs benefits and compensation to which they were entitled, which has resulted in [damages] [and] Union Defendants ensured that White union members received all of their negotiated benefits while failing to accomplish the same for its African-American [e]mployees including Plaintiffs."[102]

The factual basis for this claim is unclear. The Jones Plaintiffs fail to identify their racial or ethnic backgrounds and fail to disclose the "benefit and compensation decisions" to which they refer. This latter information is impossible to ascertain, given numerous disparate allegations in the fifty-two preceding pages of the proposed

---

[100]     (...continued)
          Defendants have maintained a system for making benefit and compensation
          decisions that is excessively subjective and through which Defendants
          discriminated against Plaintiffs by denying them the opportunity to be treated
          fairly as afforded to other similarly situated employees outside of their
          protected class.   The Defendants' discriminatory practices have denied
          Plaintiffs benefits and compensation to which they were entitled . . . .

      *Id.* ¶¶ 95–96.

[101]     Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 119.

[102]     *Id.* ¶ 120.

complaint referencing a variety of benefits plans, including workers' compensation and at least two internal employee benefits plans.[103]  In addition, many of the factual assertions incorporated by reference into this claim run afoul of the Court's ruling that Plaintiffs may not rely on the theory that Phillips lacked valid workers' compensation insurance.  These defects alone justify denial of leave to amend and dismissal of this claim.  *See, e.g., Twombly*, 127 S. Ct. at 1965 n.3 (citing 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1216, pp. 235–36 (3d ed. 2004)) ("Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.")

Aside from these deficiencies in pleading and theory, this claim suffers from another basic problem: the claim is barred by the statute of limitations.  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones*, 339 F.3d at 366.  "Federal civil rights actions brought under [§] 1981, which lack an express statute of limitations, are governed by the most

---

[103]     *See id.* ¶ 24 (referencing workers' compensation, "Unavoidable Absence Benefits,"and the "Employee Assistance Plan").

closely analogous limitations period provided under state law." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 463–66 (1975); *Jones*, 339 F.3d at 364).  "Under Texas law, one must file a discrimination claim under [§] 1981 within two years of the adverse employment action." *Id.* (citing *Byers v. Dallas Morning News*, 209 F.3d 419, 424 (5th Cir. 2000)).

All the claims in this case stem from the March 2000 explosion at Phillip' K-Resin plant.  A thorough reading of the Jones Plaintiffs' proposed Fourth Amended Complaint reveals that all benefits and compensation for injuries from the explosion were alleged to have been distributed within several months of the accident.[104]  No conduct by Defendants, nor other wrongdoing, is alleged to have occurred after the close of 2001.[105]  The Jones Plaintiffs did not file this case until 2005, well outside the two-year limitations period applicable to § 1981 claims.

The Jones Plaintiffs assert that "due to the pervasive fraudulent conduct of the

---

[104]    *See e.g.*, *id.* ¶¶ 26, 34, 44.

[105]    *See id.* ¶¶ 21 (noting the March 27, 2000 accident), 22 (discussing the March 29, 2000 meeting of Phillips' injured employees with representatives from Defendant Williams & Bailey), 26 (alleging that Defendants improperly paid benefits for a "six-month period" following the explosion), 34 (referencing a December 2000 exchange between Jones Plaintiff Neloms and a Phillips insurance administrator), 30 (discussing testimony that was offered by a former Phillips employee in a November 2001 "contested case" hearing involving Jones Plaintiff Edward O'Brien).

Defendants,"[106] it was not until August 2004 that they "uncovered" the "scheme . . . to

defraud Plaintiffs out of filing individual personal injury claims against Phillips."[107]

Although the Supreme Court has "declined to address whether Title VII suits are

amenable to a discovery rule," *Ledbetter v. Goodyear Tire & Rubber Co.*, ___ U.S.

___, 127 S. Ct. 2162 n.10 (2007), the Fifth Circuit has made clear that a plaintiff's

discrimination claim accrues on the date of the alleged discriminatory act, not on some

future date at which the plaintiff discovers that the act may have been motivated by

discriminatory animus.  *See Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992); *see

also Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986).[108]  The Jones

Plaintiffs offer no explanation or factual basis to support the argument that they could

not have discovered these allegedly disparate benefits payments within the limitations

---

[106]  *Id.* ¶ 47.

[107]  *Id.* ¶ 23.

[108]  Although *Ledbetter*, *Pacheco*, and *Merrill* were decided in the context of Title VII
employment discrimination claims, the elements of a Title VII claim and a § 1981 claim are
"identical." *Anderson v. Douglas & Lomanson Co.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994);
*see also Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) ("[T]he
analysis under both [§ 1981 and Title VII] are identical, the only substantive differences
between the two statutes being their respective statutes of limitations and the requirement
under Title VII that the employee exhaust administrative remedies.") (internal citations
omitted).  The Fifth Circuit has expressly applied its limitations analysis to discrimination
claims arising under the Age Discrimination in Employment Act.  *See Chapman v. Homco*,
886 F.2d 756, 758 n.3 (5th Cir. 1986).  Similarly, the Court sees no reason why the analysis
in *Pacheco* and *Merrill* would not apply with equal force to claims arising under § 1981.  *See,
e.g.*, *Malone v. Bodycote Heat Treating*, No. H-04-3940, 2007 U.S. Dist. LEXIS 65034,
*13–*14 (S.D. Tex. Sept. 4, 2007).

period. Indeed, the Jones Plaintiffs did not respond to arguments on this issue asserted by the Union Defendants,[109] who have pointed out that at least one of the Jones Plaintiffs sought, and received, a decision from the National Labor Relations Board ("NLRB") in 2001, which dismissed allegations of preferential treatment by Defendants in the payment of benefits for injuries suffered in the March 2000 explosion.[110]

Although not pled by the Jones Plaintiffs, the Court has considered whether the "continuing violations" doctrine justifies their delay in asserting this claim. The doctrine, which operates to "extend[] the limitations period on otherwise time-barred claims," applies where "the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram*, 361 F.3d at 279. "The core idea [of

---

[109]   The Jones Plaintiffs also did not reply to the Union Defendants' other substantive arguments regarding the viability of this claim (*e.g.*, that the Jones Plaintiffs' claims are preempted by the National Labor Relations Act).

[110]   *See* Union Defendants' Response in Opposition to [the Jones] Plaintiffs' Motion to Amend [Doc. # 149], at 24 n.17 & Ex. 1: "NLRB Letters." The Court takes judicial notice of the NLRB decision. In addition, to the extent the Jones Plaintiffs are seeking to rely on the doctrine of "fraudulent concealment" to toll the running of the statute of limitations on this claim, the Court notes that "[t]here cannot be fraudulent concealment of facts which admittedly were or should have been known by [the plaintiff]." *Fusco v. Johns-Manville Prods. Corp.*, 643 F.2d 1181, 1184 (5th Cir. 1981). Having determined that the Jones Plaintiffs were in possession of sufficient information to pursue this claim in 2001, the Court need not reach whether fraudulent concealment may apply in this instance.

The Court also notes that its concern with statutes of limitation could not be a surprise to counsel for the Jones Plaintiffs. The Court's comments at the June 11 hearing put counsel Hankins on notice of this issue. *See* June 11 Transcript [Doc. # 121], at 7 (discussing a potential time bar to the proposed ERISA claim), 57 (reminding Mr. Hankins to consider statutes of limitations when drafting his supplement to Mr. Houston's Fourth Amended Complaint).

the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a . . . civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 537 (5th Cir. 1998) (quoting *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560 (5th Cir. 1985)).  However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Pegram*, 361 F.3d at 279 (citing *Nat.'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "[E]ach discriminatory act starts a new clock for filing charges alleging that act." *Id.*

Much like "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," *Pegram*, 361 F.3d at 280 n.5, individual decisions concerning benefits and compensation are discrete acts, each of which triggers the statutory limitations period.  This is so because "'in fairness and logic, [such acts] should have alerted the average lay person to act to protect his rights.'"[111] *Webb*, 139 F.3d at 537 (quoting *Glass*, 757 F.2d at 1561); *see also Ledbetter*, 127 S. Ct. 2162; *Price v. Jefferson*, 470 F. Supp. 2d 665, 685 (2006) ("[W]hile discriminatory

---

[111]   *Webb* and some of the other cases cited in this section were decided in the context of a Title VII claim.  However, as noted above, the elements of a Title VII claim and of a § 1981 claim are identical.  *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 n.3 (5th Cir. 1999); *see also supra* note 108.  Likewise, there is no evidence that the continuing violations doctrine would operate differently under either provision.

paychecks involve repeated conduct, decisions affecting salary are considered discrete acts to which the continuing violations theory does not apply.").

This case was filed in November 2005. The facts alleged in the Jones Plaintiffs' proposed Fourth Amended Complaint do not establish that Defendants engaged in conduct in violation of the Jones Plaintiffs' civil rights under § 1981 after November 2003, and thus during the two years prior to commencement of this suit. The facts alleged demonstrate no grounds upon which to apply the continuing violations doctrine. The Jones Plaintiffs have been given ample opportunity to amend their pleadings to include viable claims demonstrating entitlement to relief. They have failed to plead a timely § 1981 civil rights claim. Thus, their Motion to Amend is denied as to this claim and it is dismissed.

> 10. **"TENTH CLAIM FOR RELIEF:** *Breach of Duty of Good Faith and Fair Dealing [against Defendants] Phillips, Williams & Baliley [sic], Defendant Insurance Companies, Defendant Unions"*

In their tenth proposed claim, the Jones Plaintiffs copy the "breach of fiduciary duty" claim from Plaintiffs' First Amended Complaint.[112] The Jones Plaintiffs assert

---

[112]   Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 68–70. The sole difference between this claim as asserted in the proposed Fourth Amended Complaint and how it was stated in Plaintiffs' First Amended Complaint is that now the Jones Plaintiffs expressly list as Defendants against whom this claim is asserted: "Phillips; Williams & Baliley [sic]; Defendant Insurance Companies; Defendant Unions; Pace Local 4227 and Pace International."

(continued...)

simply that Defendants, "[b]y virtue of contracts between and [sic] Plaintiffs and the fact that Defendants deducted and/or otherwise handled money payable and belonging to Plaintiffs, Defendants owed a fiduciary duty to Plaintiffs to properly investigate, evaluate, and otherwise handle Plaintiffs' claims as they related to the 2000 explosion."[113]   There are no other facts alleged to support this claim.[114]

Although Texas courts have "declined to impose an implied covenant of good faith and fair dealing in every contract, [they] have recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract." *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).  However, such a duty "does not exist in Texas unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract." *Lovell v. Western Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. 1988) (citing *Arnold*, 725 S.W.2d at 167).  "The special relationship necessary to create [a duty of good faith and fair

---

[112]   (...continued)
To the extent this claim adds new defendants—the "Defendant Insurance Companies," which the Court presumes is intended to include Aetna, Cigna, and MetLife (in addition to Pacific)—the Jones Plaintiffs' Motion to Amend is denied.  *See supra* note 75.

[113]   Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 124.

[114]   Plaintiffs simply incorporate by reference all preceding allegations in the fifty-three prior pages of the complaint.

dealing] either arises from the element of trust necessary to accomplish the goals of the contract, or has been imposed by the courts because of an imbalance of bargaining power." *Lovell*, 754 S.W.2d at 302 (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Other relationships giving rise to such a duty involve "long standing personal or social relationships," *Lovell*, 754 S.W.2d at 302 (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)), or proof of "dealings of long standing to justify reliance by the complaining party." *Lovell*, 754 S.W.2d at 302 (citing *Consolidated Bearing & Supply Co., Inc. v. First Nat'l Bank at Lubbock*, 720 S.W.2d 647, 649 (Tex. App.–Amarillo 1986, no writ.)).

### i.   Phillips

As to Defendant Phillips, the Jones Plaintiffs have not alleged the existence of any express contractual language giving rise to a duty of good faith and fair dealing on the part of their employer. They have also failed to demonstrate the existence of a special relationship necessary to recover for a breach of this duty. Indeed, Texas courts have expressly declined to extend the duty of good faith and fair dealing to employment relationships, *see Rios v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 816 (Tex. App –Corpus Christi 1996, writ denied); *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.–Dallas 1993, writ dism'd w.o.j.), and this Court has already rejected Plaintiffs' belated and unsupported assertion that the employees at the K-Resin plant worked for

a company other than Phillips.[115]  Thus, the Jones Plaintiffs' attempt to assert a claim

against Phillips for a breach of the duty of good faith and fair dealing is rejected.

### ii.    Williams & Bailey

As to Defendant Williams & Bailey, the Jones Plaintiffs have failed to establish

that they had any contractual relationship with the law firm.  According to the Jones

Plaintiffs' proposed Fourth Amended Complaint, at the meeting during which

representatives of Williams & Bailey allegedly explained Phillips employees' rights

under Texas workers' compensation law, "Williams & Bailey . . . entered into

attorney/client representation contracts with certain contractors and Union employees

. . . ."[116]  Subsequent allegations indicate that these "certain contractors and Union

employees" did not include the Jones Plaintiffs.[117]  Similarly, there are no allegations

that the Jones Plaintiffs had any other "special relationship" with the law firm which

---

[115]    *See supra* Section III.A.

[116]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 22.

[117]    *See id.* ¶¶ 25, 27 (discussing "lucrative personal injury settlements" obtained for "chosen
Union members" by Phillips, PACE, and Williams & Bailey).

In addition, at the June 11 pretrial hearing, attorneys for Williams & Bailey discussed with the
Court their concerns that some of the allegations previously raised by Plaintiffs required proof
of attorney-client relationships.  *See* Transcript [Doc. # 121], at 53–54, 56.  At that time, the
Court again reminded counsel for both the Jones and Curry Plaintiffs of their obligations
under Rule 11 to only make allegations that are supported by sufficient facts.  *See id.* at 56.

would give rise to a duty of good faith and fair dealing.[118]   However, assuming *arguendo* that there was some implicit attorney/client relationship sufficient to give rise to a duty requiring Williams & Bailey to "properly investigate, evaluate, and otherwise handle Plaintiffs' claims as they related to the 2000 explosion,"[119] this relationship nevertheless fails to provide the Jones Plaintiffs with a legally viable good faith and fair dealing claim against the law firm because any such claim would be time-barred, as explained below with respect to Pacific.

### iii.    Pacific

Next, with regard to the proposed breach of good faith and fair dealing claim against Pacific, the Court assumes for the purposes of the pending motions that the Jones Plaintiffs and Pacific had a special relationship that gave rise to the necessary duty of good faith and fair dealing.  *See Arnold*, 725 S.W.2d at 167 ("In the insurance context a special relationship arises out of the parties' unequal bargaining power and

---

[118]   Although unclear, the Jones Plaintiffs may contend that they had an implied contractual relationship with Williams & Bailey formed when Williams & Bailey attorneys met with Phillips' injured employees after the March 2000 explosion to explain their rights to recovery. This is insufficient to create a duty of good faith and fair dealing as contemplated under Texas law.  *See Lovell*, 754 S.W.2d at 302.  Moreover, to the extent that the Jones Plaintiffs have adopted factual allegations raised by the Curry Plaintiffs in their Fourth Amended Complaint, it is notable that nowhere in that complaint is there an allegation demonstrating the existence of express contractual language or a special relationship creating a duty owed to the Jones Plaintiffs by Williams & Bailey consistent with the Jones Plaintiffs' claim.  *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116].

[119]   Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 124.

the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insured's misfortunes in bargaining for settlement or resolution of claims."). The claim for breach of this duty, however, is untimely. The statute of limitations governing this cause of action is two years. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 827 (Tex 1990). "[A] cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). "The fact that damage may continue to occur for an extended period after denial [of an insurance claim] does not prevent limitations from starting to run. Limitations commences when the wrongful act occurs resulting in some damage to the plaintiff." *Murray*, 800 S.W.2d at 828 (citing *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967)). Thus, a decision by an insurance company to deny a claim, or any other discrete benefit or compensation decision, would trigger the limitations period. *See Murray*, 800 S.W.2d at 828–29.

However, the "discovery rule" provides an exception to this general proposition,"defer[ring] a cause of action until the plaintiff knew or, in the exercise of reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). "The discovery rule, in application, proves to be a very limited exception to the statute of

limitations . . . [that] has been permitted in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 455–56. "'[I]nherently undiscoverable' [does not] mean merely that a particular plaintiff did not discover his injury within the prescribed period of limitations . . . ." *Ellert v. Lutz*, 930 S.W.2d 152, 156 (Tex. App.–Dallas 1996, no writ). Instead, the question before a court is "whether [a plaintiff's injury] is 'the *type* of injury that generally is discoverable in the exercise of due diligence.'" *Wagner & Brown v. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001) (quoting *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)) (emphasis added); *see Computer Assocs.*, 918 S.W.2d at 456 (collecting cases); *see also San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 96 (Tex. App.–San Antonio 2003, pet. denied) ("Whether the discovery rule applies to a given context is a question of law.").

A corollary to the discovery rule is the doctrine of fraudulent concealment. *See S.V. v. R.V.*, 933 S.W.2d 1, 4–6 (Tex. 1996). "Although similar in effect, the discovery rule exception and deferral based on fraud or concealment exist for different reasons. Unlike the discovery rule exception, deferral in the context of fraud or concealment resembles equitable estoppel." *Computer Assocs.*, 918 S.W.2d at 456. "Fraudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense to a plaintiff's claim." *Borderlon v. Peck*, 661 S.W.2d 907, 908

(Tex. 1983). Thus, "when a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999). As with the discovery rule generally, this doctrine is also fairly limited in application as it requires that a plaintiff "prove that the defendant had actual knowledge of the facts allegedly concealed, and a fixed purpose to conceal the wrong." *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984) (quoting *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974)); *see also Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 515–16 (N.D. Tex. 2001) (collecting cases). And as with the discovery rule, "the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon*, 661 S.W.2d at 909.

In this case, the Jones Plaintiffs allege that Defendants failed to "properly investigate, evaluate, and otherwise handle Plaintiffs' claims as they related to the 2000 explosion."[120]  As noted above, the proposed Fourth Amended Complaint does not

---

[120]    Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 124.

contain any allegations of wrongdoing by Defendants after 2001.[121]   Indeed, the proposed complaint suggests that decisions concerning the Jones Plaintiffs' claims were made within "a six-month period" following the accident.[122]   Nowhere do the Jones Plaintiffs allege facts to support the proposition that any breach of the duty of good faith and fair dealing occurred within the two year period prior to commencement of this lawsuit, *i.e.*, between November 2003 and November 2005.[123]   *See, e.g., Murray*, 800 S.W.2d at 829 (a claim for bad faith denial of an insurance claim accrues on the day coverage is denied); *cf. Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994) (claims under the Texas Insurance Code regarding improper denial of coverage accrue on the day coverage is denied); *see also Davis v. Aetna Casualty & Surety Co.*, 843 S.W.2d 777 (Tex. App.–Texarkana 1992, no pet.) ("Limitations is not tolled by additional wrongful acts or damages occurring after the denial of a claim.").

In addition, although the Jones Plaintiffs claim that "the pervasive fraudulent conduct of the Defendants" prevented timely discovery of their legal claims,[124] there

---

[121]   *See, e.g., supra* note 105 and accompanying text.

[122]   Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 26.

[123]   Texas courts have noted that where "an insurance company strings an insured along without denying or paying a claim, limitations will be tolled." *Murray*, 800 S.W.2d at 828 n.2. However, there are no allegations in the Jones Plaintiffs' proposed complaint that decisions by Pacific were still pending as of November 2003, two years prior to their filing this suit.

[124]   *Id.* ¶ 47.

appears no reason that the Jones Plaintiffs would not have had reasonable notice of the facts giving rise to any alleged violation of the duty of good faith and fair dealing immediately upon, or soon after, payment or denial of their claims.  The Court finds nothing "inherently undiscoverable" about the claims decisions made and communicated to the Jones Plaintiffs in the six months immediately following the March 2000 explosion.  At a minimum, no later than the end of 2001, the Jones Plaintiffs were in a position to diligently investigate whether they had a viable claim for breach of the duty of good faith and fair dealing.  *See Ellert*, 930 S.W.2d at 156 ("An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.").[125]  Indeed, claims were asserted by plaintiffs in this action for wrongdoing associated with the payment of benefits for injuries suffered in the March 2000 explosion as early as 2001[126] and again in 2002.[127]

---

[125]   Because the Court finds the Jones Plaintiffs injuries not to be inherently undiscoverable, it does not reach whether "evidence of the injury was objectively verifiable." *Computer Assocs.*, 918 S.W.2d at 455.

[126]   *See supra* note 110 and accompanying text.

[127]   *See supra*  note 49.

In addition, the Court is skeptical that the Jones Plaintiffs have adequately pled fraudulent concealment as an affirmative defense to a statute of limitations bar to their breach of good faith and fair dealing claim.  *See KPMG Peat Marwick*, 988 S.W.2d at 749 (noting that a plaintiff bears the burden of pleading and proving fraudulent concealment of a cause of action).  The doctrine is only vaguely suggested in the "Factual Background" section of the Jones Plaintiffs' proposed complaint.  *See* Jones Plaintiffs' proposed Fourth Amended
(continued...)

Accordingly, there is no justification to toll accrual of this claim until November 2003—three and a half years after the March 2000 explosion.

### iv.    PACE International and PACE Local

Finally, the Court addresses the Jones Plaintiffs' breach of the duty of good faith and fair dealing claim against PACE International and Local.  For reasons explained below, this claim is likely preempted by the National Labor Relations Act.[128] Nevertheless, the Court does not reach that question because, for the same reasons as apply to Defendant Pacific, any such claim for a breach of a duty of good faith and fair dealing arising out of the relationship between the Jones Plaintiffs and their union are barred by the applicable two-year statute of limitations.[129]

---

[127]    (...continued)
Complaint [Doc. # 119-3], ¶¶ 23, 47.  Although these facts are incorporated by reference into every claim asserted by the Jones Plaintiffs, such incorporation of fraudulent concealment to this claim appears inapposite with the theory of relief running throughout the Jones Plaintiffs' complaint.  Fundamentally, the Jones Plaintiffs claim that Defendants engaged in unlawful conduct to conceal the true *source* of benefits and compensation paid to Phillips employees for injuries suffered in the K-Resin plant explosion.  The  Jones Plaintiffs concede that compensation was paid and that they knew of these payments.  There is nothing to suggest that Defendants fraudulently concealed facts or made fraudulent representations to injured employees regarding the "investigation, evaluation, or handling" of the claims for which benefits were paid.  *See id.* ¶¶ 123–125.

[128]    *See infra* Section III.D.11.

[129]    In addition, the Jones Plaintiffs' claim against the Union fails to adequately allege what acts on the part of the Union give rise to this cause of action.  The Court cannot determine what role the Union was to play in the "investigat[ion], evaluat[ion], and . . . handl[ing]" of the Jones Plaintiffs' claims for injuries sustained in the March 2000 explosion.  *See Twombly.*, 127 S.Ct. at 1965 n.3.  For that reason as well, this claim against the Union fails.

Because permitting assertion of the Jones Plaintiffs' breach of duty of good faith and fair dealing claim would be futile, their Motion to Amend is denied as to this claim, and the claim is dismissed as to all Defendants. *See, e.g.*, *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994) (futility is a valid reason for denying leave to amend).

11. **"ELEVENTH CLAIM FOR RELIEF:** *Breach of Fiduciary Duty Pursuant to the Labor-Management Reporting and Disclosure Act against Plemmons* **[sic]**, *Current and Former PACE [O]fficers for the Local and International Union"*

The Jones Plaintiffs next allege that certain PACE union officers breached fiduciary duties owed to them by "conspiring to and engaging in a scheme to cover for Phillips['] . . . failure to provide workers' compensation benefits for its workers after the explosion of 2000, . . . lead[ing PACE members] into believing that their only remedy was to pursue workers' compensation benefits and not common law claims provided to them under Texas common law," and by "failing to account for any profit received by [Defendant] Plemons [a Union officer injured in the March 2000 explosion]" who "received millions of dollars in a settlement outside of [Phillips'] illegal workers' compensation scheme."[130]  To the extent this claim is based upon the Jones Plaintiffs' continued insistence that Phillips was not a valid workers'

---

[130]  Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 130.  This claim was also presented in Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 71–76.

compensation insurance subscriber, the Motion to Amend is denied and this aspect of the claim is dismissed.

Another theory presented in this claim is that Defendant Plemons "breached his fiduciary duty to PACE and its members by simultaneously holding a salaried position with PACE and Defendant Phillips after receiving the windfall settlement."[131]  This claim fails as well.  Although suggestive of a state law "breach of fiduciary duty" claim, this theory actually is cognizable only as a violation of the duty of fair representation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*  The Supreme Court has held that the duty of fair representation is implied in the NLRA. *See, e.g.*, *Ford Motor Co. v Huffman*, 345 U.S. 330 (1953).  This duty arises out of the relationship between a union and members of a collective bargaining unit, *see Richardson v. United Steel Workers of Am.*, 864 F.2d 1162, 1166 (5th Cir. 1989), and requires a union fairly to represent all of those employees subject to a collective bargaining agreement with an employer.  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (When a union acts as the collective bargaining agent of its members it is obliged "to secure the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty[,] and to avoid arbitrary conduct.").  The Fifth Circuit has held that this federal duty preempts state substantive

---

[131]     Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 131.

law.  *Richardson*, 864 F.2d at 1166–67.

While the Jones Plaintiffs allege violations of Texas common law tort duties, "[i]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern."  *Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292 (1971).  "[B]ecause the plaintiffs in this case alleged that the Union breached a duty that arose from its status as their exclusive collective bargaining agent under the NLRA, . . . this duty [is] defined by federal law."[132]  *Richardson*, 864 F.2d at 1166–67.  The Jones Plaintiffs in substance allege against Plemons a claim for breach of the duty of fair representation.[133]

---

[132]  In seeking to bring this claim, the Jones Plaintiffs have included assertions that the fiduciary duty allegedly owed them by Defendant Plemons arises expressly out of his position as a PACE representative.  *See* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 127–129.  The fact that the Jones Plaintiffs have asserted their claim against a Union officer rather than the Union as a whole is of no consequence, since the claim arises out of Plemons' alleged role as a collective bargaining representative.  *See, e.g.*, *Guidry v. Int'l Union of Operating Eng'r*, 882 F.2d 929 (5th Cir. 1989); *Richardson*, 864 F.2d at 1165; *Miranda*, 219 F. App'x at 344.  Similarly, while "union conduct that affects only an individual's relationship within the union structure is not circumscribed by the constraints of the [duty of fair representation]," *Bass v. Int'l Brotherhood of Boilermakers*, 630 F.2d 1058, 1063 (5th Cir. 1980), the Jones Plaintiffs' claim is premised on the theory that Plemons, once he obtained a "pecuniary interest" in the company, was unable to adequately represent the Jones Plaintiffs' interests vis-à-vis their employer.  *See* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 129.

[133]  Counsel for the Jones Plaintiffs, Mr. Hankins, was informed of this potential problem with his common law claims against PACE and PACE officers during the June 11 pretrial conference.  *See* June 11 Transcript [Doc. # 121], at 57–58.  At that time, the Court encouraged the Union Defendants to communicate their position to Mr. Hankins, in the hope that the Jones Plaintiffs would "make sincere efforts . . . not to waste [the Court's] time" by continuing to assert legally unsupportable claims.  *Id.* at 58.  Whether the Union Defendants complied with this

(continued...)

*See Miranda v. Nat'l Postal Mail*, 219 F. App'x 340 (5th Cir. 2007) (breach of fiduciary duty claim properly a fair representation claim); *Taylor v. Giant Food, Inc.*, 438 F. Supp. 2d 576, 586 n.13 (D. Md. 2006) (same).

The Jones Plaintiffs' claim, as properly defined, is subject to the six-month limitations period established by the NLRA. 29 U.S.C. § 160(b); *see also Smith v. Int'l Org. of Maters, Mates & Pilots*, 296 F.3d 380, 382 (5th Cir. 2002). The proposed complaint, as noted previously, does not allege facts to support any wrongful conduct after 2001.[134]   Applying the statute of limitations analysis set forth in Section III.D.10.iii, *supra*, the Court finds the Jones Plaintiffs' duty of fair representation claim to be time-barred. Thus, their Motion to Amend to add a breach of fiduciary duty claim against PACE union officers is denied and the claim is dismissed.

> ### 12.   "TWELFTH CLAIM FOR RELIEF:  *Breach of Fiduciary Duty against PACE Officers (Plemons, Byers, Campbell, Martinez, Lefton, Taylor, Hickerson,* [sic*])"*

In their "Twelfth Claim for Relief," the Jones Plaintiffs allege that specified PACE officers breached their fiduciary duties to the Jones Plaintiffs by engaging in

---

[133]   (...continued)
request is unknown. However, it is noted that the Jones Plaintiffs did not respond to any of the substantive arguments raised by the Union Defendants in their Response in Opposition to the Jones Plaintiffs' Motion to Amend [Doc. # 149].

[134]   *See supra* note 105 and accompanying text. The date of Plemons' alleged "windfall settlement" is not provided and the complaint fails to make clear how that settlement came about.

"schemes  and or [sic] artifices to cause PACE and its members to forego legal rights and remedies . . . ."[135]   In addition, they allege that PACE officers "filed false and misleading reports regarding the  obligations of Defendant Phillips to compensate the workers involved in the accident by [sic] workers' compensation benefits . . . [and] neglected to notify federal and local authorities . . . of the true financial and workers' compensation status of their employer."[136]   This claim is copied verbatim from Plaintiffs' First Amended Complaint[137] and relies on the theory that Phillips was not a valid workers' compensation insurance subscriber.   For the reasons discussed in Section III.A, *supra*, the Jones Plaintiffs' Motion to Amend is denied as to this claim and it is dismissed.

### 13.   "THIRTEENTH CLAIM FOR RELIEF: *Loss of Consortium*"

In their "Thirteenth Claim for Relief," the Jones Plaintiffs seek recovery for their spouses' loss of consortium, specifically, "loss of affection, solace, comfort, companionship, society, assistance, and sexual relations."[138]   Loss of consortium is actually an element of damages and not an independent cause of action.   *See Whittlesey*

---

[135]   Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 133.

[136]   *Id*. ¶ 135.

[137]   Plaintiffs' First Amended Complaint [Doc. # 25], ¶¶ 77–81.

[138]   Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 138.

*v. Miller*, 572 S.W.2d 665, 666 n.1 (Tex. 1978).  This claim is identical to the loss of consortium claim in the Curry Plaintiffs' Fourth Amended Complaint.[139]  The Court addresses Defendants' motions pertaining to this "claim" in its ruling on the Curry Plaintiffs' complaint.[140]  The Jones Plaintiffs' Motion to Amend is denied as to this claim.

### D.      Remaining Claims in Plaintiffs' First Amended Complaint

Having concluded that the Jones Plaintiffs' Motion to Amend is denied in its entirety, the Court next turns to the live complaint for the Jones Plaintiffs, Plaintiffs' First Amended Complaint [Doc. # 25], to which Defendants' Motion to Dismiss [Doc. # 124] is deemed directed.[141]  Plaintiffs' First Amended Complaint alleges seventeen causes of action, eleven of which were realleged in the Jones Plaintiffs' proposed Fourth Amended Complaint; all of which claims have been dismissed, as discussed herein and in the Court's Memorandum and Order addressing the Curry Plaintiffs' pleading.[142]  The six remaining claims from Plaintiffs' First Amended Complaint are

---

[139]      *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 55–57.

[140]      *See* Curry Memorandum [Doc. # 168], at 57–58.

[141]      *See supra* note 34.

[142]      The claims from Plaintiffs' First Amended Complaint that were realleged and that are dismissed in this Memorandum and Order are the "First Claim for Relief: [Violation of RICO]," "Second Claim for Relief:  [Violation of 42 U.S.C. § 1985(3)]," "Third Claim for Relief: Fraud," "Fourth Claim for Relief:   Conspiracy," "Seventh Claim for Relief:
(continued...)

deemed to have been abandoned by the Jones Plaintiffs as factually and/or legally unsupported, pursuant to the Court's March 2007 Order and repeated admonishments that counsel in this case abide by their Rule 11 obligations.[143]  For that reason, as well as for the reasons that follow, the Jones Plaintiffs' remaining claims are also dismissed.

1.   **"FIFTH CLAIM FOR RELIEF:** *Negligence***"**
     **"SIXTH CLAIM FOR RELIEF:** *Gross Negligence***"**

Plaintiffs' First Amended Complaint asserts a negligence and a gross negligence claim against Phillips for its alleged role in causing the March 27, 2000 explosion.[144] These claims are barred by the exclusive remedies provision of the Texas Workers' Compensation Act ("TWCA"), TEX. LAB. CODE § 408.001(a).   "Under Texas's [workers' compensation] scheme, employees covered by subscriber-purchased policies

---

[142]    (...continued)
Aggravated Assault," "Eighth Claim for Relief: Breach of Duty of Good Faith and Fair Dealing," "Ninth Claim for Relief: Breach of Fiduciary Duty Pursuant to the LMRDA [by PACE Officers]," "Tenth Claim for Relief: Breach of Fiduciary Duty against PACE Officers," "Eleventh Claim for Relief: Fraud against Defendant PACE Officers," "Fifteenth Claim for Relief: Violation of 42 U.S.C. § 1981," and "Seventeenth Claim for Relief: Loss of Consortium."

[143]    *See* March 2007 Order [Doc. # 89], at 26–27 & n.46; *see also* June 11 Transcript [Doc. # 121], at 35, 42–43, 56. The six remaining claims are the "Fifth Claim for Relief: Negligence," "Sixth Claim for Relief:  Gross Negligence," "Twelfth Claim for Relief: [Violation] of Texas Labor Code Section 451," "Thirteenth Claim for Relief:  Violation of [Texas Insurance Code] Article 21.21, *et seq*.," "Fourteenth Claim for Relief:  Intentional Infliction of Emotional Distress," and "Sixteenth Claim for Relief:  Violation of Title I – ADA."

[144]    Although the Jones Plaintiffs assert these claims against "Defendants," the allegations, fairly read, implicate only Phillips.

receive compensation on a no-fault basis, and, in exchange, subscribing employers benefit from an exclusive remedy provision.  This prevents employees from suing subscribers for negligence." *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 480 (5th Cir. 2003).  In addition, "the common law liability of [a subscribing] employer cannot be stretched to include accidental injuries cased by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury."  *Reed Tool Co. v. Copelin*, 689 S.W.2d 404 (Tex. 1985).  Thus, because Phillips was a valid workers' compensation insurance subscriber at the time of the March 2000 K-Resin plant explosion, and because that insurance covered the Jones Plaintiffs,[145] these two claims are dismissed.

### 2.     "TWELFTH CLAIM FOR RELIEF:  *Discrimination/Retaliation – Texas Labor Code Section 451*"

In the "Twelfth Claim for Relief" in Plaintiffs' First Amended Complaint, the Jones Plaintiffs allege that "Defendants . . . wrongfully caused Plaintiffs to be denied workers['] compensation benefits and retaliated against Plaintiffs for seeking workers['] compensation benefits by terminating Plaintiffs [sic] employment."[146]

---

[145]     *See* March 2007 Order [Doc. # 89], at 26; *see also supra* Section III.A.

[146]     Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 87.

Other than in the title to the claim, the Jones Plaintiffs fail to specify the statutory provision under which they seek relief.  To the extent they rely for this cause of action on Texas Labor Code Section 451.001, that provision prohibits employers from discharging or otherwise discriminating against an employee who has pursued a workers' compensation claim.[147]   TEX. LAB. CODE ANN. § 451.001.   The Jones Plaintiffs allege that only "some . . . employees" were terminated, but fail to specify who among the Jones Plaintiffs were subject to unlawful dismissal.[148]   Nevertheless, putting aside this deficiency in pleading, the claim is barred under the applicable statute of limitations.

"A suit for violation of [TEX. LAB. CODE ANN. § 451.001] must be filed within two years after such cause of action accrues."[149]  *Johnson & Johnson Med. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996); *see also Manning v. Alcatel Network Sys., Inc.*, No. 05-97-01933-CV, 1999 Tex. App. LEXIS 9248, *5 (Tex. App.–Dallas 2000, pet. denied).   A cause of action for wrongful termination "accrues when the employee

---

[147]    Nothing in this provision, nor in the other provisions of Section 451 of the Texas Labor Code, which is colloquially known as an "anti-retaliation" provision, *see, e.g.*, *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 609 (Tex. 2005), appear to create a cause of action for general wrongful "denial" of workers' compensation benefits.

[148]    *Id.* ¶ 34.

[149]    *Johnson & Johnson* was decided under a version of Texas' employment law that has since been repealed.  However, that provision was later "recodified without substantive change as sections 451.001-.003 of the Texas Labor Code."  *City of LaPorte v. Barfield*, 898 S.W.2d 288, 293 (Tex. 1995).

receives unequivocal notice of his or her termination . . . ." *Johnson & Johnson*, 924 S.W.2d at 928.  Although Plaintiffs' First Amended Complaint fails to include specific details regarding Defendants' alleged wrongful acts, the Jones Plaintiffs state that the unlawful terminations of unspecified "injured employees" occurred "a short period of time" following the March 2000 explosion.[150]  For the Jones Plaintiffs to have a viable claim for retaliatory discharge, the alleged terminations must have occurred no earlier than November 2003, three years and eight months after the K-Resin plant explosion. The complaint cannot be fairly read as alleging that these wrongful terminations occurred within the limitations period.  Accordingly, this claim is dismissed.

3.      **"THIRTEENTH CLAIM FOR RELIEF:** *Violation of Article 21.21, et seq.***"**

The next claim for relief in Plaintiffs' First Amended Complaint states that "Defendants have violated [various] provisions of the [Texas Insurance Code], Art. 21.21, *et seq.*"[151]  Article 21.21 of the Insurance Code has been recodified.  *See* Act of June 21, 2003, 78th Leg., R.S., ch. 1274 § 1, 2003 Tex. Gen. Laws 3611; *see e.g.*, *Farmers Group, Inc. v. Lubin*, 222 S.W.3d 417 (Tex. 2007).  The Jones Plaintiffs have not specified the provisions of Article 21.21 under which they seek relief, much less

---

[150]     Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 34.

[151]     *Id.* ¶ 90.

the applicable provisions of the current Texas Insurance Code.  They also fail to identify how Defendant Williams & Bailey and the Union Defendants possibly could be liable for any violations of Texas insurance law.  As such, the Jones Plaintiffs have failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).[152] *See Twombly*, 127 S. Ct. at 1965 n.3 ("Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief.").

In addition, an action under Article 21.21 must be commenced within two years "after the date on which the . . . [unlawful] act or practice occurred or within two years after the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the [unlawful] act or practice." TEX. INS. CODE ANN. art. 21.21, § 16(d) (recodified 2003).  The Jones Plaintiffs' assert that Defendants violated Texas insurance law by "failing to acknowledge . . . communications with respect to claims," "failing to adopt and implement reasonable standards for prompt investigation of claims," and "failing to attempt good faith efforts to effectuate prompt, fair[,] and equitable settlements of claims."[153]  As discussed in

---

[152]    Indeed, the Jones Plaintiffs assert, *inter alia*, that Defendants:  "Commit[ed] other actions which the State Board of Insurance as defined in its regulations adopted pursuant to its rule-making authority granted by this fact [sic] under unfair claim settlement practices."  *Id.* ¶ 90(d).  This claim is far too vague and ambiguous to adequately assert a cause of action under Rule 8.

[153]    *Id.* ¶¶ 90(a), (b), (c).

Section III.D.10.iii, *supra*, even if Defendants concealed the *source* of benefit and compensation payments made to Phillips' injured employees after the March 2000 accident, the Jones Plaintiffs should have been in possession of sufficient facts to establish a cause of action for improper valuation or settlement of injury claims immediately upon, or soon after, receipt of payments, all of which were alleged to have been made "a short period of time" after the explosion.[154]  Thus, any possible claims arising under Article 21.21 of the Texas Insurance Code are time-barred.  Accordingly, this claim is dismissed.

### 4.  "FOURTEENTH CLAIM FOR RELIEF:  *Intentional Infliction of Emotional Distress*"

The Jones Plaintiffs, in the "Fourteenth Claim for Relief" in Plaintiffs' First Amended Complaint, allege that "Defendants [Phillips and Pacific] have intentionally and/or recklessly inflicted severe emotional distress upon . . . Plaintiffs" and that "[s]uch infliction of emotional distress will continue for the rest of the Plaintiffs' lives in relation to Defendants' actions."[155]  The burden on a plaintiff to demonstrate intentional infliction of emotional distress ("IIED") is substantial.  To recover damages, "a plaintiff must establish that:  (1) the defendant acted intentionally or recklessly; (2)

---

[154]     *Id.* ¶ 34.

[155]     *Id.* ¶¶ 92, 93.

the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Thus, "intentional infliction claims do not extend to ordinary employment disputes." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005). Moreover, "a claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

Whether conduct alleged in a complaint is "sufficiently extreme and outrageous to constitute IIED is, in the first instance, a question of law for the Court." *Dixon v. State Farm Mut. Auto. Ins. Cos.*, 433 F. Supp. 2d 785, 790 (N.D. Tex. 2006); *see also GTE Sw.*, 998 S.W.2d at 616; *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). The Jones Plaintiffs' IIED claim lacks specificity, and merely refers to "various intentional breaches of duty" pled elsewhere in Plaintiffs' First Amended Complaint.[156] The Court pointed out its concern that this claim was not adequately pled during the

---

[156] *Id.* ¶ 92.

June 11 hearing and suggested that counsel reevaluate this claim before drafting their amended complaint.[157]   The Jones Plaintiffs' subsequent decision to drop this claim from the proposed Fourth Amended Complaint is persuasive evidence that the IIED claim is not factually supported.   Thus, this claim is dismissed as inadequately pled and, in any event, abandoned.

## 5.    "SIXTEENTH CLAIM FOR RELIEF: *Violation of Title I – ADA*"

Finally, Plaintiffs' First Amended Complaint alleges that Defendants violated the Americans with Disabilities Act ("ADA") by "wrongfully terminating Plaintiffs' employment based on their disability or perceived disability."[158]   Under the ADA, before filing suit in the district court, an aggrieved employee must exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within three hundred days of an adverse employment decision and receiving a right to sue letter.   *See Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002).   Plaintiffs' First Amended Complaint contains no allegations suggesting that the Jones Plaintiffs filed a charge of discrimination with the EEOC prior to filing this lawsuit.[159]   When this omission was

---

[157]    *See* June 11 Transcript [Doc. # 121], at 27–29.

[158]    Plaintiffs' First Amended Complaint [Doc. # 25], ¶ 100.

[159]    The Jones Plaintiffs allege only that they "have exhausted their administrative remedies
(continued...)

pointed out to counsel at the June 11 hearing,[160] counsel acknowledged the issue and

subsequently dropped this claim from their proposed Fourth Amended Complaint.[161]

Thus, the Court concludes that the Jones Plaintiffs intended to abandon this cause of

action because they could not prove a statutory prerequisite.  Accordingly, the ADA

claim is dismissed.[162]

## IV.   CONCLUSION

The Court concludes, after careful examination of the Jones Plaintiffs' proposed

Fourth Amended Complaint and analysis of the applicable law, that the Jones Plaintiffs

have not stated any claim that is legally viable.  The Court also concludes, for reasons

set forth in detail in a companion Memorandum and Order [Doc. # 168] addressing

---

[159]    (...continued)
against [PACE]."  *Id.* ¶ 4.

[160]    *See* June 11 Transcript [Doc. # 121], at 30–31.

[161]    The "'failure to exhaust administrative remedies [in a Title VII case] is an affirmative defense
. . . [and] the defendant bears the burden of pleading and proving that the plaintiff has failed
to exhaust administrative remedies.'"  *Enguita v. Neoplan USA Corp.*, 390 F. Supp. 2d 616,
622 (S.D. Tex. 2005 (quoting *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *see
also Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (noting that the ADA
incorporates by reference the administrative prerequisites of Title VII).  While the Jones
Plaintiffs do not bear the burden of proving that they have exhausted their administrative
remedies, counsel was expressly reminded—in the context of discussing this claim—of their
obligation to assert only those claims that are legally viable.  *See* June 11 Transcript [Doc.
# 121], at 30–31.

[162]    Although claims under the ADA are subject to equitable tolling, *see, e.g.*, *Manning v.
Chevron Chem. Co. LLC*, 332 F.3d 874, 881 (5th Cir. 2003), even if the Jones Plaintiffs had
exhausted their administrative remedies, for the reasons discussed above, it appears all claims
under the ADA would be time-barred.

Defendants' Motions to Dismiss [Docs. # 145, # 146, and # 147 ] directed to the Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], that the Curry Plaintiffs' claims adopted and incorporated by reference in the Jones Plaintiffs' proposed Fourth Amended Complaint are legally insufficient.   Therefore, those claims are also dismissed.   Accordingly, the Court denies leave to Jones Plaintiffs' to file their proposed Fourth Amended Complaint in its entirety.

The Court further concludes that for the reasons explained in this Memorandum, combined with those in the March 22 Order [Doc. # 89], the claims asserted in the Jones Plaintiffs' live pleading, Plaintiffs' First Amended Complaint [Doc. # 25], also fail to state a claim on which relief can be granted and those claims should be dismissed with prejudice.

The Court has given the Jones Plaintiffs leave to amend their claims on several occasions, but despite various attempts, they have failed to present legally viable causes of action.   Indeed, as set forth in the foregoing detailed analysis, the proposed claims addressed herein have numerous deficiencies as a matter of law.   The Jones Plaintiffs' failure to state legally viable claims under all these circumstances demonstrates that these Plaintiffs cannot, as a matter of law, state any viable claims against Defendants. Accordingly, for all the foregoing reasons and the reasons set forth in the companion Curry Memorandum [Doc. # 168] issued this day, it is

ORDERED that the Jones Plaintiffs' Motion for Leave to Amend [Doc. # 119] is **DENIED** as to all proposed claims. It is further

ORDERED that Defendants' Motion to Dismiss [Doc. # 124] is granted and all claims asserted by the Jones Plaintiffs in the proposed Fourth Amended Complaint [Doc. # 119-3] and the First Amended Complaint [Doc. # 25] are **DISMISSED**. It is further

ORDERED that Defendants' Motions to Dismiss the Jones Plaintiffs' Proposed RICO Claim are **DENIED AS MOOT**. It is further

ORDERED that this case is **DISMISSED WITH PREJUDICE** as to the Jones Plaintiffs.

A separate final judgment will be issued.

SIGNED at Houston, Texas, this **18th day** of **December, 2007.**

Nancy F. Atlas
United States District Judge