# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ADRIENNE BRADLEY, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3912 |
| | § | |
| PHILLIPS PETROLEUM COMPANY | § | |
| d/b/a/ PHILLIPS CHEMICAL | § | |
| COMPANY, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER
## (CURRY PLAINTIFFS)

Pending before the Court are three Motions to Dismiss the Curry Plaintiffs'

[Fourth Amended Complaint] filed by "the Phillips Defendants,"[1] Williams & Bailey

Law Firm, LLP ("Williams & Bailey"), and Pacific Employers Insurance Company

("Pacific") [Docs. # 130, # 133, and # 138, respectively].  The Curry Plaintiffs[2] have

---

[1] The "Phillips Defendants" include Phillips Petroleum Co. d/b/a/ Phillips Chemical Co.; Chevron Phillips Chemical Co., LLC; Chevron Phillips Chemical Co., LP; CononcoPhillips Co.; James J. Mulva; Jim Gallogly; Harold Banks; and Amy Jolly Woodward.

[2] The Curry Plaintiffs, represented by attorney Melvin Houston, include Dennis Curry, Stephanie Curry, Lonzy Williams, Maryann Williams, Tim Williams, Angela Williams, Dora Burnett, Desmond Burnett, Barry Hunter, Andrea Hunter, Lambert Guidrey, Bertha Guidry, Brenda C. Williams, Vicky Jones, Jimmy Jones, Randall Durden, Christy Durden, Abel Arguelles, Onesimo Perez, Rocky D. George, Earl McPhearson, Shirley McPhearson, Teri Mercier, Angela Mercier, and Julian Garcia.

(continued...)

responded [Docs. # 145, # 146, and # 147], as have the Jones Plaintiffs[3] [Docs. # 153,

# 154, and # 155].  Williams & Bailey and Pacific have filed replies [Docs. # 151 and

# 150].  Upon review of the motions, responses, and replies, all pertinent matters of

record, and applicable law, the Court concludes that Defendants' motions to dismiss

should be **granted**.[4]

## I.      BACKGROUND

The factual record is set out in detail in the Court's Memorandum and Order of

March 22, 2007 [Doc. # 89] ("March 2007 Order").  Briefly, this controversy centers

around Defendants' response to an industrial accident that occurred at Phillips

Chemical Company's ("Phillips") Pasadena Plastics Complex "K-Resin" Unit on

_____

[2]       (...continued)
The series of events leading to the division of the plaintiffs in this case into two groups is fully
detailed in the Court's Memorandum and Order of Dec. 18, 2007 [Doc. # 167] ("Jones
Memorandum")**.**  Designations of the two groups of plaintiffs as the "Jones Plaintiffs" and the
"Curry Plaintiffs" were adopted by the parties during the course of this litigation.  For the
sake of consistency, the Court adopts these labels.

[3]       The Jones Plaintiffs, represented by attorney Grover Hankins, include Adrienne Bradley,
Wayland Jackson, Scottie Jones, Lawrence Neloms, Shirley D. Oliver, Edward O'Brien,
Donald Phlegm, Emma Phlegm, Marie Rodriguez, and Mario Rodriguez.

The Jones Plaintiffs have adopted several claims asserted in the Curry Plaintiffs' Fourth
Amended Complaint [Doc. # 116], specifically, the Curry Plaintiffs' "Second Claim for Relief:
Aggravated Assault," "Fifth Claim for Relief: Loss of Consortium," and "Sixth Claim for
Relief: Negligence and Breach of Fiduciary Duty."  *See* Jones Plaintiffs' proposed Fourth
Amended Complaint [Doc. # 119-3]; Jones Memorandum [Doc. # 167].

[4]       The Phillips Defendants' Motion [Doc. # 130] is alternatively a motion for summary
judgment.  The Court, however, does not consider matters outside the pleadings or rely on
summary judgment standards in this ruling.

March 27, 2000. The accident left one Phillips employee dead and many more injured. Within days of the event, the injured employees were called to a meeting and allegedly informed by representatives from Williams & Bailey law firm that Phillips' workers' compensation insurance would cover their injuries, and that under Texas law, because Phillips had workers' compensation insurance, the employees could not bring personal injury lawsuits against the company.

In November 2005, nine Plaintiffs—Phillips employees and spouses of employees—brought suit against the Phillips Defendants, Pacific (Phillips' workers' compensation carrier), Williams & Bailey, Paper Allied-Industrial, Chemical and Energy Workers International and Local ("PACE") (Plaintiffs' union), and PACE officials, alleging that they conspired to intentionally misrepresent the state of Phillips' workers' compensation insurance. Specifically, Plaintiffs alleged that Phillips used an internal employee benefit plan to pay some employees' personal injury claims so as to create the appearance that Phillips had valid workers' compensation insurance, and induce employees not to file individual personal injury lawsuits. Plaintiffs asserted numerous state and federal law claims arising from these events.[5]

Early in this litigation, while the case was pending before the Honorable Vanessa Gilmore, the Court determined that the question of Phillips' workers' compensation

---

[5]      *See* Plaintiffs' First Amended Complaint [Doc. # 25].

insurance status was best dealt with as a threshold issue.[6]  Thus, the parties were directed to focus their efforts on investigating that question and to submit motions on the issue by the middle of 2006.[7]  On March 22, 2007, after discovery and full briefing on summary judgment motions, this Court granted motions for partial summary judgment, holding that Phillips was a valid workers' compensation insurance subscriber and that Plaintiffs were covered under Phillips' policy.[8]  The Court ordered Plaintiffs to file, by April 22, 2007, a "Third Amended Complaint" that complied with the Court's ruling, holding that "Plaintiffs may not maintain any cause of action predicated on a contention that Phillips was not a valid subscriber to the Texas workers' compensation system, was uninsured, or was self-insured."[9]  In the interest of judicial economy, given the opacity of the pleadings, the Court stated it could not "ascertain . . . which of Plaintiffs' claims [in the First Amended Complaint] remain[ed] viable" but surmised that "[m]any of [Plaintiffs'] claims [would be] foreclosed by Phillips'[] workers' compensation insurance coverage and the exclusivity of the workers'

---

[6]     Judge Gilmore subsequently recused in the case and it was transferred to the undersigned on June 6, 2006.  *See* Order of Recusal [Doc. # 44].

[7]     *See* Minute Entry [Doc. # 22].

[8]     *See* March 2007 Order [Doc. # 89].

[9]     *Id.* at 28.

compensation scheme."[10]  The Court specifically admonished Plaintiffs to comply with

Federal Rule of Civil Procedure 11(b)(2) and to assert only claims that were legally and

factually warranted in light of the Court's decision.[11]

After a variety of procedural events detailed in the Jones Memorandum [Doc.

# 167],[12] the Curry Plaintiffs filed, on June 18, 2007, their Fourth Amended Complaint

[Doc. # 116], which is the subject of Defendants' motions to dismiss and this

Memorandum and Order.  The Curry Plaintiffs' Fourth Amended Complaint asserts six

claims against the Phillips Defendants, Pacific, and Williams & Bailey.[13]

## II.   STANDARDS OF LAW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

is viewed with disfavor and is rarely granted.  *Manguno v. Prudential Prop. & Cas.*

*Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).  The complaint must be liberally construed

in favor of the plaintiff, and all facts pled in the complaint must be taken as true.  *Id.*

A claim is legally insufficient under Rule 12(b)(6) "only if there is no set of facts that

---

[10]    *Id.* at 27.

[11]    *Id.* at 27 n.46.

[12]    *See supra* note 2.

[13]    The Curry Plaintiffs do not assert all six claims against all Defendants.  The Curry Plaintiffs dropped all claims against PACE and the PACE officials, and against Jim S. Hart and John E. Williams, attorneys at Williams & Bailey.  Having been deleted from the Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], this case is **dismissed** as to these Defendants.

could be proven consistent with the allegations in the complaint that would entitle the plaintiff to relief." *Power Entm't, Inc. v. Nat'l Football League Prop., Inc.*, 151 F.3d 247, 249 (5th Cir. 1998). However, "a statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient to overcome a motion to dismiss. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1216 at 156–59).

A cause of action can fail to state a "claim upon which relief can be granted" if, *inter alia*, it fails to comply with the requirements of Rule 8(a)(2). *See, e.g.*, *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007) ("[T]he legal sufficiency of a complaint under Rule 12(b)(6) is determined by whether the complaint states a claim upon which relief can be granted in light of the pleading requirements of Rules 8 and 9 . . . ."); *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, *2 (5th Cir. Oct. 9, 2006) ("[A] Rule 12(b)(6) motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8."); *Buerger v. Sw. Bell Tel. Co.*, 982 F. Supp. 1247, 1249–50 (E.D. Tex. 1997). On its face, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has made clear, however,

that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* at 1965 n.3 (internal quotations omitted). When the complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

In addition, Rule 9 of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b); *see Leatherman v. Tarrant County*

*Narcotics Intelligence Unit*, 507 U.S. 163, 168–69 (1993); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).  In particular, the pleadings should "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997)).  Rule 9(b) requires a plaintiff to allege the existence of *facts* sufficient to warrant the pled conclusion that fraud has occurred.  *See In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (emphasis added).  Because the requirements of Rule 9 are more stringent than those for Rule 8, the Supreme Court's decision in *Twombly* applies with at least equal force to the Rule 9 pleading requirements.

## III.  <u>ANALYSIS</u>

The Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], like Plaintiffs' earlier pleadings, continues to attack Defendants' handling of claims arising from the March 2000 K-Resin Unit explosion, but sets forth a new theory.  The Curry Plaintiffs now contend that the 2000 explosion was "intentionally" caused by Phillips and thus, Phillips' workers' compensation subscriber status is not a bar to the Curry Plaintiffs'

personal injury claims.[14]   The Curry Plaintiffs further assert that the Phillips Defendants, in order to protect Phillips' interests in a pending merger with two other companies, conspired with Williams & Bailey and Pacific to misrepresent to Phillips' injured employees that they did not have a right to sue for recovery for Phillips' alleged intentional torts.[15]   The Curry Plaintiffs claim that Defendants, in order to further this scheme, essentially bribed certain union officials injured in the blast who were aware of Phillips' alleged role in causing the accident.   The Curry Plaintiffs claim that these bribes were effectuated by Williams & Bailey adding to a pending 1999 lawsuit intentional tort claims on behalf of those officials and then receiving "substantial

---

[14]   In several places in their Fourth Amended Complaint [Doc. # 116], the Curry Plaintiffs continue to intimate and rely on the theory that Phillips was not a valid workers' compensation insurance subscriber. *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 18, 20, 27 (referencing "Phillips [sic] *alleged* workers['] compensation plan") (emphasis added).   The Court has rejected Plaintiffs' challenge to Phillips' subscriber status. *See* March 22 Order [Doc. # 89]; Jones Memorandum [Doc. # 167], at 20–21.   To the extent that a claim by the Curry Plaintiffs rests on the theory that Phillips was not a valid subscriber to workers' compensation insurance, or that Plaintiffs were not covered under that insurance, those claims will be dismissed.

The Curry Plaintiffs' Fourth Amended Complaint alternatively asserts that Phillips was also "negligent in causing the explosion."   Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 25.   Because Phillips has been deemed a valid workers' compensation insurance subscriber, any personal injury claims premised on the theory that Phillips' alleged negligence led to the Curry Plaintiffs' injuries are barred under the Texas Workers' Compensation Act. *See Patterson v. Mobile Oil Corp.*, 335 F.3d 476, 480 (5th Cir. 2003) ("Under Texas's [workers' compensation] scheme, employees covered by subscriber-purchased policies receive compensation on a no-fault basis, and, in exchange, subscribing employers benefit from an exclusive remedy provision. This provision prevents employees from suing subscribers for negligence.").

[15]   Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 17, 18, 21.

attorneys' fee awards from . . . lucrative [$3,000,000] settlements [of those claims] . . . ."[16]   Thereafter, Williams & Bailey allegedly entered into attorney-client relationships with some of the Curry Plaintiffs and filed a lawsuit against an engineering firm claimed to be responsible for the explosion,[17] apparently to continue deflecting attention from Phillips' alleged wrongdoing.

The Curry Plaintiffs claim that in or around August 2004—four years and five months after the explosion—they uncovered this "elaborate and complex scheme" and discovered that they have "viable intentional tort claims against Phillips."[18]   Fifteen months later, they filed suit.[19]

The Court addresses Defendants' motions to dismiss as to each of the Curry Plaintiffs' claims.  Because the viability of the aggravated assault claim impacts the viability of the Curry Plaintiffs' other claims, the assault claim is discussed first.

---

[16]   *Id.* ¶¶ 19–20.

[17]   *Id.* ¶¶ 22, 23.

[18]   *Id.* ¶ 24.

[19]   This case was originally filed in November 2005, five years and eight months after the explosion.  *See* Original Complaint [Doc. # 1].  However, Plaintiffs have amended their complaint several times, adding individuals as plaintiffs, deleting defendants, and changing their causes of action.  *See generally* Jones Memorandum [Doc. # 167], at 3–15.  Thus, several of the claims in the Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116] were not raised until much later in this litigation.

A.      "**SECOND CLAIM FOR RELIEF:**  *Aggravated Assault*"

In their "Second Claim for Relief," Plaintiffs[20] sue only Defendant Phillips.[21]

Plaintiffs allege that "Phillips intentionally, knowingly, or recklessly caused serious . . .

bodily injury to each of the Plaintiffs . . . in this action."[22]  They further allege that

"Phillips['] actions were intentihaonal in that it was Phillips' conscious objective or

desire to engage in conduct that caused [these injuries]."[23]  Plaintiffs then allege more

specifically that Phillips, through its agents:  inadequately trained its employees and

inadequately staffed the K-Resin plant; operated the plant in disregard for good

engineering practices and safety management standards; failed to repair or replace

certain valves, the failure of which Phillips knew would ultimately lead to an explosion;

improperly designed various systems in operation at the K-Resin plant; and essentially

---

[20]     The Jones Plaintiffs join this claim. *See* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 99–103; Jones Memorandum [Doc. # 167], at 41–42. Thus, "Plaintiffs," as it is used in this section, refers to both the Curry and Jones Plaintiffs.

[21]     Specifically, this claim is alleged against the corporate Phillips defendants:  Phillips Petroleum Co. d/b/a/ Phillips Chemical Co.; Chevron Phillips Chemical Co., LLC; Chevron Phillips Chemical Co., LP; and CononcoPhillips Co.

[22]     Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 44.

[23]     *Id.*  Plaintiffs also allege: "Phillips' actions were committed knowingly, or with knowledge, with respect to the nature of its conduct or that the circumstances existed at the time that may cause serious bodily injuries to [Plaintiffs].  In addition, Phillips knew or had reason to know of facts that created a high degree of risk of physical harm to [Plaintiffs] and deliberately proceeded to act in conscious disregard of or indifference to that risk."  *Id.* ¶ 45.

disregarded known risks "for the sake of corporate profits."[24]

### 1.    Statute of Limitations

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). "While the state statute of limitations as a bar to recovery is a matter of state substantive law, the manner by which it is asserted and established is a matter of procedure and federal principles control." *J.M. Blythe Motor Corp. v. Blalock*, 310 F.2d 77, 78 (5th Cir. 1962).    Under Texas law, a party defending on ground of statute of limitations bears the burden of proof on this issue. *In re Hinsley*, 201 F.3d 638, 644–45 (5th Cir. 2000) (citing *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999)). "A party asserting limitations must not only establish the applicability of the limitations statute, but must, as well, prove when the opponent's cause of action accrued . . . ." *Id.* at 645 (quoting *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.–Houston [1st Dist.] 1984, writ refused n.r.e.)).

A plaintiff who asserts a claim outside of the statutory period may seek the benefit of the "discovery rule," which tolls the running of a statute of limitations until

---

[24]     *Id.* ¶ 46.

the plaintiff "discovers, or the exercise of reasonable diligence, should have discovered the facts establishing a cause of action." *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990). Generally, "[t]he discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *see also Bates v. Tex. State Tech. Coll.*, 983 S.W.2d 821, 828 (Tex. App.–Waco 1998, pet. denied). The plaintiff, as the party seeking to benefit from the discovery rule, has the burden to plead and prove facts in order to avoid a limitations bar. *See Woods, C.R.N.A. v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Smith v. McKinney*, 792 S.W.2d 740, 742 (Tex. App.–Houston [14th Dist.] 1990, writ denied); *see also Twombly*, 127 S. Ct. at 1965 n.3.

The Texas Supreme Court has restricted the use of the discovery rule to "exceptional cases" so as to avoid defeating the purposes behind limitations statutes. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (citing *S.V. v. R.V.*, 933 S.W.2d at 25). Indeed, "[i]n application, [the discovery rule] proves to be a very limited exception to the statute of limitations . . . [that] has been permitted in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1996).

Texas courts have held that the discovery rule applies in cases of fraudulent concealment, a form of equitable estoppel that arises where "the defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the one to whom it belongs." *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984) (quoting *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974)); *see also Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). This use of the discovery rule is also fairly limited in application, as it requires that a plaintiff "prove that the defendant had actual knowledge of the facts allegedly concealed, and a fixed purpose to conceal the wrong." *Timberlake*, 727 F.2d at 1366. "The 'mere failure to disclose a cause of action, or its mere concealment,' does not constitute fraudulent concealment for purposes of tolling the statute of limitations." *Id.* at 1366 (quoting *Stiles v. Union Carbide Corp.*, 520 F. Supp. 865, 868–69 (S.D. Tex. 1981)). "Rather, the plaintiff is under a duty to exercise reasonable diligence to discover his or her cause of action." *Id.* (citing *Allen v. Ortho Pharm. Corp.*, 387 F. Supp. 364 (S.D. Tex. 1974); *Nichols*, 507 S.W.2d at 519). Moreover, "[t]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make an inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983).

In this case, Plaintiffs assert that Phillips assaulted them when it engaged in conduct that allegedly caused the March 2000 explosion. In Texas, a two-year statute of limitations applies to assault claims. TEX. CIV. PRAC. & REM. CODE § 16.003(a). The discovery rule is rarely applicable in assault cases because a plaintiff will almost always be aware of his bodily injury. *See, e.g.*, *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1367 (5th Cir. 1984) (holding that the discovery rule did not apply to the plaintiff's assault claim because, even though the defendant medical device manufacturer may have had a duty to reveal defects in its product, the plaintiff was aware of her injury and its cause when it was suffered).

In asserting the discovery rule as a bar to a statute of limitations defense, Plaintiffs merely state that "[i]n or around August 2004," they "discovered" that they had viable intentional tort claims against Phillips . . . when they uncovered the elaborate and complex scheme . . . to defraud [Plaintiffs] of their right to file individual tort claims against Phillips."[25] In their response to the pending motions to dismiss, Plaintiffs seem to rely on a fraudulent concealment theory, citing their Fourth Amended Complaint's allegation that Defendants engaged in fraud.[26] Under Federal Rule of Civil Procedure 8 Plaintiffs' simple allegation of their "discovery of the scheme to defraud"

---

[25]     *Id.* ¶ 24.

[26]     *See* Curry Plaintiffs' Response to Phillips' 12(b)(6) Motion to Dismiss [Doc. # 145], at 15.

is insufficient, especially as there is no suggestion that Plaintiffs were unaware of their injuries at the time, or very soon after, they were suffered. *See, e.g., Resolution Trust Corp. v. Boyar, Norton & Blair*, 796 F. Supp. 1010, 1013–14 (S.D. Tex. 1992) ("[The] failure to plead facts demonstrating the applicability of the discovery rule constitutes a waiver of the discovery rule as a defense. Moreover, since the pleadings clearly show that the claims are barred by limitations, it is logical to require the plaintiff to state a legally sufficient reason for tolling the statute of limitations."); *see also Twombly*, 127 S. Ct. at 1965.

Nonetheless, Plaintiffs' aggravated assault claim is time-barred regardless of the adequacy of Plaintiffs' pleading of the discovery rule or fraudulent concealment. "There cannot be fraudulent concealment of facts which admittedly were or should have been known by [the plaintiff]." *Fusco v. Johns-Manville Prods. Corp.*, 643 F.2d 1181, 1184 (5th Cir. 1981). Plaintiffs admit that they were aware of their injuries and that they collected workers' compensation for those injuries in 2000.[27] In essence, Plaintiffs contend they were unaware of Phillips' alleged wrongdoing, but this theory is unavailing. All that is required to commence the running of the limitations period is the discovery of the injury and its general cause, not the exact cause in fact and the specific parties responsible. *Bayou-Bend Towers Council of Co-Owners v. Manhattan*

---

[27]     *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 21, 27

*Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App.–Houston [14th Dist.] 1993, writ denied);

*see also Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 808 (S.D. Tex.

1996).

While the discovery rule may apply to personal injury claims in very limited

contexts, *see, e.g.*, *Gaddis v. Smith*, 417 S.W.2d 577 (Tex. 1967) (discovery rule

applied where a foreign object was left in plaintiff's body after surgery); *Hays v. Hall*,

488 S.W.2d 412 (Tex. 1972) (discovery rule applied to plaintiff's unsuccessful

vasectomy); *cf. Timberlake*, 727 F.2d at 1367, Texas courts have consistently held that

it cannot apply where a plaintiff knew of the alleged assault.  *See Brothers v. Gilbert*,

950 S.W.2d 213, 216 (Tex. App.–Eastland 1997, pet. denied); *Sanchez v. Archdiocese*

*of San Antonio*, 873 S.W.2d 87, 90 (Tex. App.–San Antonio 1994, writ denied).

Because Plaintiffs acknowledge that they were aware of their injuries at the time of the

March 2000 explosion, their aggravated assault claim against Phillips is time-barred.

Accordingly, Phillips' motion to dismiss is granted as to this claim.

### 2.      Election of Remedies

Plaintiffs are also foreclosed from bringing an intentional tort claim against

Phillips because they collected benefits under the Texas Workers' Compensation Act

("TWCA").[28]  *See Porter v. Downing*, 578 S.W.2d 460, 461 (Tex. App.–Texarkana 1979, writ ref'd n.r.e.) ("[I]f the injured employee makes a claim for or accepts benefits under the Worker's [sic] Compensation Act, such employee cannot thereafter maintain a suit against . . . the employer on the basis of an intentional injury."); *see also Medina v. Herrera*, 927 S.W.2d 597, 602 (Tex. 1996) (holding that the "earlier receipt of compensation benefits" and an "[intentional] tort suit" against an employer "constitute mutually exclusive remedies" under the TWCA).  "[T]he employee, in claiming and collecting under the Act in an accidental injury, declared that there was no intentional injury."  *Grove Mfg. Co. v. Cardinal Constr. Co.*, 534 S.W.2d 153, 155, (Tex. App.–Houston [14th Dist.] 1976, writ ref'd n.r.e.).  Thus, "he is now estopped from proceeding on another claim for the same injury on an inconsistent theory."  *Jones v. Jeffreys*, 244 S.W.2d 924, 926 (Tex. App.–Dallas 1951, writ ref'd).

An exception to the election of remedies rule exists where the employer's intentional act is separable from the alleged negligent act for which workers' compensation benefits were received and that intentional act produced an independent injury.  *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 933 (Tex. 1983).  However, Plaintiffs have not pled facts to establish a genuine issue on this exception.  Plaintiffs

---

[28]     *See id.* ¶ 27 (stating that Plaintiffs sought and collected workers' compensation benefits under Phillips' policy with Pacific).

allege no separate injury as the basis of their aggravated assault claim; the alleged tort itself is claimed to be the cause of Plaintiffs' workplace injuries.  Having admitted to seeking and accepting benefits under the TWCA, Plaintiffs' intentional assault claim is barred and Phillips' motion to dismiss is granted as to this claim.

### 3.    Failure to Plead a Legally Cognizable Claim

Finally, Plaintiffs' aggravated assault cause of action also fails to state a claim upon which relief can be granted.  The exclusive remedy provision of the TWCA requires dismissal of a plaintiff-employee's suit for negligence or gross negligence if the defendant employer is a subscriber under the Act.  *See* TEX. LAB. CODE § 408.001(a); *Jones*, 339 F.3d at 365 n.8; *see also Esparza v. Jozwiak*, 391 F. Supp. 2d 504, 507 (E.D. Tex. 2005); *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex. 1981).  As used in the TWCA, "[g]ross negligence means an act omission:

> (A)    which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

> (B)    of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE § 41.001; *see also* TEX. LAB. CODE § 408.001.

The Texas Supreme Court has strictly construed this limitation, recognizing that the effectiveness of the workers' compensation system depends on the ability of

employers to spread the risk of losses attributable to workplace injuries.  *See Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985).  "If employers are required to provide not only worker's [sic] compensation but also to defend and pay for accident injuries, their ability to spread the risk through reasonable insurance premiums would be significantly disturbed."  *Id.*  Thus, in exchange for the advantages of quick and certain compensation for their injuries, employees working for subscribers to workers' compensation insurance are limited in their right to bring suit to recover for on-the-job injuries.  *See Kroger Co. v. Keng*, 23 S.W.3d 347, 349–50 (Tex. 2000).

Texas courts have made clear that only truly intentional torts fall outside the exclusive remedies regime of the TWCA.  *See Reed Tool Co.*, 689 S.W.2d at 406 ("[T]he common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.").  Indeed, "'[e]ven if the alleged conduct goes beyond aggravated negligence and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of its accidental character.'"  *Reed Tool Co.*, 689 S.W.2d

at 406 (quoting 2A LARSON, THE LAW OF WORKER'S COMPENSATION § 68.13 (1983)).

"The fundamental difference between negligent injury, or even grossly negligent injury, and intentional injury is the specific intent to inflict injury." *Id.*

Thus, "the intentional failure to furnish a safe workplace does not rise to the level of intentional injury [necessary to avoid the exclusive remedies provision of the TWCA] except when the employer believes his conduct is substantially certain to cause the injury." *Id.* at 407.

> While these results may seem harsh, . . . it is not the gravity or depravity of the employer's conduct but rather the narrow issue of intentional versus accidental quality of the injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

*Id.*

The burden of proving that an employer's actions rise to a level permitting recovery for intentional conduct is substantial. *See, e.g.*, *Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 413 (Tex. 1989) (holding that an employer may have committed an intentional tort under the TWCA when the employer required an employee, over that employee's express objections, to drive a truck that the employer knew after inspection had grossly deficient tires and had only five of the six tires required for legal operation); *see also Vargas v. Diamond Shamrock*, 732 S.W.2d 756, 757 (Tex. App.–Corpus

Christi 1987, no writ.) (intentional failure to take precautions to prevent the murder of
an employee on the job does not constitute an intentional injury under the TWCA);
*Reed Tool Co.*, 689 S.W.2d at 406 (intentionally requiring an employee to operate a
machine that the employer knows is unsafe, failing to meet minimal safety standards,
inadequately training employees, and requiring employees to work excessive hours
does not constitute an intentional injury for purposes of the TWCA).   In this case,
Plaintiffs have failed to demonstrate that they are entitled to relief for aggravated
assault.

Plaintiffs' proposed Fourth Amended Complaint alleges that "it was Phillips'
conscious objective or desire to engage in conduct that caused serious bodily injury to
[Plaintiffs]."[29]  Plaintiffs do not allege that Phillips intended specifically to harm them
personally.  "[T]he fundamental difference between a negligence cause of action and
an intentional tort is not whether the defendant intended his or her acts, but whether the
defendant intended the resulting injury." *Durbin v. City of Winnsboro*, 135 S.W.3d
317, 324 (Tex. App.– Texarkana 2004, pet. denied) (citing *Reed Tool Co.*, 689 S.W.2d
at 406; *Bridges v. Robinson*, 20 S.W.3d 104, 114 (Tex. App.–Houston [14th Dist.]
2000, no pet.)); *see also Feazell v. Mesa Airlines*, 917 S.W.2d 895, 899 (Tex. App.–Ft.
Worth 1996, writ denied) ("[T]he meaning of intent in this context [workers'

---

[29]      *Id.* ¶ 44.

compensation] is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did."). Although in many cases "the intent to injure can be inferred from the acts alleged, *e.g.*, . . . a physical beating," *id.* at 325, no such intent can be inferred from the pleadings in this case. *Cf. Boudeloche v. Grow Chem. Coatings Corp.*, 728 F.2d 759 (5th Cir. 1984) (holding that the plaintiff-employee adequately pled an intentional tort where he alleged that the employer-defendant insisted that he continue to engage in a dangerous task after the plaintiff warned the employer of the dangers associated with the task, was refused safety equipment, and informed the employer that he was becoming ill and vomiting blood while working on the task).[30]  Plaintiffs, despite being given numerous opportunities to amend their complaints, fail to plead the requisite intent to proceed on an intentional tort claim under the TWCA.

Moreover, the "conduct" complained of by Plaintiffs consists predominantly of acts that Texas courts have held are barred by the TWCA.  Plaintiffs allege that

---

[30]    Indeed, some of Plaintiffs' other allegations create ambiguity as to Defendants' alleged intent and knowledge.  Plaintiffs assert that "Phillips' actions were committed . . . with knowledge . . . that the circumstances existed at the time that *may* cause serious bodily injuries to [Plaintiffs].  In addition, Phillips knew or had reason to know of facts that created a ***high degree of risk*** of physical harm to [Plaintiffs] and deliberately proceeded to act in conscious disregard of or indifference to that ***risk***." *Id.* ¶ 45 (emphasis added).

Phillips: inadequately trained employees and understaffed its facilities,[31] *Reed Tool Co.*, 689 S.W.2d at 407 ("Even the intentional failure to train an employee to perform a dangerous task does not constitute an intentional injury.  Requiring an employee to work long hours is not tantamount to an intentional injury.") (internal citations omitted); disregarded good engineering practices and safety procedures,[32] *id.* ("The intentional violation of a safety regulation does not authorize recovery beyond that provided by workers' compensation statutes."); and utilized improperly designed and maintained systems and machinery,[33] *id.* ("[T]he intentional failure to provide a safe workplace does not constitute an intentional injury . . . .").  Plaintiffs assert that Phillips engaged in much of this conduct "knowing" that an explosion could result.[34]  However, "to establish intentional conduct, more than the knowledge and appreciation of risk is necessary."  *Feazell*, 917 S.W.2d at 899.  "[T]he defendant who acts in the belief or consciousness that [an] act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong."  *Simpson v. State*, 998 S.W.2d 304, 307 (Tex. App.–Austin 1999, pet. denied).

---

[31]    *Id.* ¶ 46(a).

[32]    *Id.* ¶¶ 46(b), (c), (i), (k).

[33]    *Id.* ¶¶ 46(d), (e), (f), (g), (h).

[34]    *See, e.g.*, *id.* ¶ 46(d).

Plaintiffs allege that Phillips "operat[ed] a plant with disregard for recognized and generally accepted good engineering practices," "fail[ed] to perform a pre-startup safety review," "failed to repair or replace [certain] failed or badly leaking . . . valves," "design[ed] . . . a pressure relief system . . . that was improper under the circumstances . . . causing the pressure vessel to fail," "fail[ed] to provide a method for blocking the leaking isolation valves which would have [prevented a] pressure vessel [from] ruptur[ing]," "fail[ed] to provide for an orderly shutdown of machinery . . . to avoid any additional or increased hazards to employees as a result of equipment stoppage," "disregard[ed] lessons and risks learned from previous incidents at the Pasadena Plastics Complex," "operat[ed] a plant with disregard to human factors," and "cultivat[ed] an atmosphere at the Pasadena Plastics Complex where the safety of its workers was sacrificed for the sake of corporate profits."[35]  Plaintiffs also alleged that Phillips intended to, among other things, inadequately train its employees and operate its plant in contravention of known safety standards.  These assertions individually and collectively are insufficient to permit recovery under the TWCA.  At best, the Curry Plaintiffs' Fourth Amended Complaint alleges that Phillips intentionally engaged in conduct (or omissions) that contributed to the K-Resin plant explosion, and that the conduct (or omissions) placed Phillips' employees at severe risk of injury.  These

---

[35]    *Id.* ¶¶ 46 (b), (c), (d), (e), (f), (g), (h), (j), (l), (m).

allegations amount to contentions that Phillips behaved immorally, unethically, grossly negligently, or recklessly, but do not suggest that Phillips *intentionally* blew up its own plant with the intent to injure Plaintiffs specifically, or that Phillips was substantially certain that the explosion would result and harm Plaintiffs.[36]

The Curry Plaintiffs' Fourth Amended Complaint fails to state a claim for which relief may be granted on a cause of action for aggravated assault under Texas law. Thus, Phillips' motion to dismiss Plaintiffs' aggravated assault claim is granted and the claim is dismissed.[37]

### B.   "FIRST CLAIM FOR RELIEF:   *Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO")*[,] *18 U.S.C. § 1961 et seq.*"

In their "First Claim for Relief," which is asserted against the corporate Phillips Defendants,[38] Pacific, and Williams & Bailey, the Curry Plaintiffs allege that

---

[36]    Indeed, while Plaintiffs have used the word "intentional" to describe Phillips' conduct, the factual allegations, when liberally construed, amount to assertions of gross negligence or recklessness. The Court is unpersuaded by Plaintiffs' argument that they are merely required to plead in conclusory terms that Phillips acted "intentionally" in order to survive a motion to dismiss. Curry Plaintiffs' Response to Phillips' Motion to Dismiss [Doc. # 145], at 6–7. Merely inserting the word "intentional"—without more—into a complaint that otherwise fails to state a cognizable claim is insufficient to overcome Defendants' motions to dismiss. *See Twombly*, 127 S.Ct. at 1964–65; *see also Papasan*, 478 U.S. at 286 (On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

[37]    As noted earlier, this ruling also governs the Jones Plaintiffs' assault claim.

[38]    The Curry Plaintiffs refer to "Defendants Phillips" without specificity. *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 36. However, their Complaint states that Phillips Petroleum Co., d/b/a/ Phillips Chemical Co., ConocoPhillips, Chevron Phillips Chemical Co.,

(continued...)

Defendants, working in concert as an "enterprise," engaged in a pattern of racketeering activity in violation of one section of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id*. Specifically, the Curry Plaintiffs claim that Defendants "conspired to defraud [the Curry Plaintiffs] of their common law right to file intentional tort claims against their employer for the injuries they suffered" in the March 2000 explosion.[39]  In furtherance of this conspiracy, Defendants allegedly "paid large monetary settlement awards to certain union officials . . . for intentional tort claims outside of [Phillips'] alleged workers' compensation plan"[40] and "used the United States Postal Service and/or state and interstate wire transfers to send and receive the settlement award letters and checks."[41]

### 1.    Failure to Plead a Legally Cognizable Claim

The Curry Plaintiffs seek relief pursuant to 18 U.S.C. § 1964(c), which provides

---

[38]    (...continued)
LLC, and Chevron Phillips Chemical Co., LC are "hereinafter referred to collectively as "Phillips." *See id.* ¶¶ 5–8.

[39]    *Id.* ¶ 36.

[40]    *Id.* ¶ 37.

[41]    *Id.* ¶ 38.

that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue therefor in any appropriate United States district court and shall recover . . . [treble] damages."  A RICO claim must allege legally cognizable injury. *See Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215 (5th Cir. 1988).  Further, RICO claims under § 1962 require:  "(1) a *person* who engages in (2) a *pattern of racketeering activity*, (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*."  *In re Burzynski*, 989 F.2d 733, 741–42 (5th Cir. 1993) (emphasis in original) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988).

The Curry Plaintiffs have failed to plead facts demonstrating that they suffered a RICO injury; they have also failed to satisfy the three elements of a claim under § 1962 .

### a.    *RICO Injury*

First, the Court's conclusion above that the Curry Plaintiffs do not have a cognizable intentional tort claim against Phillips defeats their RICO theory.[42]  At its core, the Curry Plaintiffs' RICO claim is that Defendants' jointly undertaken criminal violations deceived Plaintiffs into believing they had no viable intentional tort causes

---

[42]      *See supra* Section III.A.

of action against Phillips when in fact that did have such claims.[43]  Because the Curry

Plaintiffs actually had no viable intentional tort claims, these Plaintiffs cannot plead or

prove any injury arising from the putative RICO violations, and their RICO claim fails.

*See In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 522 (5th Cir. 1995) ("They have

suffered no injury from not receiving what they were ineligible to receive.").

Furthermore, even if the Curry Plaintiffs did have viable intentional tort claims,

Defendants' alleged conduct does not constitute an injury to the Curry Plaintiffs'

"business or property" as required under the RICO statute.  "'[A RICO] plaintiff only

has standing if, and can only recover to the extent that, he has been injured in his

business or property by the conduct constituting the [RICO] violation.'"  *Hughes v.*

*Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) (quoting *Sedima S.P.R.L. v.*

*Imrex Co.*, 473 U.S. 479, 496 (1985)).  Although "RICO is to be read broadly,"

*Sedima S.P.R.L.*, 473 U.S. at 497, "[t]he phrase 'business or property' . . . retains

restrictive significance . . . [that] exclude[s] personal injuries suffered."  *Reiter v.*

*Sonotone Corp.*, 442 U.S. 330, 339 (1979).  Even the economic consequences of

---

[43]    Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 36.  To the extent these
Plaintiffs may assert that they were wrongfully deceived into believing they did not have
unintentional tort causes of action, the claims are rejected by the Court as a result of the
March 22 Order [Doc. # 89] holding that Phillips was a workers' compensation insurance
subscriber, thus foreclosing any causes of action premised on Phillips' alleged negligence in
causing the March 2000 explosion.  *See, e.g.*, *Hoffman v. Trinity Indus.*, 979 S.W.2d 88, 89
(Tex. App.–Beaumont 1999, pet. dism'd).

personal injuries do not qualify as "injury to business or property." *See Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 785–86 (9th Cir. 1992) (collecting authority); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) (collecting authority); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 100–02 (D.D.C. 2003) (collecting authority); *see also Evans v. City of Chicago*, 434 F.3d 916, 926–31 (7th Cir. 2006) ("[F]oregone earnings stemming from the lost opportunity to seek or gain employment are . . . insufficient to satisfy [RICO's] injury to 'business or property' requirement where they constitute nothing more than pecuniary losses flowing from what is, at base, a personal injury."); *Justin F. v. Maloney*, 476 F. Supp. 2d 141, 161 (D. Conn. 2007) (quoting *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458–59 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006)) ("[T]o state a claim under RICO, a plaintiff 'must allege facts demonstrating both that plaintiff's injury is to his business or property—and not physical, emotional[,] or reputational harm or any economic aspect of such harm,' and damages arising from such personal injuries are not recoverable under RICO."). Indeed, at least one court has expressly held that "a lost opportunity to bring state law personal injury claims . . . is not cognizable as an injury to 'business or property' in a civil RICO action." *Magnum v. Archdiocese of Phila.*, No. 06-5117, 2007 U.S. App. LEXIS 25812, *5–*6 (3d Cir. Nov. 6, 2007).

This position is "entirely consistent with the legislative purpose of the RICO

statute." *Cullom v. Hibernia Nat'l Bank*, 666 F. Supp. 88, 91 (D. La. 1987), *aff'd* 859

F.2d 1211 (1988).  "RICO was designed to be 'a major new tool in extirpating the

baneful influence of organized crime in our economic life,'" *id.* (quoting *Sedima*

*S.P.R.L.*, 473 U.S. at 488), not as a means of redressing harm for personal injury torts.

*See also James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 817 (D. Ky. 2000)

("[P]ecuniary losses associated with personal injuries are not recoverable under the

civil RICO provision because Congress created the civil remedies provision solely to

afford relief to those injured in the legitimate business arena.").  As at least one court

has noted, "perhaps the economic aspects of such injuries could, as a theoretical matter,

be viewed as injuries to 'business or property,' but engaging in such metaphysical

speculation is a task best left to philosophers, not the federal judiciary." *Doe*, 958 F.2d

at 768.   Indeed, "even if the Court undertook some philosophical approach" and

construed the lost opportunity to bring a personal injury lawsuit as a property right, "the

Court nevertheless would be unable to adopt such an interpretation because it would

contravene Congress' intent in enacting the RICO statute." *James*, 90 F. Supp. 2d at

816 (citing *Reconstruction Fin. Corp. v. Beaver County*, 328 U.S. 204 (1946)); *see*

*also Magnum*, 2007 U.S. App. LEXIS 25812, *9, *11–*12 (quoting *Doe*, 958 F.2d at

768) ("[A]lthough a cause of action indeed may be a form of property, injuries to that

property will only be redressable under civil RICO if the plaintiff can allege that the

wrong to be vindicated is itself an injury to 'business or property' within the meaning of RICO. . . . [Moreover, the Court is] 'not required to adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO.'").

In this case, the Curry Plaintiffs' RICO claim in no way implicates their "business or property." The claim solely seeks redress for personal injuries suffered in the March 2000 explosion. Thus, assuming *arguendo* that Defendants did fraudulently conceal from the Curry Plaintiffs the existence of viable personal injury causes of action, the Court holds that such conduct does not constitute an injury cognizable under RICO. As such, they lack standing to assert a RICO claim.

### b.    *RICO "Person"*

The RICO "person" in a civil RICO action is the defendant. *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 425 (5th Cir. 1990). Although the RICO statute defines a RICO person as including "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), the Fifth Circuit has restricted the potential breadth of this definition to ensure that RICO actions are limited to the type of long-term criminal conduct that Congress intended to proscribe. *See Delta Truck & Tractor*, 855 F.2d at 242; *see also Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). Thus, "the RICO person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering." *Delta Truck & Tractor*, 855

F.2d at 242.  "The continuous threat requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts."
*Id.*

In this case, the Curry Plaintiffs appear to have alleged in their Fourth Amended Complaint six RICO persons — the four corporate Phillips Defendants, Pacific, and Williams & Bailey.  The RICO claim fails to specify the conduct in which any particular RICO "person" engaged, but it is clear that no Defendant is alleged to pose now, or alleged to have posed prior to or immediately after the March 2000 explosion, any ongoing or continuous threat.  All alleged predicate acts took place in the course of asserting and settling several causes of action associated with a largely undefined 1999 lawsuit.  There are no allegations of ongoing wrongdoing, nor any indication that the 1999 lawsuit remains in litigation.  Thus, there are no allegations of an "ongoing" or "continuous" past threat; Plaintiffs alleged only a single scheme involving the "impleading [of certain union officials'] individual tort claims into a totally separate 1999 lawsuit in order to conceal from [Plaintiffs] . . . these union officials['] recei[pt of] settlement awards for intentional tort claims outside of the alleged workers' compensation plan."[44]  Even if the Curry Plaintiffs' allegations properly pled predicate

---

[44]     Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 37.

acts,[45] the acts pled are too isolated and discrete to satisfy RICO's continuity requirement. *See, e.g., Crowe*, 43 F.3d at 204 (a law firm's involvement in two legal transactions related to the alleged unlawful conversion of the plaintiff's personal property was insufficient to allege that the firm was a RICO person); *cf. In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 477 (E.D. La. 2001) (claims that alleged RICO persons engaged in predicate acts for at least a year and that they continued to engage in the same course of conduct was sufficient to plead a RICO person).

Thus, the Curry Plaintiffs have failed to adequately plead RICO "persons" and the RICO claim fails for this reason.

### c.    *Pattern of Racketeering Activity*

In order to plead a "pattern of racketeering activity," a plaintiff must allege: "(1) predicate acts—the requisite racketeering activity, and (2) a pattern of such acts." *Burzynski,* 989 F.2d at 742.

***Predicate Acts.* —** The Curry Plaintiffs claim that the Phillips Defendants, Pacific, and Williams & Bailey collectively engaged in mail and/or wire fraud to further their alleged criminal scheme. The heightened pleading requirements of Rule 9(b) apply to RICO claims resting on allegations of fraud. *See Williams v. WMX Techs.*,

---

[45]    The Curry Plaintiffs' allegations in the Fourth Amended Complaint [Doc. # 116] are insufficient in this regard as well. *See infra* Section III.B.1.c.

112 F.3d 175, 177 (5th Cir. 1997) (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138–39 (5th Cir. 1992)) ("Rule 9(b) requires particularity in pleading the circumstances constituting fraud.  This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well.") (internal quote and citation omitted).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Id.* In order to make out a *prima facie* case of fraud, a plaintiff must show:

> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  Specifically with respect to mail fraud, a plaintiff must be able to demonstrate:  "(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with [the] scheme, and (4) actual injury to the plaintiff."  *Burzynski*, 989 F.2d at 742; *see also Walsh v. America's Tele-Network Corp.*, 195 F. Supp. 2d 840, 846 (E.D. Tex. 2002) ("The elements of a wire fraud claim . . . are the same as those for a mail fraud claim except the use of the wire must be interstate.").

In addition to the deficiencies in the RICO claim explained above, the Curry Plaintiffs have failed to allege all the elements of fraud.  First, the Curry Plaintiffs allude to a "1999 lawsuit," but do not identify the particulars of the lawsuit or the content of any misstatements associated with that litigation.  *See Williams*, 112 F.3d at 179.  Further, they do not identify any alleged misstatements associated with Defendants' use of the mails and/or wires.[46]  *See Tel-Phonic Servs., Inc.* 975 F.2d at 1139; *Andrews v. Am. Nat'l Red Cross, Inc.*, 176 F. Supp. 2d 673, 690–91 (W.D. Tex. 2001).

Moreover, assuming *arguendo* that Defendants made false statements in bringing claims or settling the 1999 lawsuit, it is apparent from the pleadings that those statements were not made to the Curry Plaintiffs or made with the intent that the Curry Plaintiffs rely on them.  "[W]hen civil RICO damages are sought for injuries resulting from fraud, a general requirement of reliance by the plaintiff is a commonsense liability limitation." *Summit Props. v. Hoechst Celanese Corp.*, 214 F.3d 556 (5th Cir. 2000); *see also In re MasterCard Int'l Inc.*, 313 F.3d at 263 ("[A]lthough reliance is not an

---

[46]    Indeed, the Curry Plaintiffs fail to specify *which* Defendant(s) engaged in the alleged conduct or *what* perceived wrong each Defendant committed.  "[A] RICO plaintiff must plead specified facts as to each defendant.  It cannot avoid Rule 12(b)(6) by 'lumping together the defendants.'" *In re Mastercard Int'l Inc.*, 132 F. Supp. 2d at 476 (quoting *Goren v. New Vision Int'l*, 156 F.3d 721 (7th Cir. 1988) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"))), *aff'd*, *In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002).

element of statutory mail or wire fraud, we have required its showing when mail or wire fraud is alleged as a RICO predicate."); *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205 (5th Cir. 2003).  In this case the Curry Plaintiffs make clear that their discovery of the 1999 lawsuit—rather than inducing any detrimental reliance on their part—actually alerted them to Defendants' alleged wrongdoing.

Thus, because the Curry Plaintiffs fail to allege facts to establish a predicate act, their RICO claim fails for this reason also.[47]

***Pattern of Predicate Acts.*** — The Curry Plaintiffs' RICO claim also is deficient because it fails to allege a "pattern" as required to raise a RICO claim under 18 U.S.C. § 1962(c).  *See Burzynski*, 989 F.2d at 742.  "In order to allege a 'pattern,' the [predicate] acts must be 'related' and have 'continuity.'"  *Id.*

Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  The Court assumes for the purposes of this discussion that the Curry Plaintiffs adequately pled mail and/or wire fraud as predicate acts under

---

[47]   In their responses to Defendants' various motions to dismiss, the Curry Plaintiffs suggest that they have pled a second predicate act:  "impleading claims in the 1999 lawsuit." *See* Curry Plaintiffs' Response to Phillips' 12(b)(6) Motion to Dismiss [Doc. # 145], at 10.  This is not actionable as a predicate act under RICO. *See* 18 U.S.C. § 1961(1) (listing the various acts— all punishable under federal criminal law—that may give rise to liability under RICO).

the RICO statute, in which case the Court is satisfied that these acts are "related."[48]
The settlement checks alleged to have been mailed all appear to be related to the union
officials' alleged participation in the 1999 lawsuit and appear to be related to injuries
allegedly sustained by those individuals in the March 2000 K-Resin plant explosion.

The Court is not persuaded, however, that these acts have continuity. "To
establish a RICO pattern, it must also be shown that the predicates themselves amount
to, or that they otherwise constitute a threat of, continuing racketeering activity." *Id.*
Continuity may be demonstrated via a "closed period of repeated conduct, or [via] past
conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.
"A party alleging a RICO violation may demonstrate continuity over a closed period
by proving a series of related predicates extending over a substantial period of time.
Predicate acts extending over a few weeks or months and threatening no future criminal
conduct do not satisfy this requirement." *Id.* at 242. To establish a threat of continued
racketeering activity, a plaintiff may demonstrate that "the related predicates
themselves involve a distinct threat of long-term racketeering activity, . . . [or] the
predicate acts or offenses are part of an ongoing entity's regular way of doing

---

[48]     It should be noted, however, that the Curry Plaintiffs fail to explain how many union officials'
claims were impleaded into the 1999 lawsuit or how many settlements (and hence, settlement
checks sent through the mail or over wire) resulted. In order to plead a RICO claim, a
plaintiff must allege "at least two acts of racketeering." 18 U.S.C. § 1961(5). The Court
assumes that the Curry Plaintiffs' use of the plural when describing "settlement award letters
and checks" indicates an allegation of at least two potential predicate acts.

business." *Id.* at 242–43; *see also Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1168 (5th Cir. 1991).

In this case, all of the alleged predicate acts took place during the settlement of claims associated with the "1999 lawsuit." Although the Curry Plaintiffs' Fourth Amended Complaint is bereft of factual allegations establishing the time frame in which these settlements occurred, they have stated in their responses to Defendants' motions to dismiss that these acts occurred "shortly after the 2000 explosion."[49] This conduct does not constitute or threaten long-term criminal activity. *See, e.g., Burzynski*, 989 F.2d at 742–43. Moreover, "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996). In this case, any alleged wrongdoing by Defendants was associated with litigating a 1999 lawsuit—a "single, discrete, and otherwise lawful" endeavor which is now over. *Burzynski*, 989 F.2d at 743 (alleged predicate acts which all took place during the course of an earlier lawsuit did not meet the continuity requirement); *see also Word of Faith Outreach Ctr.*, 90 F.3d at 123 (alleged predicate acts occurring during the production and airing of a television news program failed to plead a "continuity of racketeering activity, or its threat"); *Delta Truck & Tractor*, 855 F.2d

---

[49]     *See* Curry Plaintiffs' Response to Phillips 12(b)(6) Motion to Dismiss [Doc. # 145], at 10.

at 244) (alleged predicate acts which were "necessary segments of an otherwise legitimate and singular commercial endeavor"—a merger—did not satisfy the continuity requirement); *cf. Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (finding continuity because "unlike . . . precedents identifying a single illegal transaction, there are multiple victims, and there is no reason to suppose that this systematic victimization allegedly begun in November 2000 would not have continued indefinitely had the Plaintiffs not filed this lawsuit").

Thus, because the Curry Plaintiffs have failed to adequately allege a pattern of racketeering activity, their RICO claim fails.

### d. *RICO Enterprise*

Finally, the Curry Plaintiffs have failed to plead a RICO "enterprise." "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "An enterprise under RICO can include the usual legal entities such as partnerships and corporations, but it also can include 'any union or group of individuals associated in fact although not a legal entity . . . .'" *Manax v. McNamara*, 842 F.2d 808 (5th Cir. 1988) (quoting 18 U.S.C. § 1961(4)). In this case, the Curry Plaintiffs allege that Defendants, "working in concert," constituted an "enterprise," which suggests an

"association-in-fact" enterprise.[50]   To establish such an enterprise, a plaintiff must "show 'evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit.'" *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440 (5th Cir. 1987) (quoting Turkette, 452 U.S. at 583). Thus, "an association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck & Tractor*, 855 F.2d at 243; *see also Whelan*, 319 F.3d at 229 (citing *Atkinson*, 808 F.2d at 441) ("The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering in which it engages.").

The Curry Plaintiffs have alleged an enterprise consisting of the corporate Phillips Defendants, Pacific, and Williams & Bailey.  This association, however, lacks the continuity required of a RICO enterprise; there is nothing in the Curry Plaintiffs' Fourth Amended Complaint to suggest that the enterprise existed for any reason other than to commit the alleged predicate acts.  Indeed, as the Curry Plaintiffs admit, the alleged enterprise had but one purpose:  to defraud the Curry Plaintiffs "of their common law right to file intentional tort claims against [Phillips] for the injuries they

---

[50]     Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 33.

suffered [in the March 2000 explosion]."[51]  *See Manax*, 842 F.2d at 812 ("The association as alleged has one short-term goal—the destruction of [Plaintiff's business]—and presumably will disband upon the attainment of that goal.  There is, as a result, nothing linking the members of the association to one another except the commission  of the predicate criminal acts.").  "In a case like this, where the enterprise's goals have been accomplished, and where those goals were achieved in a matter of months, through a discrete pattern of activity, there is no continuity."  *Laudry*, 901 F.2d at 433.

Moreover, even if the Curry Plaintiffs had adequately pled an enterprise, they have failed to plead that any Defendants were "employed by or associated with [the] enterprise" as required under § 1962(c).  "[I]n order to state a violation of subsection (c), the alleged RICO person and the alleged RICO enterprise must be distinct." *Andrews*, 176 F. Supp. 2d at 687 (citing *Crowe*, 43 F.3d at 205); *see also Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 122–23 (5th Cir. 1986).  Having failed to allege an external enterprise, the Curry Plaintiffs have necessarily asserted that Defendants are "employed by or associated with" themselves.  Such identity of elements is impermissible for a RICO claim under § 1962(c).[52]  *See Burzynski*, 989

---

[51]     *Id.* ¶ 36.

[52]     There is a slim exception to the rule that the RICO person must be separate from the RICO
(continued...)

F.2d at 743.

Thus, because the Curry Plaintiffs have failed to allege the existence of a RICO enterprise, and have not identified RICO persons separate from their alleged enterprise, they fail to state a claim upon which relief may be granted.

Defendants' motions to dismiss the RICO claim are granted because, despite adequate opportunity to frame their claims, the Curry Plaintiffs have not pled any of the necessary elements of a that claim.

### 2.    Statute of Limitations

The Curry Plaintiffs' RICO claim also must be dismissed because it is time-barred.  RICO claims are governed by a four-year statute of limitations.  *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987).  The Supreme Court, adopting the Fifth Circuit's approach, has held that the "injury discovery accrual rule" governs RICO claims and the "clock" begins to run on such claims when a plaintiff "knew or should have known of his injury."  *Rotella v. Wood*, 528 U.S. 549,

---

[52]    (...continued)
enterprise.  "Courts have routinely required a distinction when a corporation has been alleged as both a RICO defendant and a RICO enterprise, but a similar requirement has not been mandated when individuals have been named as defendants and as members of an association-in-fact RICO enterprise."  *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 (5th Cir. 2000).  That rule does not apply here, as the Curry Plaintiffs' claim only implicates the corporate defendants.

553, 555–58 (2000).[53]   The Supreme Court rejected more liberal discovery rules,

reasoning that the unique objectives of the civil RICO cause of action counsel against

an expansive limitations period.  *Id.* at 557–58.  Specifically, the Supreme Court noted

congressional intent in enacting RICO to "encourag[e] civil litigation to supplement

Government efforts to deter and penalize the . . . prohibited practices.  The object of

civil RICO is thus not merely to compensate victims, but to turn them into . . . 'private

attorneys general,' dedicated to eliminating racketeering activity."  *Id.* at 557 (citing

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997)).  Civil RICO has a "purpose [of]

encouraging potential private plaintiffs diligently to investigate" their possible causes

of action, *Agency Holding Corp.*, 483 U.S. at 151, and rewards successful diligence

with awards of treble damages.  *See Rotella*, 528 U.S. at 558.  Because there is a

demonstrative need for diligence by the plaintiff, the discovery rule may sometimes fail

to toll accrual of a RICO claim for limitations purposes.  Indeed, this is true even where

"a pattern of predicate acts may . . . be complex, concealed, or fraudulent," *id.* at 556,

---

[53]      The *Rotella* Court did not "settle upon a final rule" for determining when the statute of
limitations period should begin to run on RICO claims.  *See Rotella*, 528 U.S. at 554 n.2.
However, it rejected two approaches adopted by some courts of appeals and endorsed the
more limited rule discussed above.  *Id.* at 554.  The Supreme Court noted the possibility of
yet another rule—the "injury occurrence" rule—which would focus solely on the time of the
alleged injury, regardless of whether the plaintiff knew or should have known of it.  *Id.* at 554
n.2.  Because the Curry Plaintiffs may only benefit from the application of the "injury and
pattern discovery rule," which the *Rotella* Court expressly rejected, this Court need not
consider rules less expansive than the "injury discovery" rule discussed herein.  *See Astoria
Entm't, Inc. v. Edwards*, 159 F. Supp. 2d 303, 327 (E.D. La. 2001).

as the "connection between civil RICO and fraud [has long been found to be] an insufficient ground for recognizing a limitations period beyond four years." *Id.* at 557 (citing *Malley-Duff*, 483 U.S. at 149).

This is not to say that a civil RICO plaintiff may never benefit from equitable principles of tolling, "and where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it, equitable tolling may be one answer to the plaintiff's difficulty." *Id.* at 560–61 (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). However, because "'reasonable diligence' does matter [in the context of civil RICO] . . . , a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" *Klehr*, 521 U.S. at 194; *see also Astoria Entm't, Inc.*, 159 F. Supp. 2d at 320.

In this case, although the Curry Plaintiffs' Fourth Amended Complaint fails to provide specific dates associated with their alleged RICO injuries, a fair reading of the allegations, along with the Curry Plaintiffs' responses to Defendants' motions to dismiss, indicates that their alleged injuries occurred on and soon after the March 2000 K-Resin plant explosion.[54]   The Curry Plaintiffs do allege conclusorily that it was not until "around August 2004" that they "discovered" that they had viable causes of

---

[54]     *See* Curry Plaintiffs' Response to Phillips 12(b)6) Motion to Dismiss [Doc. # 145], at 10 ("[T]he [Curry] Plaintiffs' Complaint has adequately placed the Defendants on notice of . . . (3) when [the RICO violation] occurred (shortly after the 2000 explosion.)").

action,[55] suggesting—though not stating— that this discovery was hampered by Defendants' fraudulent concealment.   However, "the doctrine of fraudulent concealment does not apply to toll the statute [of limitations where a] plaintiff neither sufficiently pleads that 'the defendants concealed the conduct complained of . . . [or] . . . that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.'"  *Astoria Entm't, Inc.*, 159 F. Supp. 2d at 319 (quoting *State of Texas v. Allan Constr. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988)); *see also Rotella*, 528 U.S. at 555–57; *cf. Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (5th Cir. 1974) (holding that fraudulent concealment of an antitrust claim must be alleged with particularity).

The Curry Plaintiffs' Fourth Amended Complaint cannot be read so liberally as to imply fraudulent concealment as contemplated under the civil RICO statute.  *See, e.g., Charlotte Telecasters*, 546 F.2d at 574.   Moreover, even assuming adequate pleading of a tolling doctrine, the Court cannot infer any due diligence on the part of the Curry Plaintiffs to justify their five and a half year delay in bringing suit.[56] Although "'[a] claim does not accrue when a person has a mere hunch, hint, suspicion,

---

[55]    Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 24.

[56]    In fact, many of the Curry Plaintiffs did not first allege a RICO claim until as late as May 30, 2007—more than seven years after the K-Resin plant explosion.  *See* Curry Plaintiffs' Third Amended Complaint [Doc. # 111].

or rumor of a claim, . . . such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.'" *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)). "Once a duty to inquire is established, the plaintiff is charged with the knowledge of what he or she would have uncovered through a reasonably diligent investigation." *Id.* (citing *Skwira v. United States*, 344 F.3d 64, 73 (1st Cir. 2003)).

The Curry Plaintiffs' allegations describe a group of injured employees who were provided free legal advice through their employer to settle claims involving what they describe as "severe" and even "permanent"[57] bodily injuries arising out of an explosion that they claim they had reason to believe was intentionally caused by their employer. They were informed of their alleged injury—their lack of viable tort claims as a result of Phillips' workers' compensation coverage—as early as March 2000, when they met with Williams & Bailey representatives. On these facts, the Curry Plaintiffs' lack of immediate inquiry was not justified. The Curry Plaintiffs' allegations provide no basis to toll the statute of limitations on their civil RICO claim. *Cf., e.g.*, *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 522 (N.D. Tex. 2001) (quoting *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 411 (5th Cir.

---

[57]     *See* Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 28, 30.

1998)) (explaining, in the context of a RICO claim arising out of an alleged insurance fraud scheme: "Even an alleged fiduciary relationship . . . does not serve to relieve [the investor] from  making a reasonably diligent effort to inform himself about his purchase, and [does] not toll the statute of limitations. Plaintiffs' failure to investigate further demonstrates naive optimism, not the conduct of a reasonable person."). "The running of the statute of limitations does not await the 'leisurely discovery of the full details of the alleged scheme.'  Nor does the discovery rule permit putative RICO plaintiffs to await detection of some 'vast scheme' by which they were injured; the [discovery] rule contemplates that plaintiffs will exercise due diligence in the detection of their injury." *Zablocki v. Huber*, 743 F. Supp. 626, 629 (D. Wis. 1990) (citing *Gieringer v. Silverman*, 731 F.2d 1272, 1277 (7th Cir. 1984), quoting *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970)).

Having failed to allege diligence to uncover their RICO claim, or facts to demonstrate the justification for tolling the limitations period, the Curry Plaintiffs' RICO claim is time-barred, and it is dismissed.

## C.    "THIRD CLAIM FOR RELIEF:  *Fraud*"

The Curry Plaintiffs' "Third Claim for Relief" states in its entirety:

Defendants . . . engaged in fraud by knowingly making material representations to [the Curry Plaintiffs] that were false.  The Defendants made the representations with the intent that the [Curry Plaintiffs] rely on them, and on which [the Curry Plaintiffs] did in fact rely, which caused

their injuries.  These representations include, but are not limited to, representations concerning the cause of the explosion, lack of corporate identity of Phillips Chemical, the ownership and control of the [K-Resin] Complex, and that [the Curry Plaintiffs] were precluded from filing individual tort claims against Phillips.[58]

As a cause of action for fraud, this claim is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  The claim allegations are, however, only general and conclusory, lacking any specificity on many of the elements of a fraud cause of action under Texas law.  The Curry Plaintiffs' fraud allegations do not state a claim for relief as required under Rule 9(b).  With regard to Defendant Williams & Bailey, this complaint also fails to state a claim upon which relief may be granted.

### 1.    Phillips Defendants and Pacific

Although "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case, . . . Rule 9(b) requires the plaintiff to allege 'the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"[59] *Tuchman*

---

[58]    *Id.* ¶ 49.

[59]    As noted above, to establish a *prima facie* case of fraud, a plaintiff must show:

(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the

(continued...)

*v. DSC Commc'n Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139); *see also Askanase v. Fatjo*, 148 F.R.D. 570, 574 (S.D. Tex. 1993) ("The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants."). "[G]eneral allegations, which do not state with particularity what representations each defendant made, do not meet this requirement." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

In this case, the Curry Plaintiffs have failed to identify anywhere in their Fourth Amended Complaint any misrepresentations made by any of the individual or corporate Phillips Defendants, or by Pacific. This complaint merely includes vague allegations of "representations" made by "Defendants" without specificity or explanation.[60] These allegations are insufficient under Rule 9(b). *See, e.g., Williams*, 112 F.3d at 178–79;

---

[59]     (...continued)
               other party should act upon it; (5) the party acted in reliance on the
               representation; and (6) the party thereby suffered injury.

       *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 758.

[60]     The Curry Plaintiffs' responses to Defendants' motions to dismiss fail to illuminate their
       claim. In arguing that they have "adequately placed the Defendants on notice of . . . the who,
       what, why, and where of the fraud," they state that "what is alleged" is that Defendants
       engaged in a "conspiracy to defraud Plaintiffs out of common-law claims by deceitfully
       settling claims with certain union officials." *See* Curry Plaintiffs' Response to Phillips
       12(b)(6) Motion to Dismiss [Doc. # 145], at 11. This does not satisfy Rule 9(b)'s
       requirement that alleged misrepresentations be specifically identified. In fact, this position
       fails to even argue the existence of a misrepresentation consistent with a fraud claim.

*Unimobil 84, Inc.*, 797 F.2d at 217.  Even under the most liberal reading of the Curry Plaintiffs' Fourth Amended Complaint, there are no allegations of any misrepresentations made by the Phillips Defendants or Pacific to the Curry Plaintiffs regarding union officials' pursuit or settlement of the 1999 lawsuit.  Further, there are no facts in the Curry Plaintiffs' pleading to demonstrate how alleged misrepresentations regarding the "corporate identity of Phillips Chemical" or the "ownership and control of the [K-Resin] Complex"[61] are relevant to the Curry Plaintiffs.

Accordingly, the Phillips Defendants' and Pacific's motions to dismiss the fraud claim against them are granted and those claims are dismissed.

### 2.    Williams & Bailey

In contrast to the fraud claim against the Phillips Defendants and Pacific, the Curry Plaintiffs have provided slightly more detail concerning the alleged fraud by Williams & Bailey.  According to the Fourth Amended Complaint, at an unspecified time following the March 2000 explosion, "attorneys from the law firm of Williams & Bailey . . . met with [the Curry Plaintiffs] and misrepresented to them that they could not pursue any intentional tort claims against Phillips because Phillips had . . . workers['] compensation insurance and they would have to file their claims for

---

[61]    Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 49.

damages using the workers['] compensation approach."[62]  Having failed to identify a speaker or explain what that speaker gained from making the alleged misrepresentations, the Curry Plaintiffs' claim runs afoul of Rule 9(b).  *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).  However, the Court need not determine whether this is fatal to their claim, since the "representation" by Williams & Bailey is not false, and thus, there is no deception or fraud.

As the Court noted above, the allegedly assaultive conduct that the Curry Plaintiffs allege as Phillips' tortious activity is not actionable under Texas law.[63]  Hence, assuming that Williams & Bailey attorneys did tell the Curry Plaintiffs that their sole source of recovery for their injuries was through the workers' compensation system, there was no misrepresentation.  Accordingly, the Curry Plaintiffs cannot plead a viable fraud claim against Williams & Bailey.  The law firm's motion to dismiss the fraud claim is granted and it is dismissed.

### D.     "FOURTH CLAIM FOR RELIEF:  *Conspiracy*"

In their "Fourth Claim for Relief," the Curry Plaintiffs allege that Phillips,[64] Pacific, and Williams & Bailey "conspired to unlawfully defraud [the Curry Plaintiffs]

---

[62]     *Id.* ¶ 21.

[63]     *See supra* Section III.A.

[64]     Only the corporate Phillips Defendants are named as Defendants in this claim.

of their common law right to file intentional tort claims against their employer for the injuries they suffered during the [March 2000 K-Resin Unit explosion]."[65]   As a conspiracy claim sounding in fraud, this claim is also subject to the heightened pleading requirements of Rule 9(b).   *See Leon y Castillo v. First City Bancorporation*, 43 F.3d 953, 961 (5th Cir. 1994).   Hence, to survive a motion to dismiss, the Curry Plaintiffs must plead "particularized allegations of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."   *Id.* (citing *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss."   *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st. Cir. 1977)).

As support for their claim, the Curry Plaintiffs assert that "Defendants conspired with each other and their attorneys to create the impression that: (1) the explosion was not caused by intentional, knowledgeable and reckless inaction of Defendants Phillips; and (2) [the Curry Plaintiffs] could not sue Phillips for injuries they suffered as a result of the March 27, 2000 explosion."[66]   In furtherance of this conspiracy, "Phillips, Williams & Bailey and Pacific paid large monetary settlement awards to certain union

---

[65]     Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶ 51.

[66]     *Id.* ¶ 53.

officials by impleading their individual tort claims into a totally separate 1999 lawsuit in order to conceal . . . the fact that these union officials received settlement awards for intentional tort claims outside of the alleged workers' compensation plan."[67]

"An actionable civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey*, 652 S.W.2d at 934 (citing *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex. 1964); *State v. Standard Oil Co.*, 107 S.W.2d 550, 559 (Tex. 1937)); *RTLC Ag Prods. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App.–Dallas 2006, no pet.) ("Civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."). "The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate cause." *Massey*, 602 S.W.2d at 934 (citing 15A C.J.S. *Conspiracy* §1(2) (1967)).

Putting aside whether the Curry Plaintiffs have satisfied Rule 9(b)'s pleading requirements as to this claim, which is questionable but is an issue the Court does not decide, these Plaintiffs have failed to allege a *prima facie* case of conspiracy. As proof

---

[67]     *Id.* ¶ 52.

of an "object to be accomplished," the Curry Plaintiffs allege that Defendants "conspired . . . to create [two] impression[s]."[68]  The agreement to merely create an impression, however, is not an actionable civil conspiracy as creation of an impression is not an "unlawful purpose."  *See id.* ("The mere agreement to resist a claim . . . is not an actionable civil conspiracy.").  Moreover, even if the Curry Plaintiffs' complaint is read as alleging that Defendants "conspired to defraud" these Plaintiffs into believing that Phillips was not responsible for the March 2000 accident and/or that workers' compensation offered the Curry Plaintiffs their sole source of recovery for injuries suffered in that accident, as noted in Sections III.A. and III.C., *supra*, the Curry Plaintiffs have not raised allegations sufficient to sustain either charge.

Furthermore, "[f]or liability to attach, there must be an unlawful, overt act in furtherance of the conspiracy."  *Id.*; *see also Arsenaux*, 726 F.2d at 1024 ("To establish a cause of action based on conspiracy a plaintiff must show the defendants agreed to commit an illegal act."); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 164 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) ("[T]he agreement to perform a lawful act cannot serve as the basis for a finding of conspiracy.").  The only overt acts alleged by the Curry Plaintiffs concern Defendants' conduct in filing and settling union officials' claims in connection with the 1999 lawsuit.  Though unclear, Plaintiffs may

---

[68]     *See id.* ¶ 53.

also rely on Williams & Bailey's statements to them regarding the absence of a cause of action for recovery for injuries suffered in the March 2000 explosion. As to the former, asserting and settling claims for others is not inherently an unlawful act. The Curry Plaintiffs seek to avoid this conclusion by arguing that Defendants' handling of the 1999 lawsuit was somehow fraudulent as to them. However, as noted above, because there are no facts to establish misrepresentations by Defendants and no indication of reliance by the Curry Plaintiffs, there is no viable claim of fraud. The latter potential overt act is also insufficient. Having concluded that the Curry Plaintiffs have no viable intentional tort claim against Phillips, statements made by Williams & Bailey attorneys that the Curry Plaintiffs' sole avenue of relief for their injuries was through the workers' compensation system were not false or fraudulent.

Having failed to identify an overt act taken in furtherance of the alleged conspiracy, and having failed to state a claim for the underlying fraud, the Curry Plaintiffs' conspiracy claim must be dismissed. *See Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (holding that because the plaintiff failed to state a claim for fraud, his fraud-based conspiracy claim must fail); *Trammell Crow Co. v. Harkinson*, 944 S.W.2d 631, 632 (Tex. 1997) (holding that when the underlying claim is barred, there can be no conspiracy to commit the underlying act). Thus, Defendants' motions to dismiss the Texas common law conspiracy claim are granted as to all Defendants and

the claim is dismissed.

E.     <u>**FIFTH CLAIM FOR RELIEF:  *Loss of Consortium***</u>

Plaintiffs'[69] "Fifth Claim for Relief"—loss of consortium—is actually an element of damages and not a cause of action.  *See Whittlesey v. Miller*, 572 S.W.2d 665, 666 n.1 (Tex. 1978).  "Claims for loss of consortium are derivative [and] are recoverable only when the nonderivative claim resulted in physical injury."  *Motor Express v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996) (citing *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 294 (Tex. 1994)).  Thus, Plaintiffs may only seek recovery for consortium as derivative of their aggravated assault claim—the only claim to include allegations of physical injury to Plaintiffs.[70]

Because the Curry Plaintiffs have no viable cause of action against Phillips for aggravated assault, they are not entitled to recovery for loss of consortium.  *See Brewerton v. Dalrymple*, 997 S.W.2d 212, 217 (Tex. 1999) (holding that the plaintiff-spouse's loss of consortium claim was "wholly derivative of her husband's intentional infliction claim and fails with it").  Similarly, because Plaintiffs' aggravated assault claim is barred by the statute of limitations, so too, is their loss of consortium claim.

---

[69]     The Jones Plaintiffs join this claim.  *See* Jones Plaintiffs proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 137–139; Jones Memorandum [Doc. # 167], at 65–66.  Thus, "Plaintiffs," as it is used in this section, refers to both the Curry and Jones Plaintiffs.

[70]     Accordingly, because Plaintiffs only brought their aggravated assault claim against the corporate Phillips Defendants, only Phillips is subject to their "claim" for loss of consortium.

*See Strauss v. Am. Home Prods. Corp.*, 208 F. Supp. 2d 711, 716 (S.D. Tex. 2002) (citing *Howard v. Fiesta Texas Show Park, Inc.*, 980 S.W.2d 716, 719 (Tex. App.–San Antonio 1998, pet. denied) ("Claims for loss of consortium and loss of services are derivative of the injured family member's cause of action for personal injuries and are subject to the same statute of limitations and defenses that preclude liability.")). "Plaintiffs simply cannot assert derivative claims that are premised upon an extinct cause of action." *Id.*

Thus, Phillips' motion to dismiss Plaintiffs' loss of consortium "claim" is granted.[71]

## F.    "SIXTH CLAIM FOR RELIEF: *Negligence and Breach of Fiduciary Duty*"

In their "Sixth Claim for Relief," Plaintiffs[72] allege that Defendant Williams & Bailey both was negligent and breached a fiduciary duty owed to Plaintiffs when Williams & Bailey attorneys informed Plaintiffs that their only recourse for injuries suffered in the March 2000 explosion was through Phillips' workers' compensation insurance.[73]

---

[71]    As noted earlier, this ruling also governs the Jones Plaintiffs' loss of consortium claim.

[72]    The Jones Plaintiffs join this claim. *See* Jones Plaintiffs proposed Fourth Amended Complaint [Doc. # 119-3], ¶ 98; Jones Memorandum [Doc. # 167], at 40–41. Thus, the term "Plaintiffs" as used in this section refers to both the Curry and Jones Plaintiffs.

[73]    Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], ¶¶ 59–62.

In bringing this two-part claim, which was alleged for the first time in the Curry Plaintiffs' Third Amended Complaint [Doc. # 111] as a negligence cause of action,[74] Plaintiffs are in direct contravention of this Court's prior orders[75] that no new claims be brought in this matter.[76]  For that reason alone, this claim should be dismissed. However, Plaintiffs also fail to state a claim for which relief may be granted.

The theory of Plaintiffs' claim here, which is more properly understood as a claim for legal malpractice, *see Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 482–83

---

[74]   *See* Curry Plaintiffs' Third Amended Complaint [Doc. # 111], ¶¶ 75–78.

[75]   *See* March 2007 Order [Doc. # 89], at 27; Transcript of June 11, 2007 Pretrial Conference [Doc. # 121[, at 19, 53–55; *see also* Jones Memorandum [Doc. # 167].

[76]   Plaintiffs contend that this is not a new claim and that they have merely "refined . . . [and] specified their negligence and breach of fiduciary duty claim against Williams & Bailey." Curry Plaintiffs' Response to Williams & Bailey's 12(b)(6) Motion to Dismiss [Doc. # 147], at 17–18.  A review of the prior complaints in this case proves otherwise.  Plaintiffs' Original Complaint [Doc. # 1] raised a negligence claim against Phillips, Original Complaint [Doc. # 1], ¶¶ 47–49, a gross negligence claim against "Defendants" based upon Defendants' alleged role in causing the March 2000 explosion, *Id.* ¶¶ 68–72, a breach of good faith and fair dealing claim against "Defendants" based upon Defendants' alleged failure to adequately investigate and evaluate Plaintiffs' workers' compensation claims, *Id.* ¶¶ 50–52, and a breach of fiduciary duty claim against Plaintiffs' union and union officers, *Id.* ¶¶ 53–63.  Plaintiffs' First Amended Complaint [Doc. # 25] raised similar claims.  *See* First Amended Complaint [Doc. # 25], ¶¶ 53–62, 68–70, 71–81.  It is only after the Court's March 22 Order directing that no new claims be asserted in this case that Plaintiffs first advanced a negligence claim against Williams & Bailey premised on the law firm's alleged provision of improper legal advice.

Indeed, after being reminded during a June 11, 2007 pretrial conference of the Court's March 2007 Order that no new claims were to be asserted in this case, Plaintiffs not only included their new negligence claim against Williams & Bailey in the Curry Plaintiffs' Fourth Amended Complaint [Doc. # 116], but also asserted a breach of fiduciary duty claim against Williams & Bailey as well.  The negligence and fiduciary duty claims rely only on facts that were available to Plaintiffs at the outset of this suit.

(Tex. App.–Dallas 1995, writ denied), is that Williams & Bailey attorneys misrepresented to Plaintiffs that they could not pursue individual personal injury lawsuits against their employer to recover for their injuries.  Plaintiffs attempt to include both negligence and breach of fiduciary duty causes of action against Williams & Bailey.  However, Texas law does not permit the fracturing of a legal malpractice claim into multiple causes of action where the factual allegations fail to draw a meaningful distinction between the asserted claims.  *See Aiken v. Hancock*, 115 S.W.3d 26, 28–29 (Tex. App.–San Antonio 2003, pet. denied); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.–Houston [1st Dist.] 1998, pet. denied); *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App.–El Paso 1988,  no writ).  "A cause of action for legal malpractice arises from an attorney giving a client bad legal advice or otherwise improperly representing the client."  *Aiken*, 115 S.W.3d at 29.  In contrast, "the focus of [a breach of fiduciary duty claim] is whether an attorney obtained an improper benefit from representing a client."  *Id.* at 28 (citing *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.–Ft. Worth 2002, pet. denied)).  In this case, Plaintiffs allege that Williams & Bailey failed to inform them that they may have viable personal injury suits against Phillips.  This amounts to the provision of bad legal advice and, hence, Plaintiffs' claim is properly understood as a single cause of action for legal malpractice and is governed by the applicable standards and defenses

for such claims.  *See Willis v. Maverick*, 723 S.W.2d 259, 261 (Tex. App.–San Antonio 1986), *aff'd*, 760 S.W.2d 642 (Tex. 1988).

Construing this claim as a legal malpractice cause of action, the claim must be dismissed.  As noted above, there are no grounds upon which to hold Williams & Bailey's statement a falsehood.  The conduct by Phillips that Plaintiffs claim constitutes an intentional tort is not actionable under Texas law; Plaintiffs' sole avenue of recovery for injuries suffered in the K-Resin plant explosion is indeed via the workers' compensation system.  Thus, Williams & Bailey did not give false, disloyal, or negligent advice.

Plaintiffs have failed to allege claims for legal malpractice, negligence, or a breach of fiduciary duty by Williams & Bailey.  Accordingly, Williams & Bailey's motion to dismiss this claim is granted.  The negligence and breach of fiduciary duty claim alleged in the Curry Plaintiffs' Fourth Amended Complaint is dismissed as to all Plaintiffs.[77]

## IV.  CONCLUSION

The Court concludes, after careful examination of the Curry Plaintiffs' Fourth Amended Complaint and analysis of the applicable law, that the Curry Plaintiffs have not stated any claim that is legally viable.  Indeed, most of the claims have numerous

---

[77]     As noted earlier, this ruling also governs the Jones Plaintiffs' claim against Williams & Bailey.

deficiencies as a matter of law. The Court has given the Curry Plaintiffs leave to amend their complaint on several occasions. The pending complaint was filed twenty-seven months after the inception of this case and after numerous attempts to frame legally viable causes of action. The Curry Plaintiffs' failure to state claims on which relief can be granted at this late stage in this litigation demonstrates that these Plaintiffs cannot state any viable claims against Defendants. Accordingly, Defendants' Motions to Dismiss are granted and all claims asserted by the Curry Plaintiffs are dismissed.

The Court also concludes that these rulings preclude the Jones Plaintiffs from asserting the claims they incorporated from the Curry Plaintiffs' Fourth Amended Complaint.[78] It is therefore

**ORDERED** that the Phillips Defendants' Motion to Dismiss the Curry Plaintiffs' Claims [Doc. # 130] is **GRANTED**. It is further

**ORDERED** that Williams & Bailey Law Firm, LLP's Motion to Dismiss [the Curry Plaintiffs' Claims] [Doc. # 133] is **GRANTED**. It is further

**ORDERED** that Pacific Employers Insurance Company's Motion to Dismiss the Curry Plaintiffs' Claims [Doc. # 138] is **GRANTED**.

The Curry Plaintiffs' case is **DISMISSED WITH PREJUDICE**.

---

[78] The Jones Plaintiffs' adopted the Curry Plaintiffs' aggravated assault, loss of consortium, and negligence and breach of fiduciary duty claims. *See* Jones Plaintiffs' proposed Fourth Amended Complaint [Doc. # 119-3], ¶¶ 98, 99–103, 137–139.

The Court will enter a separate final judgment.

SIGNED at Houston, Texas, this **18th** day of **December, 2007**.


Nancy F. Atlas
United States District Judge